

**F⁺LED**

JUL 1 5 2002

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

        Plaintiff,

    v.

MAXINE JONES and OSKER K. JONES,

        Defendants.

)
)
)
)
)
)
)
)
)
)

No.    02C 499 5

JUDGE GOTTSC....

MAGISTRATE JUDGE BOBRICK

## COMPLAINT OF INTERPLEADER

Plaintiff, Metropolitan Life Insurance Company ("MetLife"), by its attorneys, hereby complains of Defendants Maxine Jones and Osker K. Jones, as follows:

### NATURE OF THE ACTION

1.    This action for interpleader concerns a dispute as to the payment of benefits under a Federal Employer's Group Life Insurance Policy (the "FEGLI Policy"), which was created and is governed by the Federal Employer's Group Life Insurance Act ("FEGLIA"), 5 U.S.C. §§ 8701-8716, and 5 C.F.R. Part 870. Although it is ready, willing, and able to pay the proceeds of the FEGLI Policy, MetLife cannot determine which of two claimants is entitled to payment on account of insured Osker Jones (the "Insured").

### THE PARTIES

2.    MetLife is a life insurance company registered with the Illinois Department of Insurance and licensed to do business in the State of Illinois. MetLife issued the FEGLI Policy, Group Policy No. 17000-G, to the United States Postal Service pursuant to the FEGLIA Statute. (A copy of the FEGLI Policy is attached hereto as Exhibit A.)

*DOCKETED*
*JUL 1 6 2002*

1

3. Upon information and belief, Maxine Jones ("Maxine") is a resident of Illinois. She was married to the Insured at the time of his death.

4. Upon information and belief, Osker K. Jones is a resident of Illinois. He is the son of the Insured, but not the son of Maxine. Instead, he is the son of Vera Jones ("Vera") who, on information and belief, was married to the Insured prior to Maxine. On information and belief, Vera died on or about September 15, 1994, predeceasing the Insured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1335, in that it is an interpleader action and the benefits are payable under a statute of the United States, to wit, FEGLIA.

6. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and 1335, in that both defendants reside in this district, and a substantial part of the events giving rise to this action occurred in this district.

## FACTS

7. The payment of proceeds pursuant to the FEGLI Policy is governed by the language of the FEGLI Policy, the FEGLIA statute (5 U.S.C. §§ 8701-8716), and federal regulations (5 C.F.R. Part 870).

8. The FEGLIA statute provides, in pertinent part:

The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of Chapter 81 of this title, in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

5 U.S.C. § 8705(a). *See also* Ex. A, § 11.

9. The face amount of the FEGLI Policy is $48,000 (the "Proceeds").

10. A signed and witnessed beneficiary designation form dated November 2, 1989 (the "First Form") names Vera Jones as the primary beneficiary for 100% of the proceeds, if living, or otherwise to Osker K. Jones for 100%. On information and belief, Vera predeceased the Insured, leaving Osker K. Jones as the beneficiary under the First Form. A true and correct copy of the Designation of Beneficiary form dated November 2, 1989 (the First Form) is attached hereto as Exhibit B.

11. A second, more recent designation of beneficiary form (the "Second Form") contained in the Insured's life insurance records is dated September 5, 2000. The Second Form also appeared to be dated and witnessed. The Second Form names Maxine as the primary beneficiary for 100% of the proceeds, if living, otherwise to Osker K. Jones, decedent's son. A true and correct copy of the Change of Beneficiary form dated September 5, 2000 (the Second Form) is attached hereto as Exhibit C.

12.     The Insured died on July 5, 2001. A copy of the Death Certificate is attached hereto as Exhibit D. As a result of the Insured's death the Proceeds became payable, in accordance with the terms of the Policy and FEGLIA.

13.     MetLife has received three letters from Osker K. Jones challenging the validity of the Second Form (Ex C). Osker K. Jones' letter of September 16, 2001 is attached hereto as Exhibit E. Osker K. Jones' letter of October 7, 2001 is attached hereto as Exhibit F. Osker K. Jones' letter of October 25, 2001 (faxed on October 26, 2000) is attached hereto as Exhibit G. Osker K. Jones claims that his father was out of town on September 5, 2000 and could not have signed the Second Form on that day; that the Signature is a forgery; and that the Insured was incoherent due to illness and did not understand what he was signing.

14.     MetLife has received a claim for the Proceeds from Maxine. A copy of the Claim for Death Benefits form from Maxine, dated July 25, 2001, is attached hereto as Exhibit H.

15.     MetLife has received a claim for the Proceeds from Osker K. Jones. A copy of the Claim for Death Benefits form from Osker K. Jones, dated July 26, 2001, is attached hereto as Exhibit I. MetLife has also received a Claim for Death Benefits form from Osker K. Jones dated August 9, 2001. A copy of the August 9, 2001 form is attached hereto as Exhibit J.

16.     By reason of the actual or potential conflicting claims of Defendants, MetLife is, or may be, exposed to multiple liability.

17.     On or about July 11, 2001, both Defendants signed and submitted a funeral home assignment in the amount of $4,946.42 to the A.A. Rayner and Sons Modern Funeral Service. A true and correct copy of that funeral home assignment is attached hereto as Exhibit K. Because both claimants agreed, and at their joint direction, MetLife paid the funeral home bill from the

Proceeds of the FEGLI Policy. After payment of the funeral home bill, there remains $43,053.58 in the Insured's account (the "Remaining Proceeds").

18.     MetLife is ready, willing and able to pay the Remaining Proceeds of $43,053.58, plus all applicable interest, now payable as a consequence of the Insured's death, to the party or parties entitled thereto. MetLife is prepared to pay immediately into this Court, or as this Court otherwise directs, the total Remaining Proceeds payable, plus applicable interest.

19.     MetLife is a mere stakeholder, has no interest in the Remaining Proceeds and respectfully requests that this Court determine to whom said benefits should be paid.

20.     Accordingly, MetLife will deposit into the registry of the Court the Remaining Proceeds, plus applicable interest, which are now due and owing in accordance with the terms of the Policy, for disbursement in accordance with the judgment of this Court.

21.     MetLife has not brought this Complaint of Interpleader at the request of any or all of the Defendants; there is no fraud or collusion between MetLife and any or all of the Defendants; and MetLife brings this Complaint of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

22.     Until this Court rules on the issue of whether the Second Form is valid and effective, MetLife cannot safely determine the beneficiary of the Proceeds without risking exposure to multiple liability.

WHEREFORE, plaintiff, Metropolitan Life Insurance Company, requests this Court to enter judgment against Defendants, Maxine Jones and Osker K. Jones, as follows:

A.     Restraining Defendants Maxine Jones and Osker K. Jones by Order and Injunction of this Court from instituting any action against MetLife for the recovery of the Remaining Proceeds;

B.     Requiring Defendants Maxine Jones and Osker K. Jones to answer this Complaint;

C. Requiring that Defendants Maxine Jones and Osker K. Jones settle and adjust among themselves or, upon their failure to do so, the entry of an order of this Court declaring to whom the Remaining Proceeds should be paid;

D. Permitting MetLife to deposit the amount of said Remaining Proceeds, $43,053.58, plus applicable interest, into the Registry of this Court, or as this Court otherwise directs, subject to further order of this Court;

E. Discharging MetLife from any further liability upon deposit of the aforementioned Remaining Proceeds into the Registry of this Court, or as otherwise directed by this Court;

F. Awarding MetLife its costs and attorneys' fees associated with this litigation; and

G. Awarding MetLife any other and further relief that this Court deems just and proper.

METROPOLITAN LIFE INSURANCE COMPANY

By: _____
One of Its Attorneys

Steven P. Mandell #6183729
Catherine Van Horn #6204707
Leon E. Farbman #6269718
**MANDELL MENKES & SURDYK, LLC**
333 West Wacker Drive
Suite 300
Chicago, Illinois 60606
Telephone: (312) 251-1000

84747.2

# METROPOLITAN LIFE INSURANCE COMPANY

A MUTUAL LIFE INSURANCE COMPANY

INCORPORATED BY THE STATE OF NEW YORK

(HEREIN CALLED THE INSURANCE COMPANY)

GROUP POLICY No. 17000-G.

## IN CONSIDERATION

of the application for this Policy made by

### ~~UNITED STATES CIVIL SERVICE COMMISSION~~

(HEREIN CALLED THE POLICYHOLDER)

pursuant to ~~the Federal Employees' Group Life Insurance Act of 1954~~, a copy of which application is attached hereto and made a part hereof, and in consideration of the payment by the Policyholder, during the continuance of this Policy, of all premiums when they fall due as provided in this Policy,

### HEREBY AGREES

subject to the provisions of this Policy to pay the insurance benefits herein provided with respect to the several Employees insured hereunder.

This Policy shall take effect as of the 29th day of August, 1954, which date is the date of issue hereof.

The provisions hereinafter contained are part of this Group Policy as fully as if recited over the signatures hereto affixed.

**In Witness Whereof,** the Metropolitan Life Insurance Company has caused this Policy to be executed this _twenty-fourth_ day of _November, 1954_, to take effect as of the date of issue hereof.

W. J. Barrett
*Secretary*

F. W. Ecker
*President*

C. G. Arlinghaus
*Registrar*

Group Policy
Life Insurance
Insurance for Death or Dismemberment
by Accidental Means

SEE AMEND. 64

Contributory
Dividend, if any, Determined Annually

COPY

Form G.1985
Aug. 1954
PRINTED IN U.S.A.


EXHIBIT

A

SEE AMEND. 11, 14, 18, 21, 28, 40, 41, 48, 49, 64.

**Section 1.** DEFINITION OF CERTAIN TERMS USED IN THIS POLICY.—The term "Employee" means an appointive or elective officer or employee in or under the executive, judicial, or legislative branch of the United States Government, including a United States Government owned or controlled corporation, and of the municipal government of the District of Columbia, excluding in any case any employee in any of the groups of employees specified in Schedule A attached hereto as a part hereof.

The term "Office" means the Office of Federal Employees' Group Life Insurance which is the administrative office established by the Insurance Company with respect to this Policy. The post office address of the Office is 330 Fourth Avenue, New York 10, N. Y. The Insurance Company shall have the right to change the address of the Office upon three months' notice in writing to the Policyholder.

SEE AMEND. 5, 46, 51

~~Section 2. EFFECTIVE DATES OF INSURANCE.—The "effective date" referred to in this Section 2 shall be the first day of the first pay period which begins after August 28, 1954, except that in the case of Employees in the employ of the Board of Governors of the Federal Reserve System, the "effective date" shall be the first day of the first pay period which begins after September 25, 1954.~~

The insurance hereunder on each Employee on the roll of his employing office on the day before the effective date specified in the first paragraph of this Section 2 shall become effective on such effective date if he is then in a pay status or is in a non-pay status which has not extended continuously for 12 months, provided that before that date he has not given written notice to his employing office that he desires not to be insured hereunder.

SEE AMEND. 13, 46, 49, 28

~~The insurance hereunder on each person who becomes an Employee as defined in Section 1 hereof on or after the effective date specified in the first paragraph of this Section 2 shall become effective on the first day he is in a pay status unless on or before such first day he has given written notice to his employing office that he desires not to be insured hereunder or had previously given a notice which remains uncancelled.~~

The insurance hereunder on each Employee who returns to a pay status, on or after the effective date specified in the first paragraph of this Section 2, after having been in a non-pay status which extended continuously for more than 12 months, shall become effective on the first day he is in such pay status unless on or before such first day he has given written notice to his employing office that he desires not to be insured hereunder or had previously given ~~such a notice which remains uncancelled.~~

An Employee who has given written notice to an employing office that he desires not to be insured hereunder may cancel such notice and become insured hereunder only if he makes written request to his employing office for such insurance prior to his 50th birthday and not less than one year after the effective date of such notice, and furnishes at his own expense evidence of insurability satisfactory to the Office. The insurance on any such Employee shall become effective on the first day he is in a pay status following the date his request for insurance is approved provided he acquires such a pay status effective within 31 days following the date of such approval. Any Employee who must meet the requirements of this paragraph as a condition to becoming insured hereunder and who ceases to be an Employee as defined in Section 1 hereof without such requirements having been met shall continue to be subject to the same requirements if at any time he subsequently becomes an Employee as defined in said Section 1.

**Section 3.** CESSATION OF INSURANCE.—The insurance on any Employee insured hereunder shall automatically cease, except as specified in the next following paragraph, on the earliest of the following dates:

SEE AMEND. 31, 46

(1) The date of his separation from the service.

(2) The date of expiration of a period of twelve months of continuous non-pay status of the Employee.

(3) ~~The day immediately preceding the date the Employee acquires indemnity coverage under the Servicemen's Indemnity Act of 1951 (65 Stat. 33) by reason of entering military service.~~

(4) The date the Employee ceases to be an Employee as defined in Section 1 hereof for any reason other than the happening of any of the events specified in items (1), (2) or (3) preceding.

(5) The last day of the pay period during which the employing office of the Employee receives written notice from him that he desires not to be insured hereunder.

(6) The date of discontinuance of this Policy.

SEE AMEND. 1, 14, 46, 49, 51

~~However, if the insurance on any Employee insured hereunder would cease because of the happening of the event specified in either of items (1) or (2) of the preceding paragraph and the Employee meets the conditions for continuation of insurance after retirement specified in the next following sentence and does not exercise his right to have an individual policy issued to him in accordance with Section 6 hereof, his Life Insurance only, in the amounts for which he would be insured hereunder if he had not retired and his salary payment had continued at the same rate as on the date of his retirement, shall be continued or reinstated from the date he first meets such conditions until the date specified in the second following sentence. The conditions for continuation of insurance after retire-~~

Form G.1985
Aug. 1954

SEE AMEND. 2, 9, 22, 23

...requirements for retirement on immediate annuity under any of the Retirement Systems listed in Schedule B attached to this Policy as a part hereof, and (b) the Employee must either be retired for disability or have had 15 years of creditable civilian service. The Life Insurance so continued or reinstated shall automatically cease on (i) the date of termination of the annuity of the retired Employee, (ii) the day preceding the first day the Employee is in a pay status under a subsequent appointment of the retired Employee to a position such that he again falls within the definition of the term "Employee" in Section 1 hereof, or (iii) the date of discontinuance of this ...

SECTION 4. AMOUNT OF INSURANCE.—The amount of insurance hereunder on any Employee shall be in accordance with the Schedule set forth below. Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later. However, changes in annual compensation after the 65th birthday of any Employee shall not affect the amount of insurance on such Employee except to the extent provided in PART C of said Schedule for an Employee who again becomes insured hereunder after his 65th birthday.

## SCHEDULE OF INSURANCE
## PART A

APPLICABLE UP TO AND INCLUDING THE LAST DAY OF THE CALENDAR MONTH NEXT FOLLOWING THE CALENDAR MONTH IN WHICH THE 65TH BIRTHDAY OF THE EMPLOYEE OCCURS

SEE AMEND. 17, 24, 50, 58, 59, 63, 64, 65

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | $1,000 | $1,000 | $1,000 |
| $1,000 | 2,000 | 2,000 | 2,000 |
| 2,000 | 3,000 | 3,000 | 3,000 |
| 3,000 | 4,000 | 4,000 | 4,000 |
| 4,000 | 5,000 | 5,000 | 5,000 |
| 5,000 | 6,000 | 6,000 | 6,000 |
| 6,000 | 7,000 | 7,000 | 7,000 |
| 7,000 | 8,000 | 8,000 | 8,000 |
| 8,000 | 9,000 | 9,000 | 9,000 |
| 9,000 | 10,000 | 10,000 | 10,000 |
| 10,000 | 11,000 | 11,000 | 11,000 |
| 11,000 | 12,000 | 12,000 | 12,000 |
| 12,000 | 13,000 | 13,000 | 13,000 |
| 13,000 | 14,000 | 14,000 | 14,000 |
| 14,000 | 15,000 | 15,000 | 15,000 |
| 15,000 | 16,000 | 16,000 | 16,000 |
| 16,000 | 17,000 | 17,000 | 17,000 |
| 17,000 | 18,000 | 18,000 | 18,000 |
| 18,000 | 19,000 | 19,000 | 19,000 |
| 19,000 | —— | 20,000 | 20,000 |

APPLICABLE SUBSEQUENT TO THE LAST DAY OF THE CALENDAR MONTH NEXT FOLLOWING THE CALENDAR MONTH IN WHICH THE 65TH BIRTHDAY OF THE EMPLOYEE OCCURS EXCEPT FOR ANY EMPLOYEE WHO FIRST BECOMES OR AGAIN BECOMES INSURED HEREUNDER AFTER HIS 65TH BIRTHDAY

Effective on the first day of the second calendar month next following the calendar month in which the 65th birthday of the Employee occurs, the amount of Life Insurance and the amount of Insurance for Death or Dismemberment by Accidental Means shall each be reduced by 2% of the amount of such insurance in effect on the immediately preceding day, and shall be further reduced by a like amount on the first day of each calendar month thereafter until the amount remaining in effect shall be equal to 25% of the amount of insurance in effect immediately before the first reduction.

## PART C

APPLICABLE TO ANY EMPLOYEE WHO FIRST BECOMES OR AGAIN BECOMES INSURED HEREUNDER AFTER HIS 65TH BIRTHDAY

The amount of Life Insurance and the amount of Insurance for Death or Dismemberment by Accidental Means applicable to any Employee who first becomes or again becomes insured hereunder after his 65th birthday shall be the amounts of such insurance that would be provided by PART A and PART B of this Schedule had the Employee been insured under PART A of this Schedule on his 65th birthday based on (1) the amount of his annual compensation on the latest date he becomes insured hereunder, or (2) the amount of his annual compensation on his 65th birthday if the Employee was eligible to be insured hereunder on his 65th birthday, whichever is the lesser.

Section 5. INSURING CLAUSES.—(A) Life Insurance:— Upon receipt by the Office of satisfactory proof, in writing, that any Employee shall have died while insured hereunder, the Office shall pay, subject to the terms hereof, the amount of Life Insurance, if any, in force hereunder on account of such Employee in accordance with Section 4 hereof, at the date of his death. Payment shall be made to the Beneficiary of record of the Employee or otherwise as provided in Section 11 hereof immediately after receipt of such proof and of proof that the claimant is entitled to such payment.

(B) Insurance for Death or Dismemberment by Accidental Means:—Upon receipt by the Office of notice and satisfactory proof, as required herein, that any Employee, while insured hereunder for Insurance for Death or Dismemberment by Accidental Means, shall have sustained bodily injuries solely through violent, external and accidental means, and within ninety days thereafter shall have suffered any of the losses specified in the Schedule of Losses of this subsection (B) as a direct result of such bodily injuries independently of all other causes, the Office shall pay, subject to the terms and limitations hereof, the amount of insurance specified for such loss in said Schedule, provided, however, that in no case shall any pay-

SEE AMEND. 59

Form G 1955
Aug. 1954

ment be made for death or any other loss which is:

    (1) caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity, or by medical or surgical treatment or diagnosis thereof, or

    (2) caused wholly or partly, directly or indirectly, by ptomaine or by bacterial infection, except only septic infection of and through a visible wound sustained solely through violent, external and accidental means, or

    (3) caused wholly or partly, directly or indirectly, by hernia, no matter how or when sustained, or

    (4) ~~caused directly or indirectly by war, or any act of war, including, but not limited to, any war declared or undeclared, and armed aggression resisted by the armed forces of any country, international organization, or combination of countries, or~~

    (5) caused by or resulting from intentional self-destruction or intentionally self-inflicted injury, while sane or insane.

Benefits for loss of life as specified in this subsection (B) are payable to the Beneficiary of record of the Employee or otherwise as provided in Section 11 hereof. Benefits for all other losses specified in the Schedule of Losses of this subsection (B) are payable to the Employee. These benefits will be paid immediately after receipt of the proof specified in the preceding paragraph of this subsection (B) and of proof that the claimant is entitled to such payment.

~~Schedule of Losses~~

The full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of such Employee at the date of the accident, in accordance with Section 4 hereof, shall be payable as provided in this subsection (B) if the Employee suffers any of the following losses:

Loss of Life

Total and Irrecoverable Loss of Sight of Both Eyes

Loss of Both Hands by severance at or above wrist-joints

Loss of Both Feet by severance at or above ankle-joints

Loss of One Hand and of One Foot by severance at or above wrist- and ankle-joints respectively

Such loss of One Hand or of One Foot together with Total and Irrecoverable Loss of Sight of One Eye.

One-half the amount of Insurance for Death or Dismemberment by Accidental Means in force on account of such Employee at the date of the accident, in accordance with Section 4 hereof, shall be payable as provided in this subsection (B) if the Employee suffers any of the following losses:

Loss of One Hand by severance at or above wrist-joint

Loss of One Foot by severance at or above ankle-joint

Total and Irrecoverable Loss of Sight of One Eye.

If an Employee shall suffer more than one of the losses set forth in this subsection (B) as a result of any one accident, no more than the full amount of Insurance for Death or Dismemberment by Accidental Means shall be payable.

If any Employee has suffered prior to the date of issue hereof, or does thereafter suffer, the loss of one hand by severance at or above the wrist-joint, or of one foot by severance at or above the ankle-joint, or the total and irrecoverable loss of sight of one eye, the Insurance for Death or Dismemberment by Accidental Means hereunder on such Employee shall be in lieu of continued for the first

---

~~amount applicable to him in accordance with Section 4 hereof;~~ provided, however, ~~that~~ the amount of such insurance payable for the subsequent loss of one hand or of one foot or the sight of one eye as provided in this subsection (B) shall be ~~one-half of~~ such full ~~amount.~~

### Section 6. PRIVILEGE OF OBTAINING AN INDIVIDUAL POLICY OF LIFE INSURANCE.—Any Employee whose Life Insurance hereunder shall cease in accordance with any one of items (1), (2), (3), or (4) of the first paragraph of Section 3 hereof, shall be entitled to have issued to him, without evidence of insurability, an individual policy of Life Insurance only, without Disability or Accidental Means Death Benefits, subject to the following conditions and provisions:

    ~~(A) written application for such individual policy and payment of the first premium therein shall be made within 31 days after such cessation (or within such longer period as the Office may allow) to the Insurance Company, or at the Employee's option to any other insurance company which has then been accepted by the Policyholder as eligible to issue individual policies in accordance with the provisions of this Section 6 in the jurisdiction in which the Employee will reside and which has agreed with the Policyholder to do so; and~~

    (B) ~~such~~ individual policy shall be upon one of the forms then customarily issued by the insurance company selected by the Employee, ~~except Term Insurance; and~~

    (C) the premium for such individual policy shall be the premium, as determined by the insurance company issuing such policy, applicable to the class of risk to which the Employee belongs and to the form and amount of the individual policy at the Employee's attained age (nearest birthday) at the date of issue of such individual policy; and

    (D) the amount of such individual policy shall be equal to (or at the option of the Employee less than) the amount of the Employee's Life Insurance hereunder on the date of such cessation.

If the Employee dies during the 31 days next following the date of such cessation of his Life Insurance hereunder, upon receipt of proof of such death and entitlement to payment as specified in subsection (A) of Section 3 hereof the Office shall pay to his Beneficiary of record or otherwise as specified in Section 11 hereof, whether or not written application for such individual policy or payment of the first premium therefor shall have been made, the ~~maximum amount of Life Insurance for which an individual policy could have been issued under this Section 6,~~ subject to the next two sentences. If the former Employee shall have again become insured hereunder in accordance with the provisions of Section 2 hereof, any payment made under the provisions of this paragraph shall be reduced by the amount of Life Insurance payable upon the death of such Employee under the other provisions of this Policy. If an individual policy has been issued in accordance with the foregoing provisions of this Section 6, any payment made under the provisions of this paragraph shall be reduced by the amount of insurance for which such individual policy was issued, unless such individual policy is surrendered without claim thereunder to the insurance company which issued such policy.

Form G 1985
Aug. 1954

SEE AMEND. 49

**Section 7. NOTICE AND PROOF OF CLAIMS FOR INSURANCE FOR DEATH OR DISMEMBERMENT BY ACCIDENTAL MEANS.**—(A) Written notice of loss on which claim may be based must be given to the Office within twenty days after the date of the accident causing such loss. Proof of such loss must be furnished to the Office not later than ninety days after the date of such loss.

The Office, upon receipt of the notice required by this Policy, will furnish such forms as are usually furnished by it for filing proofs of claim. If such forms are not received by the claimant within fifteen days after the Office receives such notice, the claimant shall be deemed to have complied with the requirements of this Policy as to proof of claim upon submitting, within the time fixed in the Policy for filing proofs of claim, written proof covering the occurrence, character and extent of the loss for which claim is made.

Failure to furnish notice or proof within the time provided in this Policy shall not invalidate nor reduce any claim if it shall be shown not to have been reasonably possible to furnish such notice or proof and that such notice or proof was furnished as soon as was reasonably possible.

(B) The Office shall have the right and opportunity to have a physician designated by it examine the person of the Employee when and so often as it may reasonably require during the pendency of claim, hereunder, and also the right and opportunity to have an autopsy made in case of death, where it is not forbidden by law.

(C) No action at law or in equity shall be brought to recover on this Policy prior to the expiration of sixty days after proof of claim has been filed in accordance with the requirements of this Policy, nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof of claim is required by the Policy.

**Section 8. ENTIRE CONTRACT: INCONTESTABILITY.**—This Policy and the application of the Policyholder, a copy of which is attached hereto, constitute the entire contract between the parties.

The validity of this Policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from its date of issue. No statement made by any Employee insured hereunder relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such Employee's lifetime nor unless it is contained in a written instrument signed by him.

All statements made by the Policyholder or by insured Employees shall be deemed representations and not warranties, and no statement made by any insured Employee shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such Employee or his Beneficiary or to such other person to whom benefits may be payable as provided in Section 11 hereof.

**Section 9. AGENTS : ALTERATIONS.**—No Agent of the Insurance Company is authorized to alter or amend this Policy, to accept premiums in arrears or to extend the due date of any premium, to waive any notice or proof of claim required by this Policy, or to extend the date before which any such notice or proof must be submitted.

No change in this Policy shall be valid unless evidenced by amendment hereto signed by the Policyholder and by the Insurance Company.

**Section 10. CERTIFICATES.**—The Office will provide the Policyholder with certificates, for delivery to each Employee insured hereunder, setting forth the benefits to which such Employee is entitled under this Policy, to whom such benefits are payable, to whom notice and proof of claim should be submitted and summarizing the provisions of this Policy principally affecting the Employee.

SEE AMEND. 9, 12, 49

Section 11. BENEFICIARIES.—Any Employee insured hereunder may designate a Beneficiary and may, from time to time, change his designation of beneficiary, only by filing written notice thereof, signed and witnessed, with his employing office or, in the case of a retired Employee, with the Policyholder, whereupon an acknowledgment of such designation or change will be furnished the Employee. Consent of the Beneficiary shall not be requisite to any change of beneficiary. A witness to a designation or change of beneficiary shall be ineligible to receive payment as a Beneficiary. A designation or change of beneficiary shall take effect only if it is received by the employing office of the Employee or, in the case of a retired Employee, by the Policyholder, prior to the death of the Employee and shall be effective as of the date of receipt of said written notice. Any designation of beneficiary shall automatically cease to be effective on (i) the date the Employee is transferred to another agency, (ii) the date thirty-one days after the date of cessation of the Employee's insurance hereunder, or (iii) the date of retirement of the Employee, whichever first occurs.

If, at the death of any Employee insured hereunder, there shall be more than one designated Beneficiary, then, unless such Employee shall have specified the respective interests of such Beneficiaries, the interests of such Beneficiaries shall be several and equal. If any designated Beneficiary shall predecease the Employee, the rights and interest of such Beneficiary shall thereupon automatically terminate. If, at the death of the Employee, there be no designated Beneficiary as to all or any part of the insurance, then the amount of the insurance payable for which there is no designated Beneficiary shall be payable to the person or persons listed

Form G.1985
Aug. 1934

below surviving at the date of the Employee's death, in the following order of precedence:

(1) To the widow or widower of the Employee;

(2) If neither of the above, to the child or children of such Employee and descendants of deceased children by representation;

(3) If none of the above, to the parents of such Employee or the survivor of them;

(4) If none of the above, to the duly appointed executor or administrator of the estate of such Employee;

(5) If none of the above, to other next of kin of such Employee as may be determined by the Office to be entitled under the laws of domicile of such Employee at the time of his death.

If any person otherwise entitled to payment under this Section does not make claim therefor within one year after the death of the Employee, or if payment to such person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if such person had predeceased the Employee. Payment to any person by virtue of the preceding sentence shall be a bar to recovery by any other person.

~~Section 12. ASSIGNMENT.—The Employee's certificate is nonassignable and the insurance and benefits are non-assignable prior to a loss.~~

*Section 13.* RECORDS—INFORMATION TO BE FURNISHED—DETERMINATION BY THE POLICYHOLDER.—The Policyholder shall maintain or cause to be maintained records from which may be determined the names of all Employees insured hereunder and the amount of insurance in force on each of such Employees. The Policyholder shall furnish or cause to be furnished to the Office such information concerning Employees insured hereunder as may reasonably be considered to have a bearing on the administration of the insurance hereunder. The records of the Policyholder as have a bearing on the insurance hereunder shall be open for inspection by the Office at any reasonable time.

For the purposes of this Policy, determination by the Policyholder of the following shall be conclusive:

(1) The classification of any person as being within the definition of the term "Employee" in Section 1 hereof.

(2) The fact and date of (i) separation of an Employee from the service, (ii) a pay status or non-pay status of an Employee, and (iii) cessation of an Employee's classification as an Employee as defined in Section 1 hereof.

(3) The "annual compensation" of any Employee as of any date.

(4) ~~The fact (i) that any Employee is entitled to and has met all requirements for retirement on immediate annuity, (ii) that any such Employee is retired for disability or the number of years of creditable civilian service of any such Employee is at least fifteen, and (iii) that any such Employee's annuity has terminated and the date of such termination.~~

*Section 14.* PREMIUMS—GRACE PERIOD.—(A) *Basic Tables of Premium Rates*—The initial Schedules of Basic Bi-weekly Premium Rates for Life Insurance and for Insurance for Death or Dismemberment by Accidental Means are set forth in Section 21 hereof. Such Schedules are applicable to the first policy year, and shall be continued for subsequent policy years, except that they may be readjusted for any subsequent policy year, based on the experience under this Policy, such readjustment to be made by the Insurance Company on a basis determined by the Policyholder in advance of such year to be consistent with the general practice of life insurance companies under policies of group life insurance and group accidental death and dismemberment insurance issued to large employers.

Except as otherwise provided in subsection (B) of this Section, the Insurance Company shall compute an average basic bi-weekly Group Life Insurance premium rate per $1,000 of Life Insurance for the first and each subsequent policy year as of the first day of such policy year by applying the Schedule in Section 21 hereof applicable to such policy year to the distribution by age of the amounts of Life Insurance in force hereunder on the first day of such policy year.

The term "policy year" as used in this Policy means the period beginning with the date of issue of this Policy, or with a subsequent renewal date, and ending with the day immediately preceding the next following renewal date.

(B) *Tentative Average Group Life Insurance Premium Rate*—In the event the Policyholder determines that ascertaining the actual age distribution of the amounts of Life Insurance in force hereunder on the date of issue of this Policy or at the end of the first or any subsequent policy year would not be possible except at a disproportionately high expense, the Policyholder may approve the determination of a tentative bi-weekly average Group Life Insurance premium rate per $1,000 of Life Insurance for the first or any subsequent policy year, in lieu of using the actual age distribution. Such tentative premium rate shall then become the premium rate in effect hereunder per $1,000 of Life Insurance. Upon request by the Insurance Company the Policyholder shall redetermine the tentative average premium rate as of any premium due date during any policy year if experience indicates that the assumptions made in determining the tentative average premium for that policy year were incorrect.

(C) *Payment of Premiums*—Premiums under this Policy shall be due as of the date of issue hereof and bi-weekly thereafter on the same day of the week as the date of issue (herein called the due date). The premium payable on any due date shall be either

(1) The sum of (i) the amount of Life Insurance in force on such due date multiplied by the average bi-weekly basic Group Life Insurance premium rate computed in accordance with subsection (A) of this Section in effect on such due date and (ii) the amount of Group Insurance for Death or Dismemberment by Accidental Means in force on such due date multiplied by the bi-weekly premium rate for such insurance in effect on such due date, or

(2) If a tentative bi-weekly average Group Life Insurance premium rate has been determined in accordance with subsec-

Form G.1985
Aug. 1954

tion (B) of this Section, the amount of Life Insurance in force on such due date on the lives of Employes who are making contributions during the payroll period in which such due date falls, multiplied by the sum of such tentative bi-weekly average Group Life Insurance premium rate and the bi-weekly premium rate for Group Insurance for Death or Dismemberment by Accidental Means, such premium rates being those in effect on such due date.

In lieu of the exact calculation of the premium payable on either of such bases, an approximate method for determining the amount of the premium payable may be used by mutual agreement of the Insurance Company and the Policyholder.

All premiums falling due under this Policy, including adjustments thereof, if any, are payable by the Policyholder, on or before their respective due dates, direct to the Insurance Company. The payment of any premium shall not maintain the Insurance under this Policy in force beyond the day immediately preceding the next due date, except as provided in subsection (D) following.

(D) *Grace Period*—A grace period of thirty-one days or of such longer period as the Insurance Company may allow (with or without interest charge after the first thirty-one days as the Insurance Company may determine) shall be granted to the Policyholder for the payment of any premium due provided the Policyholder has not previously given written notice to the Insurance Company that this Policy is to be discontinued as of the due date of such premium, and during any such grace period this Policy shall continue in force.

If the Policyholder fails to pay any premium within the grace period, this Policy shall be discontinued at the end of the last day of such grace period, but the Policyholder shall, nevertheless, be liable to the Insurance Company for the payment of all premiums then due and unpaid, together with the premiums for the grace period. If, however, written notice is given by the Policyholder to the Insurance Company during the grace period, that this Policy is to be discontinued before the expiration of the grace period, this Policy shall be discontinued as of the date of receipt of such written notice by the Insurance Company or the date specified by the Policyholder for such discontinuance, whichever date is later, and the Policyholder shall be liable to the Insurance Company for the payment of all premiums then due and unpaid, together with the pro-rata premium for the period commencing with the last due date and ending with such date of discontinuance.

*Section 15.* ANNUAL ACCOUNTING AND CONTINGENCY RESERVE.—Not later than ninety days after the end of each policy year the Insurance Company shall prepare and furnish to the Policyholder a statement, in form approved by the Policyholder, setting forth the following:

(1) (a) The aggregate amounts of premiums actually accrued under this Policy under the provisions of Section 14 hereof from the date of issue to the end of such policy year, reduced by

(b) Any premiums returned to the Policyholder in accordance with the provisions of the second following paragraph.

(2) The aggregate amounts of interest for all policy years from

the date of issue to the end of such policy year added to the Contingency Reserve held for this Policy in accordance with the provisions of the next following paragraph.

(3) The aggregate amounts of all mortality and other claim charges incurred under this Policy from the date of issue to the end of such policy year.

(4) The aggregate amounts of expense and risk charges incurred under this Policy from the date of issue to the end of such policy year.

(5) The algebraic sum of items (1) plus (2) minus (3) minus (4).

If item (5) is a positive amount, such amount shall be held by the Insurance Company as a Contingency Reserve to be used for charges under this Policy only. Such Contingency Reserve shall bear interest at a rate to be determined in advance of each policy year by the Insurance Company, which rate shall be approved by the Policyholder as being consistent with the rates generally used by the Insurance Company for similar funds held under other group life insurance policies. Such interest shall be computed as of the end of each policy year on the mean amount of the Contingency Reserve during that policy year at the rate applicable to that policy year, and the amount of interest so calculated shall be added to the amount of the Contingency Reserve as of the end of such policy year or upon the request of the Policyholder shall be paid to the Policyholder within ninety days after the end of such policy year for deposit in the Treasury of the United States for credit to the fund created by subsection (c) of Section 5 of the Federal Employees' Group Life Insurance Act of 1954.

If and when the Policyholder shall determine that such Contingency Reserve has attained an amount estimated by the Policyholder to make satisfactory provision for adverse fluctuations in future charges under this Policy and shall so notify the Insurance Company in writing, then the amount by which the Contingency Reserve computed as of the end of the policy year in which the Insurance Company receives such notice shall exceed the amount of the Contingency Reserve at the beginning of the policy year in which the Insurance Company receives such notice shall be paid to the Policyholder as a return of premium, for deposit in the Treasury of the United States for credit to said fund. Similarly, the amount by which the Contingency Reserve computed as of the end of each subsequent policy year shall exceed the amount of the Contingency Reserve at the beginning of the policy year in which the Insurance Company receives such notice shall also be so paid to the Policyholder. Any interest computed on the Contingency Reserve for the policy year in which the Insurance Company receives such notice and for all subsequent policy years shall also be paid to the Policyholder for such deposit. If and when this Policy shall be discontinued, and if after all charges accrued hereunder have been made, there is any positive balance remaining in the Contingency Reserve, such balance shall be paid to the Policyholder as a return of premium, for deposit in the Treasury of the United States for credit to said fund subject to the right of the Insurance Company to make such return in equal monthly installments over a period of not more than two years. Any return of premium to be

Form G.1985
Aug. 1954

made by the Insurance Company under the provisions of this paragraph shall be made only if all premiums then accrued under this Policy have actually been received by the Insurance Company.

In determining the aggregate amount of mortality and other claim charges for item (3) above, there shall be included all payments of claims made or approved by the Office in good faith, the amount of pending and unreported claims at the end of the policy year for which the statement is made, as estimated by the Insurance Company, and all charges on account of the excess mortality costs to be expected under individual policies issued pursuant to Section 6 hereof. The charges for such excess mortality shall be at the rate of $65 for each $1,000 of life insurance issued under any such policy, which rate may be changed by the Insurance Company, with the approval of the Policyholder, for any policy year after the first.

The aggregate amount of expense and risk charges to be included in item (4) above shall not exceed the maximum amounts specified in the Schedule below. Such maximum charges are applicable to the first policy year and shall be continued for subsequent policy years except that they may be redetermined by the Policyholder for any policy year either by agreement with the Insurance Company or upon written notice given to the Insurance Company at least one year in advance of the beginning of the policy year for which such redetermined maximum charges are to be effective.

### SCHEDULE OF MAXIMUM EXPENSE AND RISK CHARGES



| Item | Maximum Charge |
|---|---|
| **(a) Expense Charge:** | |
| (i) Taxes | The actual accrued amount of taxes directly attributable to the premiums, amounts of insurance in force, or reserves under this Policy, as determined by the Insurance Company. |
| (ii) Expense of maintenance and operation of the Office | The actual accrued amount of such expense, as determined by the Insurance Company, but not in excess of 0.64% of Premiums |
| (iii) Other expenses | 0.334% of Premiums. |
| **(b) Risk Charge:** | 0.0% of Premiums. |

"Premiums", as used in the foregoing Schedule, means the aggregate amount of premiums actually accrued under this Policy for a policy year under the provisions of Section 14 hereof. There shall be included as "Taxes", as used in the foregoing Schedule, Insurance Department fees which are directly attributable to this Policy, to the extent approved by the Policyholder.

SEE AMEND. 8, 15, 30, 45, 54, 56

The records of the Insurance Company as have a bearing on the annual accounting furnished to the Policyholder shall be open to inspection by the Policyholder at any reasonable time.

*Section 16.* DISCONTINUANCE OF THIS POLICY.— This Policy may be discontinued by the Policyholder at any time, subject to the provisions of subsection (D) of Section 14 hereof.

This Policy may be discontinued by the Insurance Company if

(a) the Insurance Company requests the Policyholder to redetermine the tentative average Group Life Insurance premium rate as provided in Section 14 hereof and a new tentative premium rate satisfactory to the Insurance Company is not agreed upon, in which event such discontinuance shall take effect as of the end of the day preceding any premium due date thereafter specified by the Insurance Company provided such premium due date is at least 60 days after receipt by the Policyholder of written notice of such discontinuance, or

(b) the Policyholder does not agree to any change proposed by the Insurance Company in accordance with Section 15 hereof in the rate of interest applicable to the Contingency Reserve or in the rate of charge for excess mortality costs under individual policies issued pursuant to Section 6 hereof, in which event such discontinuance shall take effect as of the end of the then current policy year, or

(c) the Insurance Company does not agree to the basis determined by the Policyholder in accordance with Section 14 hereof for readjustment of the Schedules of Basic Premium Rates, or the Insurance Company does not agree to any change in the maximum expense and risk charges proposed by the Policyholder in accordance with Section 15 hereof, in either of which events such discontinuance shall take effect as of the end of the policy year immediately preceding the policy year for which such readjusted Schedules of Basic Premium Rates or proposed maximum expense and risk charges were to be effective, or

(d) the Insurance Company gives written notice of such discontinuance to the Policyholder, at least 60 days prior to the end of any policy year, in which event such discontinuance shall take effect as of the end of such policy year, provided that, if notice of discontinuance is given because of a change in the Federal Income Laws (Group Life Insurance Act of 1954, such notice may be given no earlier than the date of enactment of the change in said Act, in which event such discontinuance shall take effect, unless otherwise mutually agreed between the Insurance Company and the Policyholder, on the effective date of the change in the Act or the date 60 days after receipt of such written notice by the Policyholder, whichever date is later.

*Section 17.* RENEWAL PRIVILEGE.—This Policy is issued for a period commencing with the date of issue and ending with the day immediately preceding the next following renewal date, on

SEE AMEND. 49

Form G.1985
Aug. 1954

which renewal date and on each subsequent renewal date this Policy shall be renewed, subject to the terms of Section 16 hereof, for a further term extending through the day immediately preceding the next following renewal date, unless the Policyholder shall at least sixty days prior to said renewal date give the Insurance Company written notice that such renewal shall not be made. Renewal is conditioned upon the payment of the premiums then due as computed in the manner set forth in Section 14 hereof and based upon such Schedules of Premiums as may then be applicable. The same "renewal date" as used in this Policy shall mean the last premium due date in the month of November in any calendar year, commencing with the calendar year 1955.

*Section 18.* AGE.—In the event of the misstatement of the age of any Employee, there shall be an equitable adjustment of the premium. If the amount of insurance applicable to such Employee in accordance with Section 4 hereof would have been affected by such misstatement of age, the amount of insurance on such Employee shall be adjusted to the amount to which such Employee would have been entitled at his correct age.

*Section 19.* PARTICIPATION—DIVIDENDS.—This Policy is a participating contract and the Insurance Company shall determine annually the dividend, if any, to which this Policy may be entitled. Any such dividend shall be paid in cash to the Policyholder or, upon written request by the Policyholder, shall be applied toward the payment of premiums. In either event, an amount equal to the excess, if any, of the Employees' aggregate contributions toward the cost of the insurance provided hereunder over the net cost of such insurance shall be distributed or applied by the Policyholder for the sole benefit of the Employees.

*Section 20.* OPTIONAL MODES OF SETTLEMENT.—Upon written election after the death of the Employee by the Beneficiary or other person entitled to receive payment of amounts due at the death of the Employee, made to and accepted by the Office, the whole or any part of the amount of insurance payable upon the death of any Employee insured hereunder will be retained by the Insurance Company and paid to such person in the following manner instead of in one sum:¹

By payment of monthly or annual instalments over such specified number of years (shown in the following table) as may be elected, the first instalment being payable immediately upon the death of the Employee. The amount of such instalments shall be determined by the Schedule of Instalment Payments per $1,000 of Insurance in effect at the date of such election.

PER $1,000 OF INSURANCE

| Number of Years Specified | Amount of Each Annual Instalment (Per $1,000 of Insurance) | Amount of Each Monthly Instalment (Per $1,000 of Insurance) |
|---|---|---|
| 1 | $1,000.00 | $84.79 |
| 2 | 505.61 | 42.86 |
| 3 | 340.84 | 28.69 |
| 4 | 258.39 | 21.75 |
| 5 | 208.97 | 17.59 |
| 10 | 110.32 | 9.29 |
| 15 | 77.58 | 6.53 |
| 20 | 61.30 | 5.16 |

The amounts payable under the foregoing Schedule are based upon an assumed interest earning of 2½ per centum per annum.

Upon any renewal of this Policy, or whenever the terms of this Policy are changed, the Insurance Company may substitute for the foregoing Schedule, a Schedule of Instalment Payments per $1,000 of Insurance based upon a different assumed interest earning, but such new Schedule shall not be applicable to elections made prior to the date of such substitution.

If the Insurance Company declares for any year, upon funds held by it for instalment payments elected under such options, a greater interest rate than that upon which instalment payments under any election were based, the excess amount of interest in accordance with such declaration shall be paid on the next anniversary of the commencement of instalment payments under such election.

If the payee of any optional mode of settlement so elected dies before all instalments for the period selected have been paid, the unpaid instalments shall, unless otherwise specified in the election of such instalment payments, be commuted at the rate of compound interest upon which was based the Schedule of Instalment Payments per $1,000 of Insurance used to determine such instalment payments, and such commuted sum shall be paid to the estate of such payee.

A mode of settlement other than one of those specified above may be arranged if the Beneficiary or other person entitled to receive payment of amounts due at the death of the Employee, after the death of the Employee, and the Office mutually agree thereon. Information concerning such other possible modes of settlement will be furnished by the Office upon written request.

No instalment election shall be allowed under which the instalment payment is less than $10.00.

A payee may not assign, transfer, or encumber his rights under the optional mode of settlement elected, or any payment thereunder, and, to the extent permitted by law, the amount retained by the Insurance Company and the payments under the optional mode of settlement shall not be subject to claims of any creditor of any payee, nor to execution or other legal process on behalf of any creditor of any payee.

(8)

INITIAL SCHEDULE OF BI-WEEKLY BASIC LIFE INSURANCE
PREMIUM RATES PER $1,000 OF LIFE INSURANCE

| Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium |
|---|---|---|---|---|---|---|---|
| 15 | $0.09 | 35 | $0.19 | 55 | $0.76 | 73 | $3.73 |
| 16 | .09 | 36 | .21 | 56 | .82 | 76 | 4.06 |
| 17 | .10 | 37 | .22 | 57 | .89 | 77 | 4.40 |
| 18 | .10 | 38 | .23 | 58 | .96 | 78 | 4.76 |
| 19 | .10 | 39 | .25 | 59 | 1.04 | 79 | 5.16 |
| 20 | .10 | 40 | .26 | 60 | 1.13 | 80 | 5.58 |
| 21 | .11 | 41 | .28 | 61 | 1.22 | 81 | 6.03 |
| 22 | .11 | 42 | .30 | 62 | 1.32 | 82 | 6.52 |
| 23 | .12 | 43 | .32 | 63 | 1.43 | 83 | 7.05 |
| 24 | .12 | 44 | .34 | 64 | 1.55 | 84 | 7.61 |
| 25 | .12 | 45 | .36 | 65 | 1.68 | 85 | 8.22 |
| 26 | .13 | 46 | .39 | 66 | 1.82 | 86 | 8.86 |
| 27 | .13 | 47 | .42 | 67 | 1.97 | 87 | 9.55 |
| 28 | .14 | 48 | .45 | 68 | 2.14 | 88 | 10.28 |
| 29 | .14 | 49 | .48 | 69 | 2.32 | 89 | 11.06 |
| 30 | .15 | 50 | .52 | 70 | 2.51 | 90 | 11.89 |
| 31 | .16 | 51 | .56 | 71 | 2.72 | 91 | 12.77 |
| 32 | .17 | 52 | .60 | 72 | 2.93 | 92 | 13.69 |
| 33 | .18 | 53 | .66 | 73 | 3.19 | 93 | 14.67 |
| 34 | .18 | 54 | .71 | 74 | 3.46 | 94 | 15.70 |

In computing the average basic bi-weekly Life Insurance premium rate pursuant to Section 14 hereof there shall be added to the average basic bi-weekly Life Insurance premium determined on the basis of the premiums shown above the smaller of (i) $5.19 divided by the total amount of Life Insurance in force under this Policy on the date of such computation expressed in thousands and fractions thereof, and (ii) $0.07.

The initial bi-weekly basic premium rate for Insurance for Death or Dismemberment by Accidental Means shall be $0.0231 per $1,000 of the full amount of such Insurance.

SEE AMEND. 16, 34, 52

*Section 22.* REINSURANCE.—The Insurance Company shall reinsure portions of the total amount of insurance under this Policy under conditions determined by the Policyholder in accordance with Section 7 of the Federal Employees' Group Life Insurance Act of 1954.

Section 23. CONFORMITY WITH LAW.—If any provisions required by the Federal Employees' Group Life Insurance Act of

SEE AMEND. 6, 49

1954 (other than the provisions of Section 10 thereof), as constituted on the date of issue hereof, to be contained in this Policy are not specifically contained herein, then such provisions shall be deemed part of this Policy as though set forth herein at length. No amendment to said Act effective after the date of issue of this Policy shall have any effect on the rights or liabilities of the Policyholder or the Insurance Company under this Policy except pursuant to appropriate amendment to this Policy signed by the Policyholder and by the Insurance Company.

SEE AMEND. 7, 10, 25, 27, 37, 49

SEE AMEND. 32, 39, 48, 51

Form G.1985
Aug. 1954

Officers and employees in the following groups are excluded from the definition of the term "Employee" in Section 1 hereof.

(1) Employees in any corporation under the supervision of the Farm Credit Administration of which corporation any member of the Board of Directors is elected or appointed by private interests.

(2) Noncitizen employees whose permanent duty station is located outside a State of the United States or the District of Columbia.

SEE AMEND. 14

(3) Commissioned officers and enlisted personnel on active duty in or with the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States.

SEE AMEND. 12

(4) Employees serving under appointment limited to one year or less, except after November 1, 1951, noting positions.

SEE AMEND. 38

(5) Seasonal or emergency employees whose employment is of uncertain or purely temporary duration or who are employed for brief periods at intervals.

(6) Part-time, when-actually-employed, or intermittent employees having no regular tour of duty.

(7) Employees whose salary, pay or compensation on an annual basis is $12 a year or less.

(8) Member or patient employees in Government hospitals or homes.

(9) Employees paid on a contract or fee basis.

(10) Employees paid on a piecework basis, except those whose work schedule provides for regular or full-time service.

SEE AMEND. 5

(11) Employees serving in cooperation with non-Federal agencies who are paid in whole or in part from non-Federal funds.

(12) Employees whose duties involve the security of the United States and preclude their identification as employees of the Federal Government.

SEE AMEND. 20

(13) Retired employees reemployed under conditions not terminating their title to annuities.

SEE AMEND. 41

Form G.1
Aug.

## SCHEDULE B

### LIST OF RETIREMENT SYSTEMS REFERRED TO IN THE
### SECOND PARAGRAPH OF SECTION 3 HEREOF

(1) Civil Service Retirement System

(2) System for Board of Governors of the Federal Reserve System

(3) System for Public School Teachers of the District of Columbia

(4) Tennessee Valley Authority System

(5) System for Civilian Teachers at the Naval Academy

(6) Foreign Service Retirement System

(7) System for Policemen and Firemen of the District of Columbia

(8) Federal Judiciary Retirement System

(9) Judiciary of the Territories Retirement System

(10) System for Judiciary of the District of Columbia

(11) System for Judiciary of the Tax Court

(12) Old Age and Survivors Insurance System (Social Security)

(13) Coast and Geodetic Survey System

(14) System for Officers of the Public Health Service

(15) Lighthouse Retirement System

*SEE AMEND. 4, 26*

The Policyholder may, upon written notice to the Insurance Company, add to or eliminate from the foregoing list any System, provided that the elimination of any System from said list shall not operate to discontinue any insurance then being continued in force hereunder on any retired Employee in accordance with the provisions of the second paragraph of Section 3 hereof unless the Policyholder and the Insurance Company otherwise mutually agree.

Form G.19
Aug. 19

<u>APPLICATION</u>

Pursuant to the Federal Employees' Group Life Insurance Act of 1954, application is hereby made to

METROPOLITAN LIFE INSURANCE COMPANY

for the insurance provided by Group Policy No. 17000-G, the form of which has been prepared and designated by Metropolitan Life Insurance Company as "Form G.1985", the terms of which are hereby approved and accepted. A copy of such Form duly executed by Metropolitan Life Insurance Company together with a copy of this application duly executed by the Policyholder and attached to said copy of such Form shall constitute the Group Policy hereby applied for.

This application supersedes the preliminary application signed at Washington, District of Columbia, September 10, 1954.

Signed at Washington, District of Columbia, this _10_ day of _November_, 1954.

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _____
Chairman

Form G.1929-1
Sept. 1954

(12)

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION

(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 1

Effective as of the date of issue of said Group Policy, by substituting for item (3) of the first paragraph of Section 3 thereof, the following:

"(3) The day immediately preceding the date the Employee enters on active duty in or with the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States."

### AMENDMENT 2

Effective as of the date of issue of said Group Policy.

A. By substituting for the second sentence of the second paragraph of Section 3 thereof, the following:

"The conditions for continuation of insurance after retirement are: (a) the Employee must be entitled to and have met all requirements for retirement on immediate annuity under any of the Retirement Systems listed in Schedule B attached to this Policy as a part hereof, and (b) the Employee must either be retired for disability or have completed 15 years of creditable service, including as part of such creditable service, if the Employee at retirement has completed at least five years of creditable civilian service, periods of honorable active service in the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States."

B. By substituting for item (4) of the second paragraph of Section 3 thereof, the following:

"(4) The fact (i) that any Employee is entitled to and has met all requirements for retirement on immediate annuity, (ii) that any such Employee is retired for disability or has completed at least 15 years of creditable service, including as part of such creditable service, if the Employee at retirement has completed at least five years of creditable civilian service, periods of honorable active service in the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States, and (iii) that any such Employee's annuity has terminated and the date of such termination."

### AMENDMENT 3

Effective as of the date of issue of said Group Policy, by substituting for the caption "Schedule of Losses" and for the provisions appearing under said caption in subsection (B) of Section 5 thereof, the following:

#### "SCHEDULE OF LOSSES

For loss of life, the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the Employee's death, or at the date of cessation of such insurance if his death occurs after such cessation, shall be payable as provided in this subsection (B).

For any of the following losses, the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the accident shall be payable as provided in this subsection (B):

Total and Irrecoverable Loss of Sight of Both Eyes
Loss of Both Hands by severance at or above wrist-joints
Loss of Both Feet by severance at or above ankle-joints
Loss of One Hand and of One Foot by severance at or above wrist- and ankle-joints respectively
Such loss of One Hand or of One Foot together with Total and Irrecoverable Loss of Sight of One Eye.

For any of the following losses, one-half the amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the accident shall be payable as provided in this subsection (B):

Loss of One Hand by severance at or above wrist-joint
Loss of One Foot by severance at or above ankle-joint
Total and Irrecoverable Loss of Sight of One Eye.

If the Employee shall suffer more than one of the losses set forth in this subsection (B) as a result of any one accident, then the aggregate amount payable for all such losses, other than loss of life, shall not exceed the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the accident; and the amount payable for loss of life resulting from the same accident shall not exceed the excess, if any, of the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the Employee's death, or at the date of cessation of such insurance if his death occurs after such cessation, over the aggregate amount payable for all other losses suffered as a result of such accident. Any payment for loss of life made by the Office prior to receipt by the Office of claim by or on behalf of the Employee or his estate for any other losses suffered by the Employee as a result of the same accident shall discharge any liability of the Insurance Company with respect to all such other losses to the extent of the amount of payment made for loss of life.

If any Employee has suffered prior to the date of issue hereof, or does thereafter suffer, the loss of one hand by severance at or above the wrist-joint, or of one foot by severance at or above the ankle-joint, or the total and irrecoverable loss of sight of one eye, the Insurance for Death or Dismemberment by Accidental Means hereunder on such Employee shall be issued or continued for the full amount applicable to him in accordance with Section 4 hereof, provided, however, that the amount of such insurance payable for the subsequent loss of one hand or of one foot or the sight of one eye as provided in this subsection (B) shall be one-half of such full amount."

Form G. 1985.1
Nov. 1955

## AMENDMENT 4

Effective as of the date of issue of said Group Policy, by substituting for items (8), (9), (10), (11), (12), (13), (14) and (15) of Schedule B attached to said Group Policy as a part thereof, the following:

"(8) Old Age and Survivors Insurance System (Social Security)
(9) Coast and Geodetic Survey System
(10) System for Officers of the Public Health Service
(11) Lighthouse Retirement System"

## AMENDMENT 5

Effective July 16, 1955.

A. By substituting for item (11) of Schedule A attached to said Group Policy as a part thereof, the following:

"(11) Prior to July 16, 1955, Employees serving in cooperation with non-Federal agencies who are paid in whole or in part from non-Federal funds."

B. By substituting for the first paragraph of Section 2 thereof, the following:

"*Section 2.* EFFECTIVE DATES OF INSURANCE.—The 'effective date' referred to in this Section 2 shall be the first day of the first pay period which begins after August 28, 1954, except that in the case of Employees in the employ of the Board of Governors of the Federal Reserve System, the 'effective date' shall be the first day of the first pay period which begins after September 25, 1954, and except that in the case of Employees serving in cooperation with non-Federal agencies who are paid in whole or in part from non-Federal funds, the 'effective date' shall be the date or dates on or after July 16, 1955 prescribed by the Policyholder for any group of such employees."

C. By adding to the second paragraph of Section 13 thereof, the following item (5):

"(5) The 'effective date' referred to in the first paragraph of Section 2 hereof, for any group of Employees serving in cooperation with non-Federal agencies who are paid in whole or in part from non-Federal funds."

## AMENDMENT 6

Effective August 11, 1955, by adding to Section 22 thereof, the following:

", as amended August 11, 1955."

## AMENDMENT 7

Effective August 11, 1955, by substituting for Section 23 thereof, the following:

"*Section 23.* CONFORMITY WITH LAW.—If any provisions required by the Federal Employees' Group Life Insurance Act of 1954 (other than the provisions of Section 10 thereof), as amended August 11, 1955,—to be contained in this Policy are not specifically contained herein, then such provisions shall be deemed part of this Policy as though set forth herein at length. No amendment to said Act enacted after August 11, 1955 shall have any effect on the rights or liabilities of the Policyholder or the Insurance Company under this Policy except pursuant to appropriate amendment to this Policy signed by the Policyholder and by the Insurance Company"

## AMENDMENT 8

Effective November 20, 1955, by substituting the figure "0.30%" for the figure "0.33%" in item (a) (iii) of the "Schedule of Maximum Expense and Risk Charges" in Section 15 thereof.

---

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at ........ WASHINGTON, D. C. ........ this ........ Ninth ........ day of ........ May ........ 19 56.

........ Mary J. Angluin ........
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ........ Philip Young ........

**(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)**

Signed at ........ New York, N. Y. ........ this ........ Twenty-eighth ........ day of ........ May ........ 19 56.

METROPOLITAN LIFE INSURANCE COMPANY,

........ C. G. Arlinghaus ........
(Registrar)

W. J. Barrett
Secretary.

COPY

Form G. 1985-1
Nov. 1955
PRINTED IN U.S.A.

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 9

Effective as of the date of issue of said Group Policy,

A. By substituting for the second paragraph of Section 3 thereof, as amended, the following:

"However, if the insurance on any Employee insured hereunder would cease because of the happening of the event specified in either of items (1) or (2) of the preceding paragraph and the Employee meets the conditions for continuation of insurance after retirement or while receiving benefits under the Federal Employees' Compensation Act, as specified in items (A) and (B) of this paragraph, and does not exercise his right to have an individual policy issued to him in accordance with Section 6 hereof, his Life Insurance only shall be continued or reinstated, commencing with the date he first meets such conditions, for the amount of insurance and period of time specified in said items:

(A) The conditions for continuation of insurance after retirement are: (a) the Employee must be entitled to and have met all requirements for retirement on immediate annuity under any of the Retirement Systems listed in Schedule II attached to this Policy as a part hereof, and (b) the Employee must either be retired for disability or have completed 15 years of creditable service, including as part of such creditable service, if the Employee at retirement has completed at least five years of creditable civilian service, periods of honorable active service in the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States. The amount of his Life Insurance continued or reinstated as aforesaid shall be in the amounts for which he would have been insured hereunder had he not retired and his salary payments had continued at the same rate as on the date of his retirement. Such Life Insurance shall automatically cease on (i) the date of termination of the annuity of the retired Employee, (ii) the day preceding the first day the Employee is in a pay status under a subsequent appointment of the retired Employee to a position such that he again falls within the definition of the term "Employee" in Section 1 hereof, or (iii) the date of discontinuance of this Policy, whichever first occurs.

(B) The conditions for continuation of insurance while an Employee is receiving benefits under the Federal Employees' Compensation Act are: the Employee must be receiving benefits under said Act because of disease or injury to himself and must be held by the United States Department of Labor to be unable to return to duty. The amount of his Life Insurance continued or reinstated as aforesaid shall be in the amounts for which he would have been insured hereunder had his salary payments continued at the same rate as on the date insurance would otherwise have ceased. Such Life Insurance shall automatically cease on (i) the date of termination of the Employee's benefits under said Act, (ii) on the date of a finding by the said Department of Labor that he is able to return to duty, or (iii) the date of discontinuance of this Policy, whichever first occurs. The continuation of insurance provided by this item (B) shall be available to any Employee otherwise meeting the conditions of this paragraph and of this item (B) even though he exercises before May 28, 1956 his right to have an individual policy issued to him in accordance with Section 6 hereof."

B. By substituting for the first paragraph of Section 11 thereof, the following:

"Section 11. BENEFICIARIES.—Any Employee insured hereunder may designate a Beneficiary and may, from time to time, change his designation of beneficiary, only by filing written notice thereof, signed and witnessed, with his employing office or, in the case of (1) a retired Employee and (2) an Employee whose Life Insurance hereunder is continued while he is in receipt of benefits under the Federal Employees' Compensation Act, with the Policyholder, whereupon an acknowledgment of such designation or change will be furnished the Employee. Consent of the Beneficiary shall not be requisite to any change of beneficiary. A witness to a designation or change of beneficiary shall be ineligible to receive payment as a Beneficiary. A designation or change of beneficiary shall take effect only if it is received by the appropriate office prior to the death of the Employee and shall be effective as of the date of receipt of said written notice. Any designation of beneficiary shall automatically cease to be effective on (i) the date the Employee is transferred to another agency, (ii) the date thirty-one days after the date of cessation of the Employee's insurance hereunder, (iii) the date of retirement of the Employee, or (iv) the date the Employee qualifies for continuation of Life Insurance hereunder, as provided in item (B) of the second paragraph of Section 3 hereof, because he is in receipt of benefits under the Federal Employees' Compensation Act, whichever first occurs."

### AMENDMENT 10

Effective August 2, 1956, by substituting the date "August 2, 1956" for the date "August 11, 1955" in the two places in which it appears in Section 23 thereof, as amended.

Form G. 1985-2
Sept. 1956

## AMENDMENT 11

Effective on the first day of the first pay period which begins after August 11, 1956, by inserting the words "(including Gallaudet College)" immediately after the words "United States Government owned or controlled corporation" in the first paragraph of Section 1 thereof.

## AMENDMENT 12

Effective October 17, 1956, by substituting for item (4) of Schedule A attached to said Group Policy as a part thereof, the following:

"(4) Employees serving under appointments limited to one year or less, except, after November 3, 1954, acting postmasters, and except, after October 16, 1956, employees so appointed for full-time employment, without break in service or after a separation of three days or less, following service in which they were insured hereunder."

## AMENDMENT 13

Effective November 6, 1956,

A. By substituting for the third paragraph of Section 2 thereof, the following:

"The insurance hereunder on each person who becomes an Employee as defined in Section 1 hereof, after November 5, 1956 and on or after the effective date specified in the first paragraph of this Section 2 for the group of Employees of which he is a member, shall become effective at the time he actually enters on duty on his first day in a pay status unless on or before such first day he has given written notice to his employing office that he desires not to be insured hereunder or had previously given such a notice which remains uncancelled.

The insurance hereunder on each Employee who transfers after November 5, 1956 from one employing office to another in which he remains an Employee shall become effective at the beginning of the effective date of his appointment by transfer, unless on or before that day he has given written notice to his new employing office that he desires not to be insured hereunder or had previously given such a notice to a former employing office which remains uncancelled." .

B. By substituting for the fourth paragraph of Section 2 thereof, the following:

"The insurance hereunder on each Employee who returns to duty and is in a pay status, after November 5, 1956 and on or after the effective date specified in the first paragraph of this Section 2 for the group of Employees of which he is a member, after having been in a non-pay status which extended continuously for more than 12 months, shall become effective at the time he actually enters on duty on his first day in such pay status unless on or before such first day he has given written notice to his employing office that he desires not to be insured hereunder or had previously given such a notice which remains uncancelled."

## AMENDMENT 14

Effective January 1, 1957,

A. By deleting item (3) of Schedule A attached to said Group Policy as a part thereof.

B. By inserting immediately after the word "hereof" at the end of the first paragraph of Section 1 thereof, as amended, the following:

", provided, however, that no person shall become an Employee hereunder by virtue of his status as a 'member of a uniformed service' as that term is defined in Section 102 of the Servicemen's and Veterans' Survivor Benefits Act"

C. By substituting for item (3) of the first paragraph of Section 3 thereof, as amended, the following:

"(3) The day immediately preceding the date the Employee enters on active duty or active duty for training as a member of a uniformed service, unless the period of such duty is covered by military leave with pay from his civilian position. This provision for cessation of insurance shall not apply with respect to any insurance effective hereunder prior to January 1, 1957 on commissioned officers of the Coast and Geodetic Survey or of the Regular or Reserve Corps of the Public Health Service. The terms 'active duty', 'active duty for training' and 'member of a uniformed service' shall have the meanings assigned to them by Section 102 of the Servicemen's and Veterans' Survivor Benefits Act."

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at ......Washington, D. C.............this........Twentieth.....................day of........February.........19 57

......................Mary J. Angluin...................  UNITED STATES CIVIL SERVICE COMMISSION
    **(Witness)**

           By      Philip Young

**(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)**

Signed at........New York, N. Y......this........Twenty-ninth...................day of........March.........19 57

           METROPOLITAN LIFE INSURANCE COMPANY.

......................C. G. Arlinghaus...................
    **(Response)**

Form G. 1983-2
Sept. 1956

C O P Y

           W. J. Barrett
                *Secretary*

GROUP POLICY No. 17000-G bearing date of August 29, 1954, and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

## AMENDMENT 15

Effective for the policy year commencing November 30, 1958, by substituting for the figure "0.6%" in item (b) of the "Schedule of Maximum Expense and Risk Charges" in Section 15 thereof the figure "0.5%". This substitution shall remain in effect for subsequent policy years subject to further redetermination as provided in said Section 15, and subject to the following paragraph.

If a basic premium rate or tentative average premium rate shall be reduced for any policy year in accordance with Section 14 thereof, the said figure shall automatically revert to "0.6%" for that policy year, unless the Policyholder and the Insurance Company agree to the use of the figure "0.5%" or of some intermediate figure for that policy year, or unless the Policyholder shall have given written notice to the Insurance Company in accordance with said Section 15 at least one year in advance of the beginning of such policy year of a different Maximum Risk Charge to be applicable to that policy year.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _____ Washington, D.C. _____ this _____ 24th _____ day of _____ June _____ 19 58

_____ Mary J. Angluin _____
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _____ Harris Ellsworth _____

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at _____ New York, New York _____ this _____ 10th _____ day of _____ July _____ 19 58

METROPOLITAN LIFE INSURANCE COMPANY,

*W. J. Barrett*

Secretary

_____ C. G. Arlinghaus _____
(Registrar)

COPY

Form G.1985-3

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954, and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 16**

Effective for the policy year commencing November 30, 1958, by substituting for Section 21 thereof the following:

*"Section 21. SCHEDULES OF BASIC PREMIUM RATES*

SCHEDULE OF BI-WEEKLY BASIC LIFE INSURANCE
PREMIUM RATES PER $1,000 OF LIFE INSURANCE

| Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium |
|---|---|---|---|---|---|---|---|
| 15 | $0.08 | 35 | $0.18 | 55 | $0.69 | 75 | $3.41 |
| 16 | .08 | 36 | .19 | 56 | .73 | 76 | 3.69 |
| 17 | .09 | 37 | .20 | 57 | .81 | 77 | 4.00 |
| 18 | .09 | 38 | .21 | 58 | .87 | 78 | 4.33 |
| 19 | .09 | 39 | .22 | 59 | .93 | 79 | 4.69 |
| 20 | .09 | 40 | .24 | 60 | 1.02 | 80 | 5.07 |
| 21 | .10 | 41 | .25 | 61 | 1.11 | 81 | 5.48 |
| 22 | .10 | 42 | .27 | 62 | 1.20 | 82 | 5.93 |
| 23 | .10 | 43 | .29 | 63 | 1.30 | 83 | 6.41 |
| 24 | .11 | 44 | .31 | 64 | 1.41 | 84 | 6.92 |
| 25 | .11 | 45 | .33 | 65 | 1.52 | 85 | 7.47 |
| 26 | .12 | 46 | .36 | 66 | 1.63 | 86 | 8.05 |
| 27 | .12 | 47 | .38 | 67 | 1.79 | 87 | 8.68 |
| 28 | .12 | 48 | .41 | 68 | 1.94 | 88 | 9.35 |
| 29 | .13 | 49 | .44 | 69 | 2.10 | 89 | 10.06 |
| 30 | .14 | 50 | .48 | 70 | 2.28 | 90 | 10.81 |
| 31 | .14 | 51 | .51 | 71 | 2.47 | 91 | 11.61 |
| 32 | .15 | 52 | .55 | 72 | 2.68 | 92 | 12.45 |
| 33 | .16 | 53 | .60 | 73 | 2.90 | 93 | 13.33 |
| 34 | .17 | 54 | .64 | 74 | 3.15 | 94 | 14.27 |

The bi-weekly basic premium rate for Insurance for Death or Dismemberment by Accidental Means shall be $0.0231 per $1,000 of the full amount of such Insurance."

The foregoing Schedules of Basic Premium Rates shall remain in effect for policy years subsequent to the policy year commencing November 30, 1958 subject to further readjustment as provided in subsection (A) of Section 14 of said Group Policy.

In accordance with the second paragraph of Amendment 15 attached to said Group Policy as a part thereof, it is agreed that the foregoing reduction in Basic Life Insurance Premium Rates shall not of itself operate to change the figure used for the Maximum Risk Charge in the "Schedule of Maximum Expense and Risk Charges" in Section 15 of said Group Policy, and that otherwise the second paragraph of said Amendment 15 shall remain fully operative with respect to any future reduction or reductions in a basic premium rate or tentative average premium rate.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this ___25th___ day of ___August___ 1958.

Margaret E. Ringrose
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___Frederick J. Layton___

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ___New York, N. Y.___ this ___15th___ day of ___September___ 1958

METROPOLITAN LIFE INSURANCE COMPANY.

Ca. G. Arlinghaus
(Registrar)

Form G.1943-4—July 1955—PRINTED IN U.S.A.

COPY

W. J. Barrett
Secretary.

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 17**

Effective as of the date of issue of said Group Policy, by substituting for the second sentence of the first paragraph of Section 4 thereof, the following:

"Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective (1) on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later, or (2) on the effective date of the change when a retroactive adjustment is actually the correction of an error, unless otherwise stipulated in a law providing for the change."

**AMENDMENT 18**

Effective August 28, 1957, by adding immediately after the first paragraph of Section 1 thereof, as amended, the following paragraph:

"The term 'Employee' shall also include any Presidential appointee or elected officer during such time as provision for coverage of such person under the Federal Employees' Group Life Insurance Act of 1954, as amended, is made under the provisions of Section 6(b) of the International Atomic Energy Agency Participation Act of 1957."

**AMENDMENT 19**

Effective March 15, 1958, by substituting for the last sentence of the first paragraph of Section 11 thereof, as amended, the following:

"Any designation of beneficiary shall automatically cease to be effective on (i) the date thirty-one days after the date of cessation of the Employee's insurance hereunder unless the Employee's Life Insurance is reinstated in accordance with the provisions of the second paragraph of Section 3 hereof, or (ii) the date the Employee is transferred to another agency, whichever first occurs."

**AMENDMENT 20**

Effective January 31, 1959, by substituting for item (13) of Schedule A attached to said Group Policy as a part thereof, the following:

"(13) Retired employees reemployed under conditions not terminating their title to annuities, except such reemployed retired employees serving from August 29, 1954 to January 31, 1959, without a break in service of more than 3 days."

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this 8th day of May 19 59.

Mary J. Anglum
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By Roger W. Jones

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at New York, New York this 17th day of June 19 59.

Clemens G. Arlinghaus
(Registrar)

METROPOLITAN LIFE INSURANCE COMPANY,

W. J. Barrett
Secretary

COPY

Form G. 1985-5
Feb. 1950
PRINTED IN U.S.A.

# METROPOLITAN LIFE INSURANCE COMPANY

## GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

# UNITED STATES CIVIL SERVICE COMMISSION

### (HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 21

Effective May 18, 1959, by substituting "25 East 24th Street, New York 10, N. Y." for "330 Fourth Avenue, New York 10, N. Y." as the post office address of the Office of Federal Employees' Group Life Insurance appearing in the third paragraph of Section 1 thereof, as amended.

### AMENDMENT 22

Effective September 23, 1959, by substituting "15 years of creditable service in the case of an Employee whose retirement occurs prior to September 23, 1959, or 12 years of creditable service in the case of an Employee whose retirement occurs on or after September 23, 1959," for "15 years of creditable service," in the first sentence in item (A) of the second paragraph of Section 3 thereof, as amended, and in item (4) of the second paragraph of Section 13 thereof, as amended.

### AMENDMENT 23

Effective September 23, 1959, by substituting for the second sentence in item (A) of the second paragraph of Section 3 thereof, as amended, the following:

"The amount of his Life Insurance continued or reinstated as aforesaid shall be in accordance with Section 4 hereof."

### AMENDMENT 24

Effective September 23, 1959, by substituting for Section 4 thereof, as amended, the following:

"Section 4. AMOUNT OF INSURANCE.—(A) *Applicable Prior to the Employee's Retirement:*—The amount of insurance hereunder on any Employee shall be in accordance with the Schedule set forth below. Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective (1) on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later, or (2) on the effective date of the change when a retroactive adjustment is actually the correction of an error, unless otherwise stipulated in a law providing for the change.

Form G. 1985-6
Sept. 1959

## SCHEDULE OF INSURANCE

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | -$1,000 | $1,000 | $1,000 |
| $1,000 | 2,000 | 2,000 | 2,000 |
| 2,000 | 3,000 | 3,000 | 3,000 |
| 3,000 | 4,000 | 4,000 | 4,000 |
| 4,000 | 5,000 | 5,000 | 5,000 |
| 5,000 | 6,000 | 6,000 | 6,000 |
| 6,000 | 7,000 | 7,000 | 7,000 |
| 7,000 | 8,000 | 8,000 | 8,000 |
| 8,000 | 9,000 | 9,000 | 9,000 |
| 9,000 | 10,000 | 10,000 | 10,000 |
| 10,000 | 11,000 | 11,000 | 11,000 |
| 11,000 | 12,000 | 12,000 | 12,000 |
| 12,000 | 13,000 | 13,000 | 13,000 |
| 13,000 | 14,000 | 14,000 | 14,000 |
| 14,000 | 15,000 | 15,000 | 15,000 |
| 15,000 | 16,000 | 16,000 | 16,000 |
| 16,000 | 17,000 | 17,000 | 17,000 |
| 17,000 | 18,000 | 18,000 | 18,000 |
| 18,000 | 19,000 | 19,000 | 19,000 |
| 19,000 | —— | 20,000 | 20,000 |

(B) *Applicable After the Employee's Retirement:*—The amount of Life Insurance hereunder on any Employee after retirement shall be the basic amount of Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement of 25% of the basic amount of Life Insurance, The terms 'basic amount of Life Insurance' and 'effective reduction date' are defined in the following paragraphs of this subsection (B).

With respect to an Employee whose retirement occurs on or after September 23, 1959, 'basic amount of Life Insurance' means the amount of Life Insurance in accordance with the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and 'effective reduction date' means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later.

**AMENDMENT 24 (Continued)**

With respect to an Employee whose retirement occurs prior to September 23, 1959, 'basic amount of Life Insurance' means the amount of Life Insurance in accordance with the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on (a) the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, or (b) his 65th birthday, whichever is earlier (or in the case of any such Employee who first became or again became insured hereunder after his 65th birth-

day, based on (i) the amount of his annual compensation on the latest date he became insured hereunder, or (ii) the amount of his annual compensation on his 65th birthday if the Employee was eligible to be insured hereunder on his 65th birthday, whichever is the lesser); and 'effective reduction date' means the first day of the second calendar month after his 65th birthday."

**AMENDMENT 25**

Effective September 23, 1959, by substituting the date "September 23, 1959" for the date "August 2, 1956" in the two places in which it appears in Section 23 thereof, as amended.

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at ......Washington, D. C.......... this ............fourth.............. day of........January.............19

...............Mary L. Anguish............... 
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By............Roger W. Jones.....Chairman............

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at....New York, New York....this............fourteenth.............. day of........January.............19

...............G. G. Arlinghaus............... 
(Registrar)

METROPOLITAN LIFE INSURANCE COMPANY

W. J. Barrett
Vice-President & Secretary

COPY

Form G. 1985-6
Sept. 1959
PRINTED IN U.S.A.

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
( HEREIN CALLED THE POLICYHOLDER )

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 26

Effective as of the date of issue of said Group Policy, by substituting for the list of Retirement Systems in Schedule B attached to said Group Policy as a part thereof, the following list:

"(1) Civil Service Retirement System
(2) System for Board of Governors of the Federal Reserve System
(3) System for Public School Teachers of the District of Columbia
(4) Tennessee Valley Authority System
(5) System for Civilian Teachers at the Naval Academy
(6) Foreign Service Retirement System
(7) System for Policemen and Firemen of the District of Columbia
(8) Old Age and Survivors Insurance System (Social Security)
(9) Coast and Geodetic Survey System
(10) System for Officers of the Public Health Service
(11) Lighthouse Retirement System
(12) Federal Judiciary Retirement System (28 U.S.C. 371(a))
(13) Judiciary of the Territories Retirement System (28 U.S.C. 373)"

### AMENDMENT 27

Effective July 1, 1960, by substituting "as amended to and including July 1, 1960" for "as amended September 23, 1959" and "after July 1, 1960" for "after September 23, 1959" in Section 23 thereof, as amended.

### AMENDMENT 28

Effective July 10, 1960.

A. By adding immediately after the second paragraph of Section 1 thereof, as amended, the following paragraph:

"The term 'Employee' shall also include any person who, under conditions of eligibility prescribed by the Policyholder pursuant to subsection (d) of Section 2 of the Federal Employees' Group Life Insurance Act of 1954, as amended, comes within the purview of said Act."

B. By deleting the period at the end of the first paragraph of Section 2 thereof, as amended, and by adding to said paragraph, the following:

", and except that in the case of persons who, under conditions of eligibility prescribed by the Policyholder pursuant to subsection (d) of Section 2 of the Federal Employees' Group Life Insurance Act of 1954, as amended, come within the purview of said Act, the 'effective date' shall be the date or dates on or after July 10, 1960 prescribed by the Policyholder for any group of such persons."

C. By deleting the period at the end of item (5) of the second paragraph of Section 13 thereof, as amended, and by adding to said item, the following:

", and for any group of persons who, under conditions of eligibility prescribed by the Policyholder pursuant to subsection (d) of Section 2 of the Federal Employees' Group Life Insurance Act of 1954, as amended, come within the purview of said Act."

### AMENDMENT 29

Effective November 27, 1960,

A. By substituting for the last sentence of Section 17 thereof, the following:

"The term 'renewal date' as used in this Policy shall mean the last premium due date in the month of November in each of the calendar years 1955 through 1960, both inclusive, and July 1st in the calendar year 1961 and in each subsequent calendar year."

B. By adding to Section 14 thereof, the following subsection (E):

"(E) *Discontinuance of Policy*—In the event of the discontinuance of this Policy in accordance with the provisions of Section 16 hereof, or by reason of non-renewal in accordance with the provisions of Section 17 hereof, the Policyholder shall be liable to the Insurance Company for the payment of the pro-rata premium accruing for any period this Policy continues in force on and subsequent to the due date of the last due and unpaid premium, and the Insurance Company shall refund to the Policyholder the pro-rata premium for any period subsequent to the effective date of such discontinuance for which premiums were paid by the Policyholder."

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at ____Washington, D. C.____ this ____Twenty-ninth____ day of ____November____ 19 60.

____Mary J. Anglum____
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By____Roger W. Jones____

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)    Chairman

Signed at ____New York, N. Y.____ this ____Twenty-ninth____ day of ____December____ 19 60

METROPOLITAN LIFE INSURANCE COMPANY,

____C. G. Arlinghaus____
(Registrar)

Form G. 1985-7
July 1960
PRINTED IN U.S.A.

____Allan E. Hollenbeck____
Secretary

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

## AMENDMENT 30

Effective as of the date of issue of said Group Policy, by substituting for the text in item (a) (ii) under the heading "Maximum Charge" in the "Schedule of Maximum Expense and Risk Charges" in Section 15 thereof, the following:

"The actual accrued amount of such expense including expense for the reinsurance required by Section 22 hereof, as determined by the Insurance Company, but not in excess of 0.6% of Premiums."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at <u>Washington, D. C.</u> this <u>Sixth</u> day of <u>December</u> 19 <u>60</u>

<u>Mary J. Angluin</u>
(Witness)

<u>UNITED STATES CIVIL SERVICE COMMISSION</u>
(Policyholder)

By _____<u>Roger V. Jones</u>_____

(Space Below For Use Of Metropolitan Life Insurance Company Only)

Signed at <u>New York, N. Y.</u> this <u>Twenty-ninth</u> day of <u>December</u> 19 <u>60</u>

METROPOLITAN LIFE INSURANCE COMPANY,

<u>C. G. Arlinghaus</u>
(Registrar)

*Walter E. Hollenbeck*
Secretary

Form G.1985-8

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT   31

Effective February 14, 1961, by substituting for the second sentence of the last paragraph of Section 2 thereof, as amended, the following:

"The insurance on any such Employee shall become effective at the time he actually enters on duty on his first day in a pay status following the date his request for insurance is approved provided he acquires such a duty and pay status effective within 31 days following the date of such approval."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this _____Tenth_____ day of ___April___ 19 61

___Mary V. Renzel___
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___John T. Macy, Jr.___

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ___New York, New York___ this ___Twenty-eighth___ day of ___April___ 19 61

METROPOLITAN LIFE INSURANCE COMPANY,

*Allen E. Hollenbeck*
Secretary

___C. G. Arlinghaus___
(Registrar)

Form G.1985-9

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 12**

Effective on the date of execution of this amendment, by adding to said Group Policy, the following:

"In connection with the performance of work under this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the said labor union or workers' representative of the contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The contractor will comply with all provisions of Executive Order No. 10925 of March 6, 1961, and of the rules,

regulations, and relevant orders of the President's Committee on Equal Employment Opportunity created thereby.

(5) The contractor will furnish all information and reports required by Executive Order No. 10925 of March 6, 1961, and by the rules, regulations, and orders of the said Committee or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Committee for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the contractor's non-compliance with the nondiscrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may be cancelled in whole or in part and the contractor may be declared ineligible for further government contracts in accordance with procedures authorized in Executive Order No. 10925 of March 6, 1961, and such other sanctions may be imposed and remedies invoked as provided in the said Executive order or by rule, regulation, or order of the President's Committee on Equal Employment Opportunity, or as otherwise provided by law.

(7) The contractor will include the provisions of the foregoing paragraphs (1) through (6) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the President's Committee on Equal Employment Opportunity issued pursuant to section 303 of Executive Order No. 10925 of March 6, 1961, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for non-compliance: *Provided, however*, that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D.C.___ this ___nineteenth___ day of ___December___ 19 61.

___Mary V. Wenzel___
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___John W. Macy, Jr.___

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ___New York, New York___ this ___Sixteenth___ day of ___January___ 19 62.

___C. G. Arlinghaus___
(Registrar)

METROPOLITAN LIFE INSURANCE COMPANY,

___Helen E. Hollenbeck___
Secretary

COPY

Form G 1085-10

SEE MIND. 39

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

## AMENDMENT    33

Effective December 15, 1961, by adding immediately after the third sentence of the third paragraph of Section 15 thereof, the following:

"If in any policy year it is anticipated that a payment for such deposit would be made at the end of that policy year in accordance with the provisions of the preceding sentences, partial instalments of such payment may be made by the Insurance Company during that policy year in such amounts and at such times as may be mutually agreed upon between the Insurance Company and the Policyholder."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___29th___ day of ___December___ 19 61

___Mary V. Wenzel___
(Witness)

### UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___John W. Macy, Jr.___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N. Y.___ this ___17th___ day of ___January___ 19 62

### METROPOLITAN LIFE INSURANCE COMPANY,

Milton E. Hollenbeck
Secretary

___C. C. Arlinghaus___
(Registrar)

Form G. 1985-11

© Ⓞ Ⓟ Ⓨ

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954, and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
( HEREIN CALLED THE POLICYHOLDER )

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT 34

Effective for the policy year commencing July 1, 1962, by substituting for Section 21 thereof, as amended, the following:

"*Section 21.* SCHEDULES OF BASIC PREMIUM RATES.

SCHEDULE OF BI-WEEKLY BASIC LIFE INSURANCE PREMIUM RATES PER $1,000 OF LIFE INSURANCE

| Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium |
|---|---|---|---|---|---|---|---|
| 15 | $0.07 | 35 | $0.12 | 55 | $0.61 | 75 | $3.16 |
| 16 | .07 | 36 | .13 | 56 | .66 | 76 | 3.41 |
| 17 | .08 | 37 | .13 | 57 | .73 | 77 | 3.69 |
| 18 | .08 | 38 | .14 | 58 | .79 | 78 | 4.01 |
| 19 | .08 | 39 | .15 | 59 | .86 | 79 | 4.36 |
| 20 | .08 | 40 | .17 | 60 | .93 | 80 | 4.74 |
| 21 | .09 | 41 | .18 | 61 | 1.00 | 81 | 5.14 |
| 22 | .09 | 42 | .20 | 62 | 1.09 | 82 | 5.56 |
| 23 | .09 | 43 | .21 | 63 | 1.19 | 83 | 6.00 |
| 24 | .09 | 44 | .23 | 64 | 1.28 | 84 | 6.46 |
| 25 | .09 | 45 | .25 | 65 | 1.40 | 85 | 6.94 |
| 26 | .09 | 46 | .27 | 66 | 1.52 | 86 | 7.44 |
| 27 | .10 | 47 | .30 | 67 | 1.65 | 87 | 7.98 |
| 28 | .10 | 48 | .33 | 68 | 1.81 | 88 | 8.54 |
| 29 | .10 | 49 | .36 | 69 | 1.97 | 89 | 9.15 |
| 30 | .10 | 50 | .39 | 70 | 2.15 | 90 | 9.83 |
| 31 | .10 | 51 | .43 | 71 | 2.33 | 91 | 10.59 |
| 32 | .10 | 52 | .47 | 72 | 2.53 | 92 | 11.46 |
| 33 | .11 | 53 | .51 | 73 | 2.72 | 93 | 12.46 |
| 34 | .11 | 54 | .56 | 74 | 2.94 | 94 | 13.64 |

In computing the average basic bi-weekly Life Insurance premium rate pursuant to Section 14 hereof there shall be added to the average basic bi-weekly Life Insurance premium determined on the basis of the premiums shown above an amount equal to $2.95 divided by the total amount of Life Insurance in force under this Policy on the date of such computation expressed in thousands and fractions thereof.

The bi-weekly basic premium rate for Insurance for Death or Dismemberment by Accidental Means shall be $0.0231 per $1,000 of the full amount of such Insurance."

The foregoing Schedules of Basic Premium Rates shall remain in effect for policy years subsequent to the policy year commencing July 1, 1962 subject to further readjustment as provided in subsection (A) of Section 14 of said Group Policy.

In accordance with the second paragraph of Amendment 15 attached to said Group Policy as a part thereof, it is agreed that the foregoing reduction in Basic Life Insurance Premium Rates shall not of itself operate to change the figure used for the Maximum Risk Charge in the "Schedule of Maximum Expense and Risk Charges" in Section 15 of said Group Policy, and that otherwise the second paragraph of said Amendment 15 shall remain fully operative with respect to any future reduction or reductions in a basic premium rate or tentative average premium rate.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this ......14th...................... day of ..................June.........................19.62....

........................Mary V. Wenzel........................          UNITED STATES CIVIL SERVICE COMMISSION
(Witness)                                                                          (Policyholder)

                                                        By.............John V. Mary, Jr.......................

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ......New York, N. Y......................... this ......16th.............. day of ...........July.............. 19.62.

                                                        METROPOLITAN LIFE INSURANCE COMPANY,

.................C. G. Arlinghaus.................          Walter E. Hollbeck
(Registrar)                                                                          Secretary.

Form G.1945-12—July 1962  PRINTED IN U.S.A.

COPY

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 35

Effective July 13, 1962,

A. By adding immediately after the words "Items (1), (2), (3), or (4) of the first paragraph of Section 3 hereof," in the first paragraph of Section 6 thereof, the following:

"and who shall not, within three calendar days next following the date of such cessation, return to a position in which he is an Employee as defined in Section 1 hereof, ".

B. By substituting for the words "the maximum amount of Life Insurance for which an individual policy could have been issued under this Section 6," in the first sentence of the second paragraph of Section 6 thereof, the following:

"an amount equal to the amount of the Employee's Life Insurance hereunder on the date of such cessation, ".

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _____Washington, D.C._____ this _____3rd·_____ day of _____October_____ 19 62

_____Mary V. Wenzel_____

(Witness)

### UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _____John W. Macy, Jr._____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at _____New York, N. Y._____ this _____9th_____ day of _____October_____ 19 62

### METROPOLITAN LIFE INSURANCE COMPANY,

Walter E. Hollenbeck

Secretary

_____C. G. Arlinghaus_____

(Registrar)

Form G.1985-13

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

## AMENDMENT 36

Effective as of the date of issue of said Group Policy, by substituting for the last paragraph of Section 11 thereof, the following paragraphs:

"If any person otherwise entitled to payment under Section 5 hereof or this Section does not make claim therefor within one year after the death of the Employee, or if payment to such person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if such person had predeceased the Employee. Payment to any person by virtue of the preceding sentence shall be a bar to recovery by any other person.

If, within two years after the death of the Employee, no claim for payment has been filed by any person entitled thereto under Section 5 hereof or the order of precedence set forth in this Section, and neither the Policyholder nor the Office has received any notice that any such claim will be made, payment may be made to a claimant as may in the judgment of the Policyholder be equitably entitled thereto, and such payment shall be a bar to recovery by any other person. If, within four years after the death of the Employee, payment has not been made pursuant to Section 5 hereof or this Section and no claim for payment by any person entitled thereto under said Section 5 or this Section is pending, the amount payable shall escheat to the credit of the fund created by subsection (c) of Section 5 of the Federal Employees' Group Life Insurance Act of 1954."

## AMENDMENT 37

Effective August 28, 1962, by substituting the date "August 28, 1962" for the date "July 1, 1960" in the two places in which it appears in Section 23 thereof, as amended.

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___17th___ day of ___December___ ___1962___

_____  
Helen D. Uhrin  
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION  
(Policyholder)

By _____John W. Macy, Jr._____  
Chairman  
(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this ___11th___ day of ___January___ ___1963___

METROPOLITAN LIFE INSURANCE COMPANY,

_Klan E. Hollenbeck_  
Secretary

_____  
C. G. Arlinghaus  
(Registrar)

Form G.1985-14

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

Group Policy No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 33

Effective _____ February 26, 1963 _____ by substituting for Item (5) of Schedule A attached to said Group Policy as a part thereof, the following:

"(5) Seasonal or emergency employees whose employment is of uncertain or purely temporary duration or who are employed for brief periods at intervals, but this does not exclude employees having career-conditional or career appointments who are employed under a cooperative work-study program of at least one year's duration which requires the employee to be in pay status during not less than one-third of the total time required for the completion of the program."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _Washington, D. C._ this _30th_ day of _April_ 19 63

_____Helen D. Uhrin_____         UNITED STATES CIVIL SERVICE COMMISSION
(Witness)                                      (Policyholder)

                                    By _____John W. Macy, Jr._____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at _New York, N.Y._ this _27th_ day of _May_ 19 63

                              METROPOLITAN LIFE INSURANCE COMPANY,

_____C. G. Arlinghaus_____
(Registrar)

Form G.1985-15

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 39**

Effective on the date of execution of this amendment, by substituting for the provisions added to said Group Policy by Form G.1985-10 (Amendment 32), the following:

"During the performance of this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this non-discrimination clause.

(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the said labor union or workers' representative of the contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The contractor will comply with all provisions of Executive Order No. 10925 of March 6, 1961, as amended, and of

the rules, regulations, and relevant orders of the President's Committee on Equal Employment Opportunity created thereby.

(5) The contractor will furnish all information and reports required by Executive Order No. 10925 of March 6, 1961, as amended, and by the rules, regulations, and orders of the said Committee, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Committee for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the contractor's noncompliance with the non-discrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may be cancelled, terminated, or suspended in whole or in part, and the contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 10925 of March 6, 1961, as amended, and such other sanctions may be imposed and remedies invoked as provided in the said Executive Order or by rule, regulation, or order of the President's Committee on Equal Employment Opportunity, or as otherwise provided by law.

(7) The contractor will include the provisions of paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the President's Committee on Equal Employment Opportunity issued pursuant to section 303 of Executive Order No. 10925 of March 6, 1961, as amended, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for noncompliance: *Provided, however,* that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _____Washington, D. C._____ this _____30th_____ day of _____January_____ 19.6_

_____Mary V. Wenzel_____
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____John W. Macy, Jr._____
(Chairman)

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at_____New York, New York_____ this _____24th_____ day of _____February_____ 19.6_

METROPOLITAN LIFE INSURANCE COMPANY,

_____Wm. H. Meyer, Jr._____
(Registrar)

Form G. 1985-16

COPY

_Walter E. Hollenbeck_
Secretary

SEE AMEND. 48

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and Issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 40

Effective April 8, 1964, by substituting "4 East 24th Street, New York, New York 10010" for "25 East 24th Street, New York 10, N. Y." as the post office address of the Office of Federal Employees' Group Life Insurance appearing in the fourth paragraph of Section 1 thereof, as amended.

### AMENDMENT 41

Effective January 1, 1965,

A. By substituting for the words "In any of the groups of employees specified in Schedule A attached hereto as a part hereof" in the first paragraph of Section 1 thereof, as amended, the following:

"excluded by section 870.202 of the Policyholder's regulations".

B. By deleting Schedule A attached to said Group Policy as a part thereof.

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this 22nd day of December 1965

| Mary V. Wenzel | UNITED STATES CIVIL SERVICE COMMISSION |
| (Witness) | (Policyholder) |

By John W. Macy, Jr.

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at New York, N.Y. this fourteenth day of January 1966

METROPOLITAN LIFE INSURANCE COMPANY,

*Alton E. Hollenbeck*
Secretary

Wm. H. Mayer, Jr.
(Registrar)

Form G.1985-17

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

## AMENDMENT 42

Effective January 1, 1965, by substituting for items (4) and (5) in the first paragraph of subsection (B) of Section 5 thereof, the following items (4), (5), and (6):

"(4) caused directly or indirectly by war (declared or undeclared), any act of war, or any aggression by armed forces, against the United States, in which nuclear weapons are actually being used, or

(5) caused directly or indirectly by war (declared or undeclared), any act of war, armed aggression, or insurrection, in which the Employee is, at the time the bodily injuries are sustained, in actual combat, or

(6) caused by or the result of intentional self-destruction or intentionally self-inflicted injury, while sane or insane."

## AMENDMENT 43

Effective January 1, 1965, by substituting for Section 20 thereof, the following:

"Section 20. OPTIONAL MODES OF SETTLEMENT.—Upon written election after the death of the Employee by the Beneficiary or other person entitled to receive payment of amounts due at the death of the Employee, made to and accepted by the Office, the whole or any part of the amount of insurance payable upon the death of any Employee insured hereunder will be retained by the Insurance Company and paid to such person in the following manner instead of in one sum:

By payment of monthly or annual instalments over such specified number of years (shown in the following table) as may be elected, the first instalment being payable immediately upon the death of the Employee. The amount of each such instalment shall be determined from time to time in accordance with the Insurance Company's declarations with respect to such instalments, but in no event shall such amount be less than the minimum amount specified in the following Schedule.

AMENDMENT 43 (Continued)

## SCHEDULE OF MINIMUM INSTALMENT PAYMENTS
## PER $1,000 OF INSURANCE

| Number of Years Specified | Minimum Amount of Each Annual Instalment (Per $1,000 of Insurance) | Minimum Amount of Each Monthly Instalment (Per $1,000 of Insurance) |
|---|---|---|
| 1 | - - | $84.19 |
| 2 | $505.61 | 42.56 |
| 3 | 340.84 | 28.69 |
| 4 | 258.39 | 21.75 |
| 5 | 208.97 | 17.59 |
| 10 | 110.37 | 9.29 |
| 15 | 77.58 | 6.53 |
| 20 | 61.30 | 5.16 |

The Insurance Company shall have the right to change, as of any renewal of this Policy or whenever the terms of this Policy are changed, the Schedule of Minimum Instalment Payments, but any such change shall not be applicable to instalments payable on account of deaths occurring prior to the effective date of such change.

If the payee of any optional mode of settlement so elected dies before all instalments for the period selected have been paid, the unpaid instalments shall, unless otherwise specified in the election of such instalment payments, be commuted and paid in one sum to the estate of such payee. Such commuted sum shall be calculated on the basis of the amount of the instalment payable on or immediately prior to the date of death of the payee and the interest rate assumed in determining such amount.

A mode of settlement other than one of those specified above may be arranged if the Beneficiary or other person entitled to receive payment of amounts due at the death of the Employee, after the death of the Employee, and the Office mutually agree thereon. Information concerning such other possible modes of settlement will be furnished by the Office upon written request.

No instalment election shall be allowed under which the first instalment payment is less than $20.00.

Form G.1935-18

AMENDMENT 43 (Continued)

A payee may not assign, transfer, or encumber his rights under the optional mode of settlement elected, or any payment thereunder, and, to the extent permitted by law, the amount retained by the Insurance Company and the payments under the optional mode of settlement shall not be subject to claims of any creditor of any payee, nor to execution or other legal process on behalf of any creditor of any payee."

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___22nd___ day of ___December___ 19 65

___Mary V. Wenzel___
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By___John W. Macy, Jr.___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___fourteenth___ day of ___January___ 19 66

METROPOLITAN LIFE INSURANCE COMPANY,

___Allan E. Hollenbeck___
Secretary

___Wm. H. Mayer, Jr.___
(Registrar)

COPY

Form G.1985-18

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

## AMENDMENT 44

Effective December 6, 1966, by adding to Section 5 thereof, the following subsection (C):

"(C) Special Provisions Applicable to Reemployed Retired Employees:—If the Life Insurance on a retired Employee ceases because of appointment of the retired Employee to a position such that he again falls within the definition of the term 'Employee' in Section 1 hereof, then at the subsequent death of the Employee while insured hereunder, the amount payable pursuant to the preceding subsection (A) on account of such death shall not be less than the amount that would have been payable hereunder had the Employee's Life insurance hereunder as a retired Employee not ceased because of such appointment, or, in the event that such death results from bodily injuries and is thereby a loss for which benefits are payable pursuant to the preceding subsection (B), the total amount payable pursuant to said subsections (A) and (B) on account of such death shall not be less than the excess, if any, of (1) the amount that would have been payable hereunder had the Employee's Life insurance hereunder as a retired Employee not ceased because of such appointment, over (2) the aggregate amount payable pursuant to said subsection (B) for all losses, other than loss of life, suffered as a result of such injuries."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___ Washington, D.C. ___ this ___ 23rd ___ day of ___ February ___ 19 68

_____ Helen R. Hill _____        UNITED STATES CIVIL SERVICE COMMISSION
        (Witness)                        (Policyholder)

                                By ___ John W. Macy, Jr. ___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___ New York, N.Y. ___ this ___ twelfth ___ day of ___ March ___ 1968

                        METROPOLITAN LIFE INSURANCE COMPANY,

_____ Wm. H. Mayer, Jr. _____        _Allen E. Hollbeck_
        (Registrar)                          Secretary

Form G.1985-19

C O P Y

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

**UNITED STATES CIVIL SERVICE COMMISSION**
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

## AMENDMENT 45

Effective July 1, 1967, by substituting for the schedule following the fifth paragraph of Section 15 thereof, the following:

"Schedule of Maximum Expense and Risk Charges

| Item | Maximum Charge |
|---|---|
| (a) Expense Charges | |
| (i) Taxes | The actual accrued amount of taxes directly attributable to the premiums, amounts of insurance in force, or reserves under this Policy, as determined by the Insurance Company. |
| (ii) Expense of maintenance and operation of the Office | The actual accrued amount of such expense including expense for the reinsurance required by Section 22 hereof, as determined by the Insurance Company, but not in excess of 0.6% of Premiums. |
| (iii) Other expenses | For any policy year beginning prior to November 20, 1955 – 0.33% of Premiums; |
| | For any policy year beginning on or subsequent to November 20, 1955 but prior to July 1, 1967 – 0.30% of Premiums; |
| | For any policy year beginning on or subsequent to July 1, 1967 – 0.30% of that part of Premiums for the policy year which is not in excess of $190 million, plus 0.06% of that part of Premiums for the policy year which is in excess of $190 million. |

Form G.1985-20

AMENDMENT 45 (Continued)

| Item | Maximum Charge |
|------|----------------|
| (b) Risk Charge | For any policy year beginning prior to November 30, 1958 – 0.6% of Premiums; |
| | For any policy year beginning on or subsequent to November 30, 1958 but prior to July 1, 1967 – 0.5% of Premiums; |
| | For any policy year beginning on or subsequent to July 1, 1967 – 0.4% of that part of Premiums for the policy year which is not in excess of $190 million, plus 0.2% of that part of Premiums for the policy year which is in excess of $190 million." |

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this _____ first _____ day of _____ April _____ 19 68

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _____ John W. Macy, Jr. _____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at _____ New York, N.Y. this _____ fifth _____ day of _____ April _____ 19 68

METROPOLITAN LIFE INSURANCE COMPANY,

_Walter E. Hollabeck_
Secretary

_____ Wm. H. Mayer, Jr. _____
(Registrar)

Form G.1985-20

C O P Y

## METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT    46

Effective December 16, 1967,

A.  By adding to Section 1 thereof, the following paragraph:

"Unless otherwise specified, any references in this Policy to insurance hereunder, Life insurance hereunder, or insurance for Death or Dismemberment by Accidental Means hereunder shall include, respectively, optional insurance, optional Life insurance, and optional insurance for Death or Dismemberment by Accidental Means."

B.  By inserting as the first sentence of the first paragraph of Section 2 thereof, the following:

"The word 'insurance' as used in this Section 2 means insurance exclusive of optional insurance hereunder."

C.  By adding to said Section 2, the following paragraph:

"If an Employee is not or would not become insured hereunder at the time he actually enters on duty on his first day in a pay status on or after the first day of the first pay period which begins on or after February 14, 1968, by reason of having given written notice to an employing office, prior to the first day of the first pay period which begins on or after February 14, 1968, that he desires not to be insured hereunder, then the insurance on such Employee shall nevertheless become effective at that time, irrespective of the Employee's age and insurability and notwithstanding the provisions of the immediately preceding paragraph, provided that prior thereto he has not again given written notice that he desires not to be insured hereunder."

D.  By adding immediately following said Section 2, the following Section 2A:

"Section 2A. EFFECTIVE DATES OF OPTIONAL INSURANCE.—An Employee on the roll of his employing office on February 14, 1968 shall become eligible for optional insurance on February 14, 1968. Any person who becomes an Employee as defined in Section 1 hereof after February 14, 1968 shall become eligible for optional insurance on the day he actually enters on duty on his first day in a pay status.

Form G.1985-21

AMENDMENT ___46___ (Continued)

An Employee may become insured for optional insurance only by making written election thereof to his employing office on a form furnished by the Policyholder. For the purposes of election of optional insurance, an Employee's limiting date is the later of (i) April 14, 1968, and (ii) the thirty-first day following the date he becomes eligible for optional insurance, or, if his employing office determines, within six months after an Employee becomes eligible for optional insurance, that he was unable, for cause beyond his control, to elect or decline optional insurance within thirty-one days following the date he became eligible for optional insurance, the thirty-first day following the date the Employee is advised of such determination.

The optional insurance hereunder on any Employee whose election is received by his employing office on or prior to the date he becomes eligible for optional insurance shall become effective on the date he becomes eligible for such insurance, provided he is then insured hereunder for insurance exclusive of optional insurance.

The optional insurance hereunder on any Employee whose election is received by his employing office after the date he becomes eligible for optional insurance and on or prior to the limiting date specified above, shall become effective on the date such election is received by his employing office, provided he is then insured for insurance exclusive of optional insurance.

If written election of optional insurance on behalf of any Employee is not received by his employing office on or prior to the limiting date specified above, or if the Employee has declined optional insurance, such Employee may become insured for optional insurance hereunder only if he makes written request therefor to his employing office prior to his 50th birthday and not less than one year after the effective date of his declination of optional insurance, and furnishes at his own expense evidence of insurability satisfactory to the Office. The optional insurance on any such Employee shall become effective at the time he actually enters on duty on his first day in a pay status following the later of (i) the date his request for optional insurance is approved, and (ii) the date written election of optional insurance on his behalf is received by his employing office, provided he acquires such a duty and pay status effective within thirty-one days following the date of such approval and provided he is then insured for insurance exclusive of optional insurance. Any Employee who must meet the requirements of this paragraph as a condition to becoming insured for optional insurance hereunder and who ceases to be an Employee as defined in Section 1 hereof without such requirements having been met shall continue to be subject to the same requirements if at any time he subsequently becomes an Employee as defined in said Section 1. In the case of an Employee who has made neither written election nor written declination of optional insurance, the 'effective date of his declination of optional insurance' shall be the limiting date specified above.

AMENDMENT ___46___ (Continued)

If an Employee, on the date his optional insurance would otherwise become effective, is not insured for insurance exclusive of optional insurance, then such Employee shall not be insured for optional insurance until such time as he becomes insured for insurance exclusive of optional insurance."

E. By deleting the word "continuous" from Item (2) in the first paragraph of Section 3 thereof.

F. By adding the words "other than as specified in the third paragraph of said Section 6 with respect to optional Life Insurance," immediately after the words "does not exercise his right to have an individual policy issued to him in accordance with Section 6 hereof," appearing in the first sentence of the second paragraph of said Section 3.

G. By substituting "work injury" for "disease or injury to himself" in the first sentence in Item (B) of the second paragraph of said Section 3.

H. By substituting for the second sentence in Item (B) of the second paragraph of said Section 3, the following:

"The amount of his Life Insurance continued or reinstated as aforesaid shall be the amount of Life Insurance, exclusive of optional Life insurance, for which he would have been insured hereunder had his salary payments continued at the same rate as on the date Insurance would otherwise have ceased, and, in addition, so much of the amount of optional Life Insurance in force on his account on such date which had been in force for not less than

(a) the full period or periods of service during which optional insurance was available to him, or

(b) the twelve years of service immediately preceding such date and during which the optional insurance was available to him,

whichever is shorter."

I. By adding to said Section 3, the following paragraph:

"The optional insurance hereunder on any Employee shall automatically cease, in any event, on the last day of the pay period during which either (a) his employing office receives written notice from him that his optional insurance is to be canceled, or (b) his employing office determines that his periodic pay, annuity, or compensation for work injury is insufficient to cover his required contributions to the cost of such insurance."

J. By substituting for the heading to the schedule in subsection (A) of Section 4 thereof, the following:

Form G.1985-21

AMENDMENT 46 (Continued)

"PART I-SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE, PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968",

and by adding immediately after said schedule, the following:

"PART II-SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | $ 8,000 | $10,000 | $ 10,000 |
| $8,000 | 9,000 | 11,000 | 11,000 |
| 9,000 | 10,000 | 12,000 | 12,000 |
| 10,000 | 11,000 | 13,000 | 13,000 |
| 11,000 | 12,000 | 14,000 | 14,000 |
| 12,000 | 13,000 | 15,000 | 15,000 |
| 13,000 | 14,000 | 16,000 | 16,000 |
| 14,000 | 15,000 | 17,000 | 17,000 |
| 15,000 | 16,000 | 18,000 | 18,000 |
| 16,000 | 17,000 | 19,000 | 19,000 |
| 17,000 | 18,000 | 20,000 | 20,000 |
| 18,000 | 19,000 | 21,000 | 21,000 |
| 19,000 | 20,000 | 22,000 | 22,000 |
| 20,000 | 21,000 | 23,000 | 23,000 |
| 21,000 | 22,000 | 24,000 | 24,000 |
| 22,000 | 23,000 | 25,000 | 25,000 |
| 23,000 | 24,000 | 26,000 | 26,000 |
| 24,000 | 25,000 | 27,000 | 27,000 |
| 25,000 | 26,000 | 28,000 | 28,000 |
| 26,000 | 27,000 | 29,000 | 29,000 |
| 27,000 | 28,000 | 30,000 | 30,000 |
| 28,000 | 29,000 | 31,000 | 31,000 |
| 29,000 | — | 32,000 | 32,000 |

PART III-SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER FEBRUARY 14, 1968

The amount of optional Life Insurance and the amount of optional Insurance for Death or Dismemberment by Accidental Means is the greater of (a) $10,000, and (b) the excess, if any, of the amount of the Employee's annual compensation over the amount of Life Insurance or the amount of Insurance for Death or Dismemberment by Accidental Means, respectively, in accordance with Part II above."

Form G.1985-21

K.  By adding at the end of the first paragraph of subsection (B) of said Section 4, the following sentence:

"In the case of an Employee whose retirement occurs on or after December 16, 1967, the amount of Life Insurance at any time after retirement shall be separately determined, as hereinafter specified, in respect of (1) Life Insurance exclusive of optional Life Insurance, and (2) optional Life Insurance, if any."

L.  By adding after the first paragraph of subsection (B) of said Section 4, the following paragraphs:

"With respect to an Employee whose retirement occurs on or after December 16, 1967, 'basic amount of Life Insurance' means, as to Life Insurance exclusive of optional Life Insurance, the amount of Life Insurance in accordance with Part II of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and 'effective reduction date' means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later.  The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part II of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective.

With respect to an Employee whose retirement occurs on or after February 14, 1968, 'basic amount of Life Insurance' means, as to optional Life Insurance, so much of the amount of optional Life Insurance in force on his account on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section, which had been in force for not less than

(a) the full period or periods of service during which optional insurance was available to him, or

(b) the twelve years of service immediately preceding such date and during which the optional insurance was available to him,

whichever is shorter.  For the purposes of this paragraph, in the case of an Employee who was on the roll of his employing office on February 14, 1968 and who was insured for optional insurance on April 14, 1968 or the date of his retirement, if earlier, such optional insurance shall be deemed to have been in force for the full period or periods of service during which optional insurance was available to him prior to such earlier date.  If the Policyholder receives written notice from the Employee that optional Life

AMENDMENT 46 (Continued)

Life Insurance on his account is not to be continued after retirement, the provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement.

With respect to an Employee whose retirement occurs on or after December 16, 1967 but prior to February 14, 1968, 'basic amount of Life Insurance' means, as to optional Life Insurance, an amount of optional Life Insurance in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of Items (1) or (2) of the first paragraph of Section 3 hereof. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part III of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective. The provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement, unless written election of optional Life Insurance by the Employee is received by the Policyholder on or prior to April 14, 1968."

M. By substituting "on or after September 23, 1959 but prior to December 16, 1967," for "on or after September 23, 1959," in the next-to-last paragraph of subsection (B) of said Section 4.

N. By substituting "Part I of the Schedule of Insurance in subsection (A)" for "the Schedule of Insurance in subsection (A)" in the last two paragraphs of subsection (B) of said Section 4.

O. By adding to Section 5 thereof, the following subsection (D):

"(D) Special Provisions in Event of Death During the Period Beginning December 16, 1967 and Ending April 14, 1968:—As to insurance exclusive of optional insurance. In the event that an Employee insured hereunder, other than a retired Employee, dies during the period beginning December 16, 1967 and ending immediately prior to the first day of the first pay period which begins on or after February 14, 1968, the amounts payable pursuant to the preceding subsections (A) and (B) on account of such death, exclusive of amounts of optional insurance, shall be determined as if Part II of the Schedule of Insurance in subsection (A) of Section 4 hereof had been in effect on the date of death of the Employee.

As to optional insurance. In the event that an Employee insured hereunder, other than a retired Employee, dies during the period beginning December 16, 1967 and ending February 14, 1968, the amounts payable pursuant to the preceding subsections (A) and (B) on account of such death shall be determined as if the Employee were also insured, at the date of his death, for optional insurance in accordance with Part III of the Schedule of Insurance in subsection (A) of Section 4 hereof, irrespective of whether the Employee was so insured. In the event that an Employee insured hereunder, other than a retired Employee, dies during the period beginning February 15, 1968 and ending April 14, 1968,

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT 47

Effective December 16, 1967, by adding to Section 15 thereof, the following paragraph:

"The statement required to be furnished by the Insurance Company to the Policyholder after the end of each policy year as specified in the preceding provisions of this Section, will also specify that part of each of the items of the statement which is attributable to optional insurance hereunder."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D.C.___ this ___4th___ day of ___June___ 19 68

### UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___John W. Macy, Jr.___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this ___second___ day of ___July___ 19 68

### METROPOLITAN LIFE INSURANCE COMPANY,

_Maur C. Hillenbeck_
Secretary

___Wm. N. Mayer, Jr.___
(Registrar)

COPY

Form G.1985-22

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

## AMENDMENT 49

Effective August 1, 1968,

A. By substituting "chapter 87 of title 5, United States Code" for

    (1) "the Federal Employees' Group Life Insurance Act of 1954" on the face page thereof and in item (d) of the second paragraph of Section 16 thereof,

    (2) "the Federal Employees' Group Life Insurance Act of 1954 (other than the provisions of Section 10 thereof), as amended to and including December 16, 1967" in the first sentence of Section 23 thereof, and

    (3) "said Act enacted after December 16, 1967" in the second sentence of said Section 23.

B. By substituting for the first three paragraphs of Section 1 thereof, the following paragraphs:

"The term 'Employee' means a person who is considered, under applicable laws and regulations, to be an employee for the purposes of chapter 87 of title 5, United States Code."

C. By substituting "the applicable provisions of chapter 87 of title 5, United States Code" for

    (1) "subsection (d) of Section 2 of the Federal Employees' Group Life Insurance Act of 1954, as amended" in the first paragraph of Section 2 thereof and in item (5) of the second paragraph of Section 13 thereof,

    (2) "subsection (c) of Section 5 of the Federal Employees' Group Life Insurance Act of 1954" in the fourth paragraph of Section 11 thereof and in the second paragraph of Section 15 thereof, and

    (3) "Section 7 of the Federal Employees' Group Life Insurance Act of 1954, as amended August 11, 1955" in Section 22 thereof.

Form G.15e3 .4

AMENDMENT 49 (Continued)

    D. By deleting the last sentence in Item (3) of the first paragraph of Section 3 thereof.

    E. By substituting "subchapter I of chapter 81 of title 5, United States Code" for "the Federal Employees' Compensation Act"

    (1) In the first sentence of the second paragraph of Section 3 thereof,

    (2) In the first sentence in Item (8) of the second paragraph of said Section 3, and

    (3) In the first paragraph of Section 11 thereof.

    F. By substituting "law" for "Act"

    (1) In the first paragraph of Section 2 thereof,

    (2) In the first and third sentences in Item (8) of the second paragraph of Section 3 thereof, and

    (3) In two places in Item (d) of the second paragraph of Section 16 thereof.

    The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D.C.___ this ___8th___ day of ___October___ 19_68_.

        UNITED STATES CIVIL SERVICE COMMISSION
            (Policyholder)

      By___John W. Macy, Jr.___

    (Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at _New York, New York_ this ___14th___ day of ___October___ 19_68_

        METROPOLITAN LIFE INSURANCE COMPANY,

         _Helen E. Hollenbeck_
           Secretary

___Wm. R. Mayer, Jr.___
   (Registrar)

Form G.1985-24

COPY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

## AMENDMENT 50

### Effective February 15, 1969,

A. By substituting "PART II - SCHEDULE OF INSURANCE, EXCLUSIVE OF OP-TIONAL INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 15, 1969" for the caption in Part II of the Schedule of Insurance in subsection (A) of Section 4 thereof.

B. By adding immediately after Part II of the Schedule of Insurance in subsection (A) of said Section 4, the following:

"PART IIA-SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 15, 1969

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | $ 8,000 | $10,000 | $10,000 |
| $ 8,000 | 9,000 | 11,000 | 11,000 |
| 9,000 | 10,000 | 12,000 | 12,000 |
| 10,000 | 11,000 | 13,000 | 13,000 |
| 11,000 | 12,000 | 14,000 | 14,000 |
| 12,000 | 13,000 | 15,000 | 15,000 |
| 13,000 | 14,000 | 16,000 | 16,000 |
| 14,000 | 15,000 | 17,000 | 17,000 |
| 15,000 | 16,000 | 18,000 | 18,000 |
| 16,000 | 17,000 | 19,000 | 19,000 |
| 17,000 | 18,000 | 20,000 | 20,000 |
| 18,000 | 19,000 | 21,000 | 21,000 |
| 19,000 | 20,000 | 22,000 | 22,000 |
| 20,000 | 21,000 | 23,000 | 23,000 |
| 21,000 | 22,000 | 24,000 | 24,000 |
| 22,000 | 23,000 | 25,000 | 25,000 |
| 23,000 | 24,000 | 26,000 | 26,000 |

Form G.1985-25

- 2 -

AMENDMENT 50 (Continued)

| Annual Compensation | | Life | Insurance for Death or Dismemberment by |
|---|---|---|---|
| Greater Than | But Not Greater Than | Insurance | Accidental Means |
| $24,000 | $25,000 | $27,000 | $27,000 |
| 25,000 | 26,000 | 28,000 | 28,000 |
| 26,000 | 27,000 | 29,000 | 29,000 |
| 27,000 | 28,000 | 30,000 | 30,000 |
| 28,000 | 29,000 | 31,000 | 31,000 |
| 29,000 | 30,000 | 32,000 | 32,000 |
| 30,000 | 31,000 | 33,000 | 33,000 |
| 31,000 | 32,000 | 34,000 | 34,000 |
| 32,000 | 33,000 | 35,000 | 35,000 |
| 33,000 | 34,000 | 36,000 | 36,000 |
| 34,000 | 35,000 | 37,000 | 37,000 |
| 35,000 | 36,000 | 38,000 | 38,000 |
| 36,000 | 37,000 | 39,000 | 39,000 |
| 37,000 | 38,000 | 40,000 | 40,000 |
| 38,000 | 39,000 | 41,000 | 41,000 |
| 39,000 | 40,000 | 42,000 | 42,000 |
| 40,000 | 41,000 | 43,000 | 43,000 |
| 41,000 | 42,000 | 44,000 | 44,000 |
| 42,000 | — | 45,000 | 45,000* |

C. By substituting "PART III – SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER FEBRUARY 14, 1968 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 15, 1969" for the caption in Part III of the Schedule of Insurance in subsection (A) of said Section 4.

D. By adding immediately after Part III of the Schedule of Insurance in subsection (A) of said Section 4, the following:

"PART IIIA–SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 15, 1969

The amount of optional Life Insurance and the amount of optional Insurance for Death or Dismemberment by Accidental Means is the greater of (a) $10,000, or (b) the excess, if any, of the amount of the Employee's annual compensation (if not a multiple of $1,000, such annual compensation to be taken to the next lower multiple of $1,000) over the amount of Life Insurance or the amount of Insurance for Death or Dismemberment by Accidental Means, respectively, in accordance with Part IIA above."

Form G.1985-25

AMENDMENT  50  (Continued)

  **E.** By substituting "Part II of the Schedule of Insurance in subsection (A) of this Section as to any such Employee whose retirement occurs prior to February 15, 1969, or Part IIA of the Schedule of Insurance in subsection (A) of this Section as to any such Employee whose retirement occurs on or after February 15, 1969, in either case" for "Part II of the Schedule of Insurance in subsection (A) of this Section " appearing in the first sentence of the second paragraph of subsection (B) of said Section 4.

  **F.** By substituting "Part III of the Schedule of Insurance in subsection (A) of this Section as to any such Employee whose retirement occurs prior to February 15, 1969, or Part IIIA of the Schedule of Insurance in subsection (A) of this Section as to any such Employee whose retirement occurs on or after February 15, 1969, which, in either case," for "Part III of the Schedule of Insurance in subsection (A) of this Section, which" appearing in the third paragraph of subsection (B) of said Section 4.

    The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ____Washington, D.C.____ this ____10____ day of ____November____ 19 69

      UNITED STATES CIVIL SERVICE COMMISSION
          (Policyholder)

    By ____Robert E. Hampton____

  (Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ____New York, New York____ this ____twenty-first____ day of ____November____ 19 69

      METROPOLITAN LIFE INSURANCE COMPANY,

       *Walter E. Hollenbeck*
         Secretary

____Wm. H. Vaner Jr.____
  (Registrar)

Form G.1985-25

C O P Y

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 51

Effective _____ March 1, 1970 _____,

A. By substituting for Sections 2 and 2A thereof, the following section:

"Section 2. EFFECTIVE DATES OF INSURANCE.—Eligibility of Employees for insurance hereunder and the effective dates of such insurance shall be determined in accordance with regulations of the Policyholder made pursuant to chapter 87 of title 5, United States Code.

In no event shall an Employee be insured for optional insurance prior to the effective date of his insurance exclusive of optional insurance."

B. By substituting for the second paragraph of Section 3 thereof, the following paragraph:

"However, if the insurance on any Employee insured hereunder would cease because of the happening of the event specified in either of items (1) or (2) of the preceding paragraph and the Employee meets the conditions for continuation of insurance after retirement or while receiving benefits under subchapter I of chapter 81 of title 5, United States Code, as such conditions are specified in the regulations of the Policyholder made pursuant to chapter 87 of title 5, United States Code, his Life Insurance only shall be continued or reinstated for the amount of insurance and period of time specified in said regulations."

C. By substituting "as specified in the second paragraph of Section 3 hereof" for "as specified in item (A) of the second paragraph of Section 3 hereof" in the third paragraph of Section 6 thereof.

D. By substituting for items (4) and (5) in the second paragraph of Section 13 thereof, the following:

"(4) The conditions and specifications referred to in the second paragraph of Section 3 hereof, as relating to continuation of insurance after retirement or while the Employee is receiving benefits under subchapter I of chapter 81 of title 5, United States Code.

AMENDMENT 51    (Continued)

    (5)  The effective dates of Employees' insurance in accordance with
         Section 2 hereof."

       E.  By deleting the second sentence in Section 23 thereof.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at   Washington, D.C.   this     23rd     day of    March     19 70

                            UNITED STATES CIVIL SERVICE COMMISSION
                                    (Policyholder)

                    By       Robert E. Hampton

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at   New York, New York   this    ninth     day of    April     19 70

                        METROPOLITAN LIFE INSURANCE COMPANY,

                              Walter E. Hollenbeck
                                Secretary

    Wm. H. Mayer, Jr.
        (Registrar)

Form G.1985-26                 COPY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 52

Effective for the policy year commencing July 1, 1972, by substituting for Section 21 thereof, as amended, the following:

"Section 21.  SCHEDULES OF BASIC PREMIUM RATES.

Schedule of Bi-Weekly Basic Life Insurance Premium Rates Per
$1,000 of Life Insurance - Males"

| Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium |
|---|---|---|---|---|---|---|---|
| 15 | $0.06 | 35 | $0.10 | 55 | $0.50 | 75 | $2.57 |
| 16 | .06 | 36 | .10 | 56 | .54 | 76 | 2.77 |
| 17 | .06 | 37 | .11 | 57 | .59 | 77 | 3.00 |
| 18 | .07 | 38 | .11 | 58 | .64 | 78 | 3.26 |
| 19 | .07 | 39 | .12 | 59 | .70 | 79 | 3.54 |
| 20 | .07 | 40 | .14 | 60 | .75 | 80 | 3.85 |
| 21 | .07 | 41 | .15 | 61 | .82 | 81 | 4.18 |
| 22 | .07 | 42 | .16 | 62 | .89 | 82 | 4.52 |
| 23 | .08 | 43 | .17 | 63 | .96 | 83 | 4.89 |
| 24 | .08 | 44 | .19 | 64 | 1.04 | 84 | 5.25 |
| 25 | .08 | 45 | .20 | 65 | 1.13 | 85 | 5.64 |
| 26 | .08 | 46 | .22 | 66 | 1.23 | 86 | 6.05 |
| 27 | .08 | 47 | .24 | 67 | 1.34 | 87 | 6.48 |
| 28 | .08 | 48 | .27 | 68 | 1.47 | 88 | 6.94 |
| 29 | .08 | 49 | .29 | 69 | 1.60 | 89 | 7.44 |
| 30 | .08 | 50 | .32 | 70 | 1.74 | 90 | 7.99 |
| 31 | .08 | 51 | .35 | 71 | 1.90 | 91 | 8.60 |
| 32 | .08 | 52 | .38 | 72 | 2.05 | 92 | 9.31 |
| 33 | .09 | 53 | .41 | 73 | 2.21 | 93 | 10.13 |
| 34 | .09 | 54 | .45 | 74 | 2.39 | 94 | 11.09 |

AMENDMENT 52 _____ (Continued)

The bi-weekly basic Life Insurance premium rate for a female life is 60% of the bi-weekly basic Life Insurance premium rate specified above for a male life.

In computing the average basic bi-weekly Life Insurance premium rate pursuant to Section 14 hereof there shall be added to the average basic bi-weekly Life Insurance premium determined on the basis of the premiums shown above an amount equal to $2.40 divided by the total amount of Life Insurance in force under this Policy on the date of such computation expressed in thousands and fractions thereof.

The bi-weekly basic premium rate for insurance for Death or Dismemberment by Accidental Means shall be $0.0231 per $1,000 of the full amount of such insurance."

The foregoing Schedules of Basic Premium Rates shall remain in effect for policy years subsequent to the policy year commencing July 1, 1972 subject to further readjustment as provided in subsection (A) of Section 14 of said Group Policy.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this __13th__ day of __October__ 19 _72_.

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___Robert E. Hampton___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, N. Y.__ this __sixteenth__ day of __November__ 19 _72_

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Vice-President and Secretary

Myron Wachheiser
(Registrar)

Form C.1985-77

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 53

Effective July 1, 1972, by substituting for Section 20 thereof, as amended, the following:

"Section 20. OPTIONAL MODES OF SETTLEMENT.— After the death of an Employee, arrangements may be made whereby the amount of Insurance due at the death of the Employee will be paid in a manner other than in one sum to the Beneficiary or other person entitled to receive payment. Information concerning such modes of settlement will be furnished by the Office upon written request."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at  Washington, D. C.  this  13th  day of  October  19 72.

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By  Robert E. Hampton

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at  New York, N. Y.  this  sixteenth  day of  November  19 72

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Vice-President and Secretary

Myron Hochheiser
(Registrar)

COPY

Form G.1985-28

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of Title 5, United States Code, is hereby amended as follows:

AMENDMENT 54

Effective July 1, 1972, by inserting "(1) For Any Policy Year beginning Prior to July 1, 1972" as a caption immediately after the heading "Schedule of Maximum Expense and Risk Charges" in the schedule following the fifth paragraph of Section 15 thereof, as amended, and by adding to said schedule, the following:

"(2) For Any Policy Year beginning on or Subsequent to July 1, 1972

| Item | Maximum Charge |
|------|----------------|
| (a) Expense Charges | |
| (i) Taxes | The actual accrued amount of taxes directly attributable to the premiums, amounts of Insurance in force, or reserves under this Policy, as determined by the Insurance Company. |
| (ii) Expense of administration | The amount of all expenses incurred by the Insurance Company in administering this Policy, including the expense of maintenance and operation of the Office and all other expenses attributable to this Policy, as determined by the Insurance Company. Subpart B of Part 15 of Chapter 1 of Title 32, Code of Federal Regulations, shall be used as a guide in the determination of types of expense which are acceptable as expenses of administration and if, on audit, any item of expense of administration is found to be based on a type of expense which under the above regulations is an unacceptable type of expense, an appropriate adjustment will be made in a subsequent contract term accounting statement. |
| (b) Risk Charge | (i) The sum of 0.4% of that part of Premiums for the policy year which is not in excess of $125 million, and 0.2% of that part of Premiums for the policy year which is in excess of $125 million, or (ii) $850,000, whichever is less." |

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this ____2nd____ day of ____November____ 1973

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____Robert E. Hampton_____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, New York__ this ____20th____ day of ____November____ 1973

METROPOLITAN LIFE INSURANCE COMPANY,

_____Wm. H. Mayer, Jr._____
(Registrar)

Donald A. Odell
Vice-President and Secretary

Form G.1985-29

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 55

Effective ____July 1, 1973____, by adding to Section 13 thereof, the following paragraph:

"Records and files which relate to the administration of the insurance under this Policy and are maintained by the Office, including claim files, shall be subject to such general disposal program as may be agreed upon by the Policyholder and the Office."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this _____25th_____ day of ___October___ 19 73

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____Robert E. Hampton_____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, New York__ this _____20th_____ day of ___November___ 19 73

METROPOLITAN LIFE INSURANCE COMPANY,

_____Wm. H. Mayer, Jr.____
(Registrar)

Donald A. Odell
Vice-President and Secretary

Form G.1985-30

C O P Y

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

## AMENDMENT 56

Effective July 1, 1973,

A.  By adding "(including adequate provision for adjustment, as specified in the next following paragraph, in charges previously made on account of excess mortality costs under individual policies issued pursuant to Section 6 hereof)" immediately following "all charges accrued hereunder" in the fifth sentence of the third paragraph of Section 15 thereof.

B.  By substituting for the last sentence of the fourth paragraph of said Section 15, the following:

"The charges for such excess mortality costs shall be as follows:

(1)  As to individual policies issued prior to July 1, 1973:

Such charge shall be at the rate of $63 for each $1,000 of life insurance issued under each such policy.

(2)  As to individual policies issued on or after July 1, 1973:

A tentative charge, differentiating between (i) life insurance issued under any such policy which is attributable to the Employee's Life Insurance hereunder exclusive of optional Life Insurance, and (ii) life insurance issued under any such policy which is attributable to the Employee's optional Life Insurance hereunder, will be made as of the date of issue of each such policy. Such tentative charge will be subject to periodic adjustment on the basis of actual and projected mortality experience under such individual policies during the ten years following issue of any such policy. The rates at which initial tentative charges are made, and the methods for subsequent adjustments in such tentative charges, will be determined from time to time by mutual agreement between the Policyholder and the Insurance Company.

Form G.1985-31

COPY

AMENDMENT 56    (Continued)

For the purposes hereof, in the case of the cessation of the total
amount of an Employee's Life insurance hereunder, the amount of
life insurance issued under any such individual policy which is
attributable to an Employee's optional Life insurance hereunder is
the excess, if any, of the amount of life insurance under such
individual policy over the amount of the Employee's Life insurance
exclusive of optional Life insurance on the date of such cessation."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___11th___ day of ___June___ 19 75

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___ROBERT E. HAMPTON___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this ___19th___ day of ___June___ 19 75

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Senior Vice-President and Secretary

___Richard D. Zinke___
(Registrar)

Form G.1985-31                    COPY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 57

Effective January 1, 1975, by adding to said Group Policy, the following:

"During the performance of this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

(2) The contractor agrees that if a handicapped individual files a complaint with the contractor that he is not complying with the requirements of Section 503(a) of Title V, Public Law 93-112, the Rehabilitation Act of 1973, e will

      (a) investigate the complaint and take appropriate action consistent with the rules and regulations of the Secretary of Labor in 20 CFR Ch VI, Part 741.29 and

      (b) maintain on file for three years, the record regarding the complaint and the actions taken.

(3) The contractor agrees that if a handicapped individual files a complaint with the Department of Labor that he has not complied with the requirements of Section 503(a) of Title V, Public Law 93-112, the Rehabilitation Act of 1973, he will

      (a) cooperate with the Department in its investigation of the complaint, and

      (b) provide all pertinent information regarding his employment practices with respect to the handicapped.

Form G.1985-32

SEE AMEND. 61

C O P Y

(4) The contractor agrees to comply with the rules and regulations of the Secretary of Labor in 20 CFR Ch VI, Part 741.

(5) In the event of the contractor's noncompliance with the requirements of the nondiscrimination clauses of this contract or with any of such rules, regulations or orders, this contract may be cancelled, terminated or suspended in whole or in part.

(6) The nondiscrimination clauses of this contract shall be included in all subcontracts over $2,500.

(7) The contractor agrees

    (a) to establish an affirmative action program, including appropriate procedures consistent with the guidelines and the rules of the Secretary of Labor, which will provide the affirmative action regarding the employment and advancement of the handicapped required by Section 503(a) of Title V of Public Law 93-112, the Rehabilitation Act of 1973,

    (b) to publish the program in his employee's personnel handbook or otherwise distribute a copy to all personnel,

    (c) to review his program on or before March 31st of each year and to make such changes as may be appropriate, and

    (d) to designate one of his principal officials to be responsible for the establishment and operation of the program.

(8) The contractor agrees to permit the examination by appropriate contracting agency officials or the Assistant Secretary for Employment Standards or his designee of pertinent books, documents, papers and records concerning his employment and the advancement of the handicapped.

(9) The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices, in a form to be prescribed by the Assistant Secretary for Employment Standards, provided by the contracting officer stating the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped employees and applicants for employment and the rights and remedies available.

Form G.1985-32

©©℗Y

AMENDMENT 57 - (Continued)

(10) The contractor will notify each labor union or representative of workers with which he has a collective bargaining agreement or other contract understanding, that the contractor is bound by the terms of Section 503(a) of Title V of Public Law 93-112, the Rehabilitation Act of 1973, and is commited to take affirmative action to employ and advance in employment physically and mentally handicapped individuals.

(11) The contractor agrees to submit a copy of his affirmative action program to the Assistant Secretary for Employment Standards within 90 days after the award to him of a contract or subcontract.

(12) The contractor agrees to submit a summary report to the Assistant Secretary for Employment Standards, by March 31st of each year during performance of the contract, and by March 31st of the year following completion of the contract, in the form prescribed by the Assistant Secretary, covering employment and complaint experience, accommodations made and all steps taken to effectuate and carry out the commitments set forth in the affirmative action program."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this ____11th____ day of ____June____ 19 75

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ____ROBERT  E.  HAMPTON____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, New York__ this ____19th____ day of ____June____ 19 75

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Senior Vice-President and Secretary

Richard D. Zinke
(Registrar)

Form G.1985-32

COPY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

## AMENDMENT 58

Effective October 1, 1975, by substituting for Section 4 thereof, as amended, the following:

"Section 4. AMOUNT OF INSURANCE.-(A) Applicable Prior to the Employee's Retirement:—The amount of insurance hereunder on any Employee shall be in accordance with the Schedule set forth below. Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective (1) on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later, or (2) on the effective date of the change when a retroactive adjustment is actually the correction of an error, unless otherwise stipulated in a law providing for the change.

Part I – SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL
INSURANCE, PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH
BEGINS ON OR AFTER FEBRUARY 14, 1968

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | $1,000 | $1,000 | $1,000 |
| $1,000 | 2,000 | 2,000 | 2,000 |
| 2,000 | 3,000 | 3,000 | 3,000 |
| 3,000 | 4,000 | 4,000 | 4,000 |
| 4,000 | 5,000 | 5,000 | 5,000 |
| 5,000 | 6,000 | 6,000 | 6,000 |
| 6,000 | 7,000 | 7,000 | 7,000 |
| 7,000 | 8,000 | 8,000 | 8,000 |
| 8,000 | 9,000 | 9,000 | 9,000 |
| 9,000 | 10,000 | 10,000 | 10,000 |
| 10,000 | 11,000 | 11,000 | 11,000 |
| 11,000 | 12,000 | 12,000 | 12,000 |
| 12,000 | 13,000 | 13,000 | 13,000 |
| 13,000 | 14,000 | 14,000 | 14,000 |
| 14,000 | 15,000 | 15,000 | 15,000 |
| 15,000 | 16,000 | 16,000 | 16,000 |
| 16,000 | 17,000 | 17,000 | 17,000 |
| 17,000 | 18,000 | 18,000 | 18,000 |
| 18,000 | 19,000 | 19,000 | 19,000 |
| 19,000 | - | 20,000 | 20,000 |

Form G.1985-33

AMENDMENT 58 (Continued)

PART II - SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE,
ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER
FEBRUARY 14, 1968

| Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|
| The amount of the Employee's Life Insurance shall be an amount equal to the sum of (a) $2,000, and (b) the Employee's Annual Compensation (as fixed by law or regulation). Such amount of Life Insurance shall be subject to (i) a minimum amount of Life Insurance of $10,000 and (ii) a maximum amount of Life Insurance equal to the Annual Compensation rate for positions at Level II of the Executive Schedule under section 5313 of Title 5, United States Code, as in effect from time to time, plus $2,000. If the Annual Compensation referred to is not a multiple of $1,000 it shall be taken to the next higher multiple of $1,000 for the purpose of this provision. | The amount of the Employee's Insurance for Death or Dismemberment by Accidental Means shall be an amount equal to the amount of his Life Insurance. |

PART III - SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER
FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER
FEBRUARY 14, 1968

The amount of optional Life Insurance and the amount of optional insurance
for Death or Dismemberment by Accidental Means is the greater of (a) $10,000,
or (b) the excess, if any, of the amount of the Employee's annual compensation
(if not a multiple of $1,000, such annual compensation to be taken to the next
lower multiple of $1,000) over the amount of Life Insurance or the amount of
Insurance for Death or Dismemberment by Accidental Means, respectively, in
accordance with Part II above.

Form G.1985-33

COPY

AMENDMENT 58 (Continued)

(B) Applicable After the Employee's Retirement:—The amount of Life Insurance hereunder on any Employee after retirement shall be the basic amount of Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement of 25% of the basic amount of Life Insurance. The terms "basic amount of Life Insurance" and "effective reduction date" are defined in the following paragraphs of this subsection (B). In the case of an Employee whose retirement occurs on or after December 16, 1967, the amount of Life Insurance at any time after retirement shall be separately determined, as hereinafter specified, in respect of (1) Life Insurance exclusive of optional Life Insurance, and (2) optional Life Insurance, if any.

With respect to an Employee whose retirement occurs on or after December 16, 1967, "basic amount of Life Insurance" means, as to Life Insurance exclusive of optional Life Insurance, the amount of Life Insurance in accordance with Part II of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and "effective reduction date" means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part II of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective.

With respect to an Employee whose retirement occurs on or after February 14, 1968, "basic amount of Life Insurance" means, as to optional Life Insurance, so much of the amount of optional Life Insurance in force on his account on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section, which had been in force for not less than

(a) the full period or periods of service during which optional insurance was available to him, or

(b) the twelve years of service immediately preceding such date and during which the optional insurance was available to him,

Form G.1985-33

COPY

AMENDMENT 58 (Continued)

whichever is shorter. For the purposes of this paragraph, in the case of an Employee who was on the roll of his employing office on February 14, 1968 and who was insured for optional insurance on April 14, 1968 or the date of his retirement, if earlier, such optional insurance shall be deemed to have been in force for the full period or periods of service during which optional insurance was available to him prior to such earlier date. If the Policyholder receives written notice from the Employee that optional Life Insurance on his account is not to be continued after retirement, the provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement.

With respect to an Employee whose retirement occurs on or after December 16, 1967 but prior to February 14, 1968, "basic amount of Life Insurance" means, as to optional Life Insurance, an amount of optional Life Insurance in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part III of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective. The provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement, unless written election of optional Life Insurance by the Employee is received by the Policyholder on or prior to April 14, 1968.

With respect to an Employee whose retirement occurs on or after September 23, 1959 but prior to December 16, 1967, "basic amount of Life Insurance" means the amount of Life Insurance in accordance with Part I of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and "effective reduction date" means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later.

Form G.1985-33

COPY

AMENDMENT 58 (Continued)

With respect to an Employee whose retirement occurs prior to
September 23, 1959, "basic amount of Life Insurance" means the amount
of Life Insurance in accordance with Part I of the Schedule of Insur-
ance in subsection (A) of this Section based on the amount of his annual
compensation on (a) the date his insurance would otherwise have ceased
because of the happening of the event specified in either of items (1)
or (2) of the first paragraph of Section 3 hereof, or (b) his 65th birth-
day, whichever is earlier (or in the case of any such Employee who first
became or again became insured hereunder after his 65th birthday, based
on (I) the amount of his annual compensation on the latest date he became
insured hereunder, or (II) the amount of his annual compensation on his
65th birthday if the Employee was eligible to be insured hereunder on
his 65th birthday, whichever is the lesser); and "effective reduction
date" means the first day of the second calendar month after his 65th
birthday."

The foregoing amendment is to be attached to and made part of said
Group Policy.

Signed at ___Washington, D.C.___ this ___twelfth___ day of ___May___ 19_76_

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___Robert E. Hampton___
Chairman
(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___twenty-fifth___ day of ___May___ 19_76_

METROPOLITAN LIFE INSURANCE COMPANY,

___Richard D. Zinke___
(Registrar)

Donald A. Odell
Vice-President and Secretary

Form G.1985-33

COPY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

## AMENDMENT 59

Effective January 1, 1976,

A.  By adding at the end of Section 4 thereof, the following:

"In addition to the amounts of Life Insurance and Insurance for Death or
Dismemberment by Accidental Means, if any, in accordance with the pro-
visions of the preceding subsections (A) or (B), whichever is applicable,
the Office shall pay interest, as determined by the Insurance Company to
the Beneficiary of record or claimant, as specified in Section 11 hereof,
on

    (i) any delayed payment of claims paid in one sum from
    the date of death of the Employee to the date of the
    payment of such claims, and

    (ii) any delayed payment of optional modes of settlement,
    as specified in Section 20 hereof, from the date of death
    of the Employee to the effective date of the supplementary
    contract issued in connection with such optional modes of
    settlement,

provided, in either case, the Employee's death occurs on or after January 1,
1976, and provided further, that:

    1.  no interest shall be payable on delayed payment of claims under
    the Insurance for Death or Dismemberment by Accidental Means
    for any loss other than loss of life, and

    2.  no interest shall be payable for periods (a) in excess of two
    years or (b) when payment has been prevented pursuant to
    orders, regulations or advice of the United States Government,
    and

    3.  no interest shall accrue for any period during which payment
    is delayed due to the inability to locate the claimant; however
    payment of interest will be considered when a proper claimant
    files proof of claim under the terms of the Group Policy."

Form G.1985-34

COPY

B. By substituting for the first sentence of subsection (A) of Section 5 thereof, the following:

"Upon receipt by the Office of satisfactory proof, in writing, that any Employee shall have died while insured hereunder, the Office shall pay, subject to the terms hereof, the amount of Life Insurance, if any (plus interest, if any, as determined by the Insurance Company) in force hereunder on account of such Employee in accordance with Section 4 hereof, at the date of his death."

C. By substituting for the first sentence of the second paragraph of subsection (B) of said Section 5, the following:

"Benefits (plus interest, if any, as determined by the Insurance Company) for loss of life as specified in this subsection (B) are payable to the Beneficiary of record of the Employee or otherwise as provided in Section 11 hereof.

D. By substituting for item (3) of Section 15 thereof, the following:

"(3) The aggregate amounts of all mortality and other claim charges, except interest charges, if any, for the delayed payment of death claims and accidental death claims, incurred under this Policy from the date of issue to the end of such policy year."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this _____thirtieth_____ day of ___April_____ 19__76__

__UNITED STATES CIVIL SERVICE COMMISSION__
(Policyholder)

By _____Robert E. Hampton_____
Chairman

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this___seventeenth___ day of _____May_____ 19_76_.

METROPOLITAN LIFE INSURANCE COMPANY,

*Donald A. Odell*
Senior Vice-President and Secretary

__Richard D. Zinke__
(Registrar)

Form G.1985-34

COPY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 60

Effective October 1, 1977, by substituting for the second paragraph of Section 15 thereof, the following:

"If item (5) is a positive amount, such amount shall be held by the Insurance Company as a Contingency Reserve to be used for charges under this Policy only. Such Contingency Reserve shall bear interest at a rate to be determined in advance of each policy year by the Insurance Company, which rate shall be approved by the Policyholder as being consistent with the rates generally used by the Insurance Company for similar funds held under other group life insurance policies. Such interest shall be computed as of the end of each policy year on the mean amount of the Contingency Reserve during that policy year at the rate applicable to that policy year. If the actual net investment income generated by the financial transactions under the Group Policy for the calendar year ending during the policy year is in excess of the interest that is credited on the Contingency Reserve at the rates previously guaranteed by the Insurance Company, the interest on the Contingency Reserve shall be increased by the Insurance Company to reflect such actual net investment income. If such actual net investment income is less than such interest at the rates previously guaranteed by the Insurance Company, the deficit will be carried forward to offset the actual net investment income generated in the following calendar year or years. The total amount of interest so calculated shall be added to the amount of the Contingency Reserve as of the end of such policy year or upon the request of the Policyholder shall be paid to the Policyholder within ninety days after the end of such policy year for deposit in the Treasury of the United States for credit to the fund created by subsection (c) of Section 5 of the Federal Employees' Group Life Insurance Act of 1954."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D.C. this ____9th____ day of ____November____ 19 77

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By____Alan K. Campbell____

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at __New York, N.Y.__ this __twenty-second__ day of ____November____ 19 77

METROPOLITAN LIFE INSURANCE COMPANY,

____Richard D. Zinke____
(Registrar)

J. Austin Lyons, Jr.
General Counsel & Secretary

Form G.1985-35

COPY

  
GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of Title 5, United States Code, is hereby amended as follows:

AMENDMENT 61

Effective May 17, 1976, by substituting for the provisions added to said Group Policy by Form G.1985-32 (Amendment 57), the following:

"During the performance of this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: employment, upgrading, demotion or transfer, recruitment, or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

(2) The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Rehabilitation Act of 1973, Section 503(a) of Title V, Public Law 93-112, as amended by Public Law 93-516.

(3) In the event of the contractor's noncompliance with the requirements of the non-discrimination clauses of this contract, actions for noncompliance may be taken in accordance with the rules, regulations, and relevant orders of the Secretary of Labor in 20-CFR Ch VI, Part 741.

(4) The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices, in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, United States Department of Labor, provided by or through the contracting officer. Such notices shall state the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped employees and applicants for employment, and the rights of applicants and employees.

Form G.1985-36

(5) The contractor will notify each labor union or representative of workers with which he has a collective bargaining agreement or other contract understanding, that the contractor is bound by the terms of section 503(a) of Title V of Public Law 93-112, as amended by Public Law 93-516, of the Rehabilitation Act of 1973, and is committed to take affirmative action to employ and advance in employment physically and mentally handicapped individuals.

(6) The contractor will include the provisions of the foregoing paragraphs (1) through (5) in every subcontract or purchase order of $2,500 or more unless exempted by rules, regulations, or orders of the Secretary of Labor in 20 CFR Ch VI, Part 741, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce such provisions, including action for noncompliance."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this ___19th___ day of __October___ 19_76_

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____Robert E. Hampton_____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, N.Y.__ this __1st__ day of __November__ 19_76_

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Senior Vice-President and Secretary

_____Richard D. Zinke_____
(Registrar)

Form G.1985-36

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No.   17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

### AMENDMENT 62

Effective January 1, 1977, by substituting for the last sentence of Section 17 thereof, as amended, the following:

"The term 'renewal date' as used in this Policy shall mean the last premium due date in the month of November in each of the calendar years 1955 through 1960, both inclusive, July 1st for the calendar years 1961 through 1976, both inclusive, and October 1st in the calendar year 1977 and each subsequent calendar year."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___fourth___ day of ___April___ ___1977___

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _~~Georgian H. Sheldon~~_

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___Twelfth___ day of ___April___ 19 ___77___

METROPOLITAN LIFE INSURANCE COMPANY,

_~~J. Austin Lyons Jr.~~_
J. Austin Lyons, Jr.
General Counsel & Secretary

_~~Richard D. Quile~~_
(Registrar)

Form G.1985-37

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and Issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 63

I. Effective November 2, 1978,

A. By substituting for the first paragraph of Section 4 thereof, as amended, the following:

" Section 4. AMOUNT OF INSURANCE.-

(A) Applicable Prior to the Employee's Retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code:--The amount of insurance hereunder on any Employee shall be in accordance with the Schedule set forth below. -Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective (1) on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later, or (2) on the effective date of the change when a retroactive adjustment is actually the correction of an error, unless otherwise stipulated in a law providing for the change."

B. By substituting for subsection (B) of Section 4 thereof, as amended, the following:

" (B) Applicable After the Employee's Retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code:--The amount of Life Insurance hereunder on any Employee after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be the basic amount of Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 25% of the basic amount of Life Insurance. The terms 'basic amount of Life Insurance' and 'effective reduction date' are defined in the following paragraphs of this subsection (B). In the case of an Employee whose retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code occurs on or after November 2, 1978, the amount of Life Insurance at any time after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall

Form G.1985-32

COPY

AMENDMENT 63 (Continued)

be separately determined, as hereinafter specified, in respect of (1) Life Insurance exclusive of optional Life Insurance and (2) optional Life Insurance, if any. In the case of an Employee whose retirement occurs on or after December 16, 1967 but prior to November 2, 1978, the amount of Life Insurance at any time after retirement shall be separately determined, as hereinafter specified, in respect of (1) Life Insurance exclusive of optional Life Insurance, and (2) optional Life Insurance, if any.

With respect to an Employee whose retirement occurs on or after December 16, 1967, or an Employee whose entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code occurs on or after November 2, 1978, 'effective reduction date' means the first day of the second calendar month after (1) the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, or (2) his 65th birthday, whichever is later.

With respect to an Employee whose retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code occurs on or after November 2, 1978, 'basic amount of Life Insurance' means, as to Life Insurance, so much of the amount of Life Insurance in force on his account on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Parts II or III, whichever is applicable to the Employee, of the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

(a) the full period or periods of service during which such insurance was available to him or

(b) the five years of service immediately preceding such date and during which such insurance was available to him,

whichever is shorter. If the Policyholder receives written notice from the Employee that optional Life Insurance on his account is not to be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, the provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement or entitlement to such benefits.

With respect to an Employee whose retirement occurs on or after December 16, 1967 but prior to November 2, 1978, 'basic amount of Life Insurance' means, as to Life Insurance exclusive of optional Life Insurance, the amount of Life Insurance in accordance with Part II of the Schedule of Insurance in subsection (A) of this Section based on the amount of his

Form G.1985-38

COPY

annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part II of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective.

With respect to an Employee whose retirement occurs on or after February 14, 1968 but prior to November 2, 1970. 'basic amount of Life Insurance' means, as to optional Life Insurance, so much of the amount of optional Life Insurance in force on his account on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section, which had been in force for not less than

(a) the full period or periods of service during which optional insurance was available to him, or

(b) the twelve years of service immediately preceding such date and during which the optional insurance was available to him,

whichever is shorter. For the purposes of this paragraph, in the case of an Employee who was on the roll of his employing office on February 14, 1968 and who was insured for optional insurance on April 14, 1968 or the date of his retirement, if earlier, such optional insurance shall be deemed to have been in force for the full period or periods of service during which optional insurance was available to him prior to such earlier date. If the Policyholder receives written notice from the Employee that optional Life Insurance on his account is not to be continued after retirement, the provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement.

With respect to an Employee whose retirement occurs on or after December 16, 1957 but prior to February 14, 1968, 'basic amount of Life Insurance' means, as to optional Life Insurance, an amount of optional Life Insurance in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part III of the Schedule of Insurance in subsection (A) of this Section relating to the

Form G.1985-38

COPY

period for which such schedule is effective. The provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement, unless written election of optional Life Insurance by the Employee is received by the Policyholder on or prior to April 14, 1963.

With respect to an Employee whose retirement occurs on or after September 23, 1959 but prior to December 16, 1967, 'basic amount of Life Insurance' means the amount of Life Insurance in accordance with Part I of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and 'effective reduction date' means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later.

With respect to an Employee whose retirement occurs prior to September 23, 1959, 'basic amount of Life Insurance' means the amount of Life Insurance in accordance with Part I of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on (a) the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, or (b) his 65th birthday, whichever is earlier (or in the case of any such Employee who first became or again became insured hereunder after his 65th birthday, based on (i) the amount of his annual compensation on the latest date he became insured hereunder, or (ii) the amount of his annual compensation on his 65th birthday if the Employee was eligible to be insured hereunder on his 65th birthday, whichever is the lesser); and 'effective reduction date' means the first day of the second calendar month after his 65th birthday.

In addition to the amounts of Life Insurance and Insurance for Death or Dismemberment by Accidental Means, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the Insurance Company to the Beneficiary of record or claimant, as specified in Section 11 hereof, on

   (i) any delayed payment of claims paid in one sum from the date of death of the Employee to the date of the payment of such claims, and

   (ii) any delayed payment of optional modes of settlement, as specified in Section 20 hereof, from the date of death of the Employee to the effective date of the supplementary contract issued in connection with such optional modes of settlement,

provided, in either case, the Employee's death occurs on or after January 1, 1976, and provided further, that:

Form G.1985-38

COPY

1. no interest shall be payable on delayed payment of claims under the Insurance for Death or Dismemberment by Accidental Means for any loss other than loss of life, and

2. no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

3. no interest shall accrue for any period during which payment is delayed due to the inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of the Group Policy."

II. Effective January 1, 1979,

A. By substituting "Office of Personnel Management" for "United States Civil Service Commission" as the Policyholder under the Group Policy, it being understood and agreed that the Group Policy shall continue in full force.

B. By substituting "Office of Personnel Management" for "United States Civil Service Commission" or "Civil Service Commission" wherever the latter appear in either the certificate or the certificate supplements.

 

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington. D.C. this _____27th_____ day of _____June_____ 19 79

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By___Alan K. Campbell_____

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed _New York. N.Y._ this Thirty-First_ day of _____July_____ 19 79

METROPOLITAN LIFE INSURANCE COMPANY,

Richard D. Zinke
(Registrar)

J. Austin Lyons, Jr.
Secretary

Form G.1935-39

C O P Y

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

## AMENDMENT 64

I.   Effective December 9, 1980, by substituting for the first sentence appearing in the first paragraph of subsection (3) entitled "Applicable after the Employee's Retirement or Entitlement to Benefits Under Subchapter 1 of Chapter 81 of Title 5, United States Code" of Section 4 thereof, as amended, the following:

### "Prior to December 9, 1980

The amount of Life Insurance hereunder on any Employee after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be the basic amount of Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 25% of the basic amount of Life Insurance.

### On or after December 9, 1980

The amount of Life Insurance hereunder on any Employee after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be determined in accordance with Election 1, Election 2, or Election 3 as elected by the Employee:

### Election 1

The Employee may elect to have his/her basic amount of Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 25% of the basic amount of Life Insurance.

### Election 2

The Employee may elect to have his/her basic amount of Life Insurance reduced by 1% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 50% of the basic amount of Life Insurance.

Form G.1985-39



AMENDMENT 64 (Continued)

Election 3

The Employee may elect to have his/her basic amount of Life Insurance continued in full after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code.

If an Employee on the date of his/her retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, elects to have his/her Life Insurance determined in accordance with either Election 2 or Election 3, such Employee may, at a later date, cancel the amount of Life Insurance provided by either Election 2 or Election 3 and thereafter his/her Life Insurance will continue in the amount he/she would have had if he/she selected Election 1 on the date of his/her retirement."

II. Effective April 1, 1981,

A. By adding to the last paragraph of Section 1 thereof, as amended, the following:

"On and after April 1, 1981, unless otherwise specified any reference to

(a) insurance hereunder shall include:

Basic Life Insurance
Option A - Standard Life Insurance
Option B - Additional Life Insurance
Basic Insurance for Death or Dismemberment by Accidental Means
Option A - Standard Insurance for Death or Dismemberment by Accidental Means

(b) Life Insurance hereunder shall include:

Basic Life Insurance
Option A - Standard Life Insurance
Option B - Additional Life Insurance

(c) Insurance for Death or Dismemberment by Accidental Means shall include Basic Insurance for Death or Dismemberment by Accidental Means and Option A - Standard Insurance for Death or Dismemberment by Accidental Means.

(d) Option A - Standard Insurance shall include Option A - Standard Life Insurance and Option A - Standard Insurance for Death or Dismemberment by Accidental Means."

Form G.1985-39



AMENDMENT 64 (Continued)

B. By substituting "Part II - SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981" for the caption in Part II of the Schedule of Insurance in subsection (A) of Section 4 thereof, as amended.

C. By adding immediately after Part II of the Schedule of Insurance in said subsection (A) of said Section 4, the following:

"PART IIA - SCHEDULE OF BASIC INSURANCE, EXCLUSIVE OF OPTION A - STANDARD INSURANCE AND OPTION B - ADDITIONAL LIFE INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981

| Basic Life Insurance | Basic Insurance for Death or Dismemberment by Accidental Means |
|---|---|
| The amount of the Employee's Basic Life Insurance shall be an amount equal to the sum of (a) $2,000, and (b) the Employee's Annual Compensation (as fixed by law or regulation). Such amount of Basic Life Insurance shall be subject to (i) a minimum amount of Basic Life Insurance of $10,000 and (ii) a maximum amount of Basic Life Insurance equal to the Annual Compensation rate for positions at Level II of the Executive Schedule under section 5313 of title 5, United States Code, as in effect from time to time, plus $2,000. If the Annual Compensation referred to is not a multiple of $1,000 it shall be taken to the next higher multiple of $1,000 for the purpose of this provision. | The amount of the Employee's Basic Insurance for Death or Dismemberment by Accidental Means shall be an amount equal to the amount of his/her Basic Life Insurance." |

D. By substituting "PART III - SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981" for the caption in Part III of the Schedule of Insurance in said subsection (A) of said Section 4.

Form G.1985-39

COPY

AMENDMENT 64 (Continued)

E. By adding immediately after Part III of the Schedule of Insurance in said subsection (A) of said Section 4, the following:

"PART IV - SCHEDULE OF OPTION A - STANDARD INSURANCE ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981

The amount of the Employee's Option A - Standard Life Insurance and the amount of the Employee's Option A - Standard Insurance for Death or Dismemberment by Accidental Means is the greater of (a) $10,000, or (b) the excess, if any, of the amount of the Employee's Annual Compensation (if not a multiple of $1,000, such Annual Compensation shall be taken to the next lower multiple of $1,000) over the amount of Basic Life Insurance or the amount of Basic Insurance for Death or Dismemberment by Accidental Means, respectively, in accordance with Part IIA above.

PART V - SCHEDULE OF OPTION B - ADDITIONAL LIFE INSURANCE ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981

The amount of Option B - Additional Life Insurance shall be an amount determined in accordance with Option 1, Option 2, Option 3, Option 4 or Option 5, as elected by the Employee.

| Option | Amount of Option B - Additional Life Insurance |
|--------|-----------------------------------------------|
| 1 | 1 times the Employee's annual compensation |
| 2 | 2 times the Employee's annual compensation |
| 3 | 3 times the Employee's annual compensation |
| 4 | 4 times the Employee's annual compensation |
| 5 | 5 times the Employee's annual compensation |

The maximum Annual Compensation to be used is the Annual Compensation rate for positions at Level II of the Executive Schedule under Section 5313 of title 5, United States Code, as in effect from time to time. If Annual Compensation is not a multiple of $1,000 it shall be taken to the next higher multiple of $1,000 for the purpose of this provision.

The conditions under which an Employee may acquire Option B - Additional Life Insurance in addition to Option A - Standard Life Insurance or change the option he/she has elected shall be determined in accordance with regulations of the Policyholder promulgated pursuant to chapter 87 of title 5, United States Code."

F. By substituting for the heading to subsection (B) of said Section 4, the following:

"(B) Applicable After the Employee's Retirement or Entitlement to Benefits Under Subchapter 1 of Chapter 61 of Title 5, United States Code:

1. With Respect to an Employee whose retirement or entitlement to benefits under Subchapter 1 of Chapter 61 of Title 5, United States Code occurs prior to April 1, 1981.

AMENDMENT 64   (Continued)

G. By adding to said subsection (3) of said Section 4, the following:

"2. With Respect to an Employee whose retirement or entitlement to benefits under Subchapter 1 of Chapter 81 of Title 5, United States Code occurs on or after April 1, 1981.-

The amount of (1) Basic Life Insurance, exclusive of Option A - Standard Life Insurance and Option B - Additional Life Insurance; (2) Option A - Standard Life Insurance, if any; and (3) Option B - Additional Life Insurance, if any, at any time after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be separately determined, as hereinafter specified.

'Effective reduction date' means the first day of the second calendar month after (1) the date his/her Life Insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, or (2) his/her 65th birthday, whichever occurs later.

The amount of Basic Life Insurance hereunder on any Employee after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be determined in accordance with Election 1, Election 2, or Election 3 as elected by the Employee:

Election 1

The Employee may elect to have such amount of Basic Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Basic Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 25% of the amount of Basic Life Insurance.

Election 2

The Employee may elect to have such amount of Basic Life Insurance reduced by 1% thereof each month beginning with the effective reduction date, subject to a minimum amount of Basic Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 50% of the amount of Basic Life Insurance.

Election 3

The Employee may elect to have such amount of Basic Life Insurance continued in full after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code.

Form G.1985-39

COPY

AMENDMENT 64  (Continued)

If an Employee on the date of his/her retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, elects to have his/her Basic Life Insurance determined in accordance with either Election 2 or Election 3, such Employee may, at a later date, cancel the amount of Basic Life Insurance provided by either Election 2 or Election 3 and thereafter his/her Basic Life Insurance will continue in the amount he/she would have had if he/she selected Election 1 on the date of his/her retirement.

The amount of Option A - Standard Life Insurance hereunder, if any, on any Employee after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be the amount of Option A - Standard Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Option A - Standard Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 25% of the amount of Option A - Standard Life Insurance.

The amount of Option B - Additional Life Insurance hereunder, if any, after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be reduced by 2% thereof each month beginning with the effective reduction date and continuing for 50 months.

Life Insurance (exclusive of Option A - Standard Life Insurance and Option B - Additional Life Insurance) means so much of the amount of such Life Insurance in force on his/her account on the date his/her insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part IIA* of the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

(a) the full period or periods of service during which such insurance was available to him/her, or

(b) the five years of service immediately preceding the date of the Employee's retirement or the date of the Employee's entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code and during which such insurance ** was available to him/her,

whichever is shorter.

Option A - Standard Life Insurance means so much of the amount of Option A- Standard Life Insurance in force on his/her account on the date his/her insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Parts III and/or IV of the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

* Parts IIA, or IIB, whichever is applicable to the Employee, - on and after the first day of the first pay period which begins on or after October 1, 1981.

** includes insurance set forth in Part II and/or Part II A

COPY

- 7 -

(a)  the full period or periods of service during which such insurance was available to him/her, or

(b)  the five years of service immediately preceding the date of the Employee's retirement or the date of the Employee's entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code and during which such insurance* was available to him/her,

whichever is shorter.

Option 3 - Additional Life Insurance means so much of the amount of Option 3 - Additional Life Insurance in force on his/her account, subject to the provisions of the next following sentence, on the date his/her Additional Life Insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part V of the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

(a)  the full period or periods of service during which such insurance was available to him/her, or

(b)  the five years of service immediately preceding the date of the Employee's retirement or the date of the Employee's entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code and during which such insurance was available to him/her,

whichever is shorter.  The amount of Option 3 - Additional Life Insurance shall be based on the lowest multiple of such insurance, which the Employee had elected in accordance with the options specified in said Part V of the Schedule of Insurance, that was in effect for

(a)  the five years of service immediately preceding the date of his/her retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, or

(b)  the full period or periods of service during which such insurance was available to him/her, if he/she was insured for less than five years.

The Employee's Option A - Standard Life Insurance and/or Option 3 - Additional Life Insurance hereunder will be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, as specified above, only if the Employee's Basic Life Insurance, exclusive of Option A - Standard Life Insurance and Option 3 - Additional Life Insurance, is continued after retirement or entitlement to such benefits in accordance with the provisions hereof.

* includes insurance set forth in Part III and/or Part IV.

Form G.1985-39

COPY

AMENDMENT 64 (Continued)

If the Policyholder receives written notice from the Employee that Option A - Standard Life Insurance and/or Option B - Additional Life Insurance on his/her account is not to be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, the provisions of this paragraph shall be null and void and of no effect and no Option A - Standard Life Insurance and/or Option B - Additional Life Insurance shall be provided for the Employee after retirement or entitlement to such benefits."

B. By adding to said Group Policy as a part thereof, the attached Group Life Insurance - Option C - Family Benefits Supplementary Agreement Form G.1985-A.

III. Effective on the first day of the first pay period beginning on or after October 1, 1981,

A. By adding to the first paragraph of subsection (A) of Section 4 thereof, as amended, the following:

"Any decrease in the amount of such insurance due to attainment of a specified age shall become effective upon the Employee's attainment of such specified age."

B. By substituting "PART IIA - SCHEDULE OF BASIC INSURANCE, EXCLUSIVE OF OPTION A - STANDARD INSURANCE AND OPTION B - ADDITIONAL LIFE INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER OCTOBER 1, 1981" for the caption in Part IIA of the Schedule of Insurance in said subsection (A) of said Section 4.

C. By adding immediately after Part IIA of the Schedule of Insurance in said subsection (A) of said Section 4, the following:

Form G.1985-39

COPY

AMENDMENT 64 (Continued)

"PART III - SCHEDULE OF BASIC INSURANCE, EXCLUSIVE OF OPTION A - STANDARD INSURANCE AND OPTION B - ADDITIONAL LIFE INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER OCTOBER 1, 1981

### Basic Life Insurance

The amount of the Employee's Basic Life Insurance shall be determined as follows:

(1) Employees Age 45 and Over

An amount equal to the sum of (a) $2,000 and (b) the Employee's Annual Compensation* (as fixed by law or regulation). Such amount of Basic Life Insurance shall be subject to (i) a minimum amount of Life Insurance of $10,000, and (ii) a maximum amount of Basic Life Insurance equal to the Annual Compensation* rate for positions at Level II of the Executive Schedule under section 5313 of title 5, United States Code, as in effect from time to time, plus $2,000.

(2) Employees Age 44 and Under (See Note)

The amount of the Employee's Basic Life Insurance shall be an amount determined in accordance with (1) above, multiplied by the applicable factor determined from the following Table:

Table

| Age of Employee | Factor | Age of Employee | Factor |
|---|---|---|---|
| 35 and under | 2.0 | 40 | 1.5 |
| 36 | 1.9 | 41 | 1.4 |
| 37 | 1.8 | 42 | 1.3 |
| 38 | 1.7 | 43 | 1.2 |
| 39 | 1.6 | 44 | 1.1 |

### Basic Insurance for Death or Dismemberment by Accidental Means

The amount of the Employee's Basic Insurance for Death or Dismemberment by Accidental Means shall be an amount equal to the sum of (a) $2,000, and (b) the Employee's Annual Compensation* (as fixed by law or regulation). Such amount of Basic Insurance for Death or Dismemberment by Accidental Means shall be subject to (i) a minimum amount of Basic Insurance for Death or Dismemberment by Accidental Means of $10,000, and (ii) a maximum amount of Basic Insurance for Death or Dismemberment by Accidental Means equal to the Annual Compensation* rate for positions at Level II of the Executive Schedule under section 5313 of title 5, United States Code, as in effect from time to time, plus $2,000.

COPY

AMENDMENT 64 (Continued)

PART IIB - SCHEDULE OF BASIC INSURANCE, EXCLUSIVE OF OPTION A - STANDARD INSURANCE
AND OPTION B - ADDITIONAL LIFE INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY
PERIOD WHICH BEGINS ON OR AFTER OCTOBER 1, 1981 - (CONTINUED)

Note: The increase in the amount of Basic Life Insurance set forth in item (2)
above shall also be applicable to an Employee, under age 45, who is retired
or is receiving compensation under subchapter 1 of chapter 81 of title 5,
United States Code provided such Employee elected to continue Basic Life
Insurance at the time he/she became eligible to continue such insurance
because of retirement or receipt of compensation benefits.

" If the Annual Compensation referred to is not a multiple of $1,000 it shall be
taken to the next higher multiple of $1,000 for the purpose of this provision."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D.C.          this    21st          day of November   19 83

                                      OFFICE OF PERSONNEL MANAGEMENT
                                              (Policyholder)

                                 By    Kevin J. Burns

        (Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at New York, New York        this    29th          day of November   19 83

                                      METROPOLITAN LIFE INSURANCE COMPANY,

                                      Harry P. Kamen
                                      Secretary

Sharron Williamson
      (Registrar)

Form G.1985-39

METROPOLITAN LIFE INSURANCE COMPANY
(Herein called the Insurance Company)

## Group Life Insurance - Option C - Family Benefits

Supplementary Agreement attached to and made part of Group Policy No. 17000-G issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, and in consideration of the payment by the Policyholder of the premiums as hereinafter provided, the Insurance Company hereby agrees, subject to the provisions of this Supplementary Agreement, to pay the insurance benefits herein provided with respect to the Employees insured hereunder.

Section 1. DEFINITION OF CERTAIN TERMS USED IN THIS SUPPLEMENTARY AGREEMENT.—

The term "Employee" means a person who is considered, under applicable laws and regulations, to be an Employee for the purposes of chapter 87 of title 5, United States code.

The term "Family Member" means a person who is considered under applicable laws and regulations, to be a Family Member for the purposes of chapter 87 of title 5, United States Code.

The term "Office" means the Office of Federal Employees' Group Life Insurance which is the administrative office established by the Insurance Company with respect to the Group Policy and this Supplementary Agreement. The post office address of the Office is 4 East 24th Street, New York, New York 10010. The Insurance Company shall have the right to change the address of the Office upon three months notice in writing to the Policyholder.

The term "Option C - Family Life Insurance" (hereinafter referred to as Family Life Insurance) means insurance providing benefits payable to an Employee, subject to the terms, conditions, and limitations hereof, in the event of the death of any of his/her Family Members.

The terms "hereof", "herein", "herefor", and "hereunder", as used in this Supplementary Agreement, refer exclusively to this Supplementary Agreement and not to the Group Policy.

Section 2. EFFECTIVE DATES OF INSURANCE.--Eligibility of Employees for Family Life Insurance hereunder and the effective dates of such insurance shall be determined in accordance with regulations of the Policyholder made pursuant to chapter 87 of title 5, United States Code.

Form G.1985-A

Section 3.  CESSATION OF INSURANCE.—The Employee's Family Life Insurance hereunder with respect to any Family Member shall automatically cease, except as specified in the next following paragraph, on the earliest of the following dates:

(1)  The date of the Employee's separation from the service.

(2)  The date of expiration of a period of twelve months of non-pay status of the Employee.

(3)  The day immediately preceding the date the Employee enters on active duty or active duty for training as a member of a uniformed service, unless the period of such duty is covered by military leave with pay from his/her civilian position.

(4)  The date of the Employee's death.

(5)  The date the Employee ceases to be an Employee as defined in Section 1 hereof for any reason other than the happening of any of the events specified in items (1), (2), (3) or (4) preceding.

(6)  The day immediately preceding the date such person ceases to be a Family Member as defined.

(7)  The date of discontinuance of this Supplementary Agreement or of the Group Policy.

(8)  The last day of the pay period during which the employing office of the Employee receives written notice from the Employee that he/she desires not to be insured hereunder.

(9)  The last day of the pay period during which the employing office of the Employee determines that the Employee's periodic pay, annuity, or compensation for work injury is insufficient to cover his/her required contributions to the cost of the Family Life Insurance hereunder.

However, if the Employee's Family Life Insurance on account of his/her Family Members would cease because of the happening of the event specified in either of items (1) or (2) of the preceding paragraph and the Employee meets the conditions for continuance of his/her Family Life Insurance after retirement or while receiving benefits under subchapter 1 of chapter 81 of title 5, United States Code, as such conditions are specified in the regulation of the Policyholder promulgated pursuant to chapter 87 of title 5, United States Code, his/her Family Life Insurance shall be continued or reinstated for the amount of insurance and period of time specified in said regulation.

Form G.1985-A

Section 4. AMOUNT OF INSURANCE.--(A) Applicable Prior to the Employee's Retirement or Entitlement to Benefits Under Subchapter 1 of Chapter 81 of Title 5, United States Code:--The amount of Family Life Insurance hereunder on account of any Family Member on whose account the Employee is insured hereunder shall be in accordance with the Schedule set forth below:

Schedule of Family Life Insurance On and
After April 1, 1981

| Family Member | Family Life Insurance |
|---------------|----------------------|
| Spouse | $5,000 |
| Each Child | $2,500 |

(B) Applicable After the Employee's Retirement or Entitlement to Benefits Under Subchapter 1 of Chapter 81 of Title 5, United States Code:--The amount of Family Life Insurance hereunder on account of any Family Member on whose account the Employee is insured hereunder after the Employee's retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be the basic amount of Family Life Insurance reduced by 2% thereof for each month beginning with the effective reduction date and continuing for 50 months. The terms "basic amount of Family Life Insurance" and "effective reduction date" are defined in the following paragraphs of this subsection (B).

The term "basic amount of Family Life Insurance" means the amount of Family Life Insurance in force on account of each of the Employee's Family Members on the date Family Life Insurance on account of such Family Member would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

(a) the full period or periods of service during which the Family Life Insurance hereunder was available to the Employee, or

(b) the five years of service immediately preceding the date of the Employee's retirement or the date of the Employee's entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code and during which the Family Life Insurance was available to the Employee,

whichever is shorter.

The Employee's Family Life Insurance hereunder will be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, as specified above, only if the Employee's Basic Life Insurance is continued after retirement or entitlement to such benefits in accordance with the provisions of the Group Policy.

Form G.1985-A

Section 4. (Continued)

If the Policyholder receives written notice from the Employee that his/her Family Life Insurance hereunder is not to be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, the provisions of this paragraph shall be null and void and of no effect and no such insurance shall be provided for the Employee after retirement or entitlement to such benefits.

The term "effective reduction date" means the first day of the second calendar month after (1) the date the Employee's Family Life Insurance on account of his/her Family Members would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof or (2) the Employee's 65th birthday, whichever occurs later.

(C) In addition to the amount of Family Life Insurance, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the Insurance Company, to the Employee or claimant, as specified in Section 11 of the Group Policy, on any delayed payment of claims paid in one sum from the date of death of any Family Member to the date of the payment of such claim, provided that:

1. no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

2. no interest shall accrue for any period during which payment is delayed due to inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of this Supplementary Agreement.

Section 5. INSURING CLAUSE.--Upon receipt by the Office of satisfactory proof, in writing, that any Family Member shall have died while the Employee is insured hereunder for Family Life Insurance on account of such Family Member, the Office shall pay, subject to the terms hereof, the amount of Family Life Insurance, if any, (plus interest, if any, as determined by the Insurance Company) in force hereunder on account of such Family Member in accordance with Section 4 hereof, at the date of death of such Family Member. Payment shall be made to the Employee immediately after receipt of such proof. In the event of the death of the Employee after the death of an insured Family Member, but before such payment is made, such payment shall be made to the person or persons entitled to the Life Insurance (exclusive of Option A - Standard Life Insurance and Option B - Additional Life Insurance) in force on account of the Employee as provided in Section 11 of the Group Policy.

Form G.1985-A

- 5 -

Section 6.  PRIVILEGE OF OBTAINING AN INDIVIDUAL POLICY OF LIFE INSURANCE.—Any Family Member on whose account the Family Life Insurance hereunder shall cease in accordance with any one of items (1), (2), (3), (4), (5) or (9) of the first paragraph of Section 3 hereof, shall be entitled to have issued to him/her, without evidence of insurability, an individual policy of Life Insurance, without Disability or Accidental Means Death Benefits, by directly applying for such individual policy, if the Employee does not apply for such individual policy on behalf of such Family Member, subject to the following conditions and provisions:

(A) written application for such individual policy and payment of the first premium thereon shall be made by the Employee, if living, or the Family Member within 31 days after such cessation (or within such longer period as the Office may allow) to the Insurance Company, or at such person's option to any other insurance company which has than been accepted by the Policyholder as eligible to issue individual policies in accordance with the provisions of this Section 6 in the jurisdiction in which the Family Member will reside and which has agreed with the Policyholder to do so, and

(B) such individual policy shall be upon one of the forms than customarily issued by the insurance company selected by such person, except Term Insurance, and

(C) the premium for such individual policy shall be the premium, as determined by the insurance company issuing such policy, applicable to the class of risk to which the Family Member belongs and to the form and amount of the individual policy at the Family Member's attained age (nearest birthday) at the date of issue of such individual policy, and

(D) the amount of such individual policy shall be equal to (or at the option of the Family Member less than) the amount of the Family Life Insurance in force on account of the Family Member at the date of cessation of such insurance, subject to a minimum amount of $1,000, and

(E) if the age of any Family Member is such as to preclude direct application for such individual policy by the Family Member, then application for such individual policy on the life of such Family Member may be made by the Employee, if living, otherwise by the person who in the judgment of the insurance company issuing such policy is responsible for the support of such person. The issuance of an individual policy on the life of any person shall be subject to the provisions and limitations of any applicable law relating to life insurance on the lives of minors.

If the Family Member dies during the 31 days next following the date of cessation of the Family Life Insurance in force hereunder on his/her account, upon receipt of proof of such death and entitlement to payment as specified in Section 5 hereof the Office shall pay to the Employee, whether or not written application for such individual policy or payment of the first premium therefor shall have been made, an amount equal to the amount of the Family Life Insurance in force on account of such Family Member at the date of cessation of such insurance.  In the event of the

Form G.1985-A

Section 6. (Continued)

death of the Employee before payment shall be made, such payment shall be made to the person or persons entitled to the Life Insurance (exclusive of Option A - Standard Life Insurance and Option B - Additional Life Insurance) in force on account of the Employee as provided in Section 11 of the Group Policy. If an individual policy has been issued in accordance with the foregoing provisions of this Section 6, any payment made under the provisions of this paragraph will be reduced by the amount of insurance for which such individual policy was issued, unless such individual policy is surrendered without claim thereunder to the insurance company which issued such policy.

Section 7. AGENTS; ALTERATIONS.--No Agent of the Insurance Company is authorized to alter or amend this Supplementary Agreement or to waive any of its provisions.

No change in this Supplementary Agreement shall be valid unless evidenced by amendment hereto signed by the Policyholder and by the Insurance Company.

Section 8. RECORDS--INFORMATION TO BE FURNISHED--DETERMINATION BY THE POLICYHOLDER.--The Policyholder shall furnish or cause to be furnished to the Office such information concerning Employees and the Family Members on whose account such Employees are insured as may reasonably be considered to have a bearing on the administration of the insurance hereunder. The records of the Policyholder as have a bearing on the insurance hereunder shall be open for inspection by the Office at any reasonable time.

For the purposes of this Supplementary Agreement, determination by the Policyholder of the following shall be conclusive:

(1) The classification of any person as being within the definition of the term "Employee" in Section 1 hereof.

(2) The effective dates of Employee's Family Life Insurance in accordance with Section 2 hereof.

(3) The fact and date of (i) separation of an Employee from the service, (ii) a pay status or non-pay status of an Employee, and (iii) cessation of an Employee's classification as an Employee as defined in Section 1 hereof.

(4) The conditions and specifications referred to in the second paragraph of Section 3 hereof, as relating to continuation of Family Life Insurance after retirement or while the Employee is receiving benefits under subchapter 1 of chapter 81 of title 5, United States Code.

Records and files which relate to the administration of the insurance under this Supplementary Agreement and are maintained by the Office, including claim files, shall be subject to such general disposal program as may be agreed upon by the Policyholder and the Office.

Form G.1985-A

Section 9. DUE DATE, COMPUTATION, AND PAYMENT OF PREMIUMS.—The premiums due on and after the date of issue of this Supplementary Agreement for the insurance provided hereunder shall be determined and shall be payable in accordance with the provisions of the Group Policy, as specified in the applicable provisions of chapter 87 of title 5, United States Code.

In the computation of the aggregate premium due under this Supplementary Agreement on any due date, the Insurance Company may use average premium rates based on the premium rates then in effect.

Section 10. INCORPORATION IN GROUP POLICY AND RENEWAL PRIVILEGE.—This Supplementary Agreement is attached to and made a part of the Group Policy for a period commencing with April 1, 1981 and ending with the day immediately preceding the next following renewal date of the Group Policy, on which renewal date and on each subsequent renewal date this Supplementary Agreement shall be renewed to continue in force as a part of the Group Policy for a further term extending through the day immediately preceding the next following renewal date, unless the Policyholder shall at least sixty days prior to said renewal date give the Insurance Company written notice that such renewal shall not be made. Renewal is conditioned upon renewal of the Group Policy and upon the payment of the Family Life Insurance premiums then due as set forth in Section 9 hereof and based upon such premium rates as may then be applicable.

Section 11. CONFORMITY WITH LAW.--If any provisions required by chapter 87 of title 5, United States Code, to be contained in this Supplementary Agreement are not specifically contained herein, then such provisions shall be deemed part of this Supplementary Agreement as though set forth herein at length.

IN WITNESS WHEREOF, the Metropolitan Life Insurance Company has caused this Supplementary Agreement to be executed this _____ 29th _____ day of _November__ 19__ to take effect as of the _____ first _____ day of April, 1981, which last date is the date of issue of this Supplementary Agreement.

Harry P. Kamen
Secretary

John J. Creedon
President and Chief Executive Officer

Countersigned _____ 19 _____

By _____
                    Licensed Agent

Form G.1985-A

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 65

Effective July 1, 1983,

A. By substituting for the last paragraph of Section 4 thereof, as amended, the following:

"(C) In addition to the amounts of Life Insurance and Insurance for Death or Dismemberment by Accidental Means, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the Insurance Company to the Beneficiary of record or claimant, as specified in Section II hereof, on

(i) any delayed payment of claims paid in one sum; said interest shall accrue only from the thirty-first day following the date of death of the Employee to the date of the payment of such claims; and

(ii) any delayed payment of optional modes of settlement, as specified in Section 20 hereof; said interest shall accrue only from the thirty-first day following the date of death of the Employee to the effective date of the supplementary contract issued in connection with such optional modes of settlement,

provided, in either case, the Employee's death occurs on or after July 1, 1983, and provided further, that:

1. no interest shall be payable on delayed payment of claims under the Insurance for Death or Dismemberment by Accidental Means for any loss other than loss of life, and

2. no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

3. no interest shall accrue for any period during which payment is delayed due to the inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of the Group Policy."

Form G.1985-40

3. By substitut. for the last paragraph of Sec. on 4 of Supplementary Agreement Form G.1985-A, attached to said Group Policy as a part thereof, the following:

"(C) In addition to the amount of Family Life Insurance, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the Insurance Company, to the Employee or claimant, as specified in Section 11 of the Group Policy, on any delayed payment of claims paid in one sum; said interest shall accrue only from the thirty-first day following the date of death of any Family Member to the date of the payment of such claim, provided that:

1. no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

2. no interest shall accrue for any period during which payment is delayed due to inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of this Supplementary Agreement."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D.C. this ___16th___ day of ___August___ 19_83_

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By _____

(Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at New York, N. Y. this ___31st___ day of ___August___ 19_83_

METROPOLITAN LIFE INSURANCE COMPANY

_____
Harry P. Kainen
Secretary

_____
(Registrar)

Form G.1985-40

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

## AMENDMENT 66

Effective January 1, 1983,

A. By substituting for item (A) appearing in the first paragraph of Section 6 thereof, the following:

"(A) written application for such individual policy and payment of the first premium thereon shall be made within 31 days after such cessation (or within such longer period as the Policyholder may allow) to the Insurance Company, or at the Employee's option to any other Insurance Company which has then been accepted by the Insurance Company as eligible to issue individual policies in accordance with the provisions of this Section 6 in the jurisdiction in which the Employee will reside and which has agreed with the Insurance Company to do so, and

B. By substituting for item (B) appearing in the first paragraph of said Section 6, the following:

"(B) such individual policy shall be upon one of the forms then customarily issued by the insurance company selected by the Employee, except Term Insurance, Universal Life Insurance and any other form of Life Insurance with an indeterminate premium, and"

C. By substituting for item (A) appearing in the first paragraph of Section 6 of Group Life Insurance — Option C — Family Benefits Supplementary Agreement Form G.1985-A, attached to the Group Policy as a part thereof, the following:

"(A) written application for such individual policy and payment of the first premium thereon shall be made by the Employee, if living, or the Family Member within 31 days after such cessation (or within such longer period as the Policyholder may allow) to the Insurance Company, or at such person's option to any other insurance company which has then been accepted by the Insurance Company as eligible to issue individual policies in accordance with the provisions of this Section 6 in the jurisdiction in which the Family Member will reside and which has agreed with the Insurance Company to do so, and

Form G.1985-41

COPY

b. By substituting for item (B) appearing in the first paragraph of said Section 6 of said Supplementary Agreement Form G.1985-A, the following:

"(B) such individual policy shall be upon one of the forms then customarily issued by the insurance company selected by the person, except Term Insurance, Universal Life Insurance and any other form of Life Insurance with an indeterminate premium, and"

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___24th___ day of ___June___ 19 85

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By___Kevin J. Burns___

(Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this ___1st___ day of ___October___ 19 85

METROPOLITAN LIFE INSURANCE COMPANY,

___Sherron Williamson___
(Registrar)

Harry P. Kamen
Secretary

Form G.1985-41

COPY

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as
follows:

### AMENDMENT 67

Effective July 10, 1984, by substituting for Section 12 of said Group Policy,
the following:

"Section 12. ASSIGNMENTS - The Employee's certificate is non-assignable and
the insurance and benefits are non-assignable prior to a loss, except that a
Judge may irrevocably assign the insurance and benefits with respect to the
Basic Life Insurance, Option A-Standard Life Insurance and Option B-Additional
Life Insurance under the Group Policy. No assignment is valid for any purpose
unless it meets the following criteria:

A) For assignments signed before publication of the Policyholder's Final
Regulations promulgated to implement section 208 of Public Law 98-353,

1. the assignment must be signed; and

2. the assignment must be received in the Judge's employing office
before death; and

3. the assignment must convey ownership of all insurance: Basic Life
Insurance, Option A - Standard Life Insurance and Option B -
Additional Life Insurance, which the Judge may have; and

4. the assignment must not attempt to convey stated dollar amounts to
any assignee or assignees.

B) For assignments signed after publication of the Policyholder's Final
Regulations promulgated to implement section 208 of Public Law 98-353,
the assignment must comply with such regulations and any applicable
regulations which amend or modify or replace such Final Regulations.

'Judge' means an individual appointed as a Federal justice or judge under
Article I and Article III of the Constitution.

Form G.1985-42

Administrative law judges, bankruptcy judges and magistrates are not judges for the purposes of assignment."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this __20th__ day of ___February___ ___1986___

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By__Jean McBarber_____

(Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this __9th__ day of ___May___ ___1986___

METROPOLITAN LIFE INSURANCE COMPANY

___Sherron Williamson___
(Registrar)


Harry P. Kamen
Secretary

Form G.1985-42

COPY

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

### AMENDMENT 68

Effective November 17, 1986,

A. By substituting for the last sentence of the first paragraph of Section 11 thereof, as amended, the following:

"Any designation of beneficiary shall automatically cease to be effective on the date thirty-one days after the date of cessation of the Employee's insurance hereunder unless the Employee's Life Insurance is reinstated in accordance with the provisions of the second paragraph of Section 3 hereof."

B. By substituting for item (8) appearing in Section 3 of Group Life Insurance – Option C – Family Benefits Supplementary Agreement Form G.1985-A, attached to the Group Policy as a part thereof, the following:

"(8) The last day of the pay period during which the employing office of the Employee receives written notice from the Employee that he/she desires not to be insured hereunder, except that at the request of the Employee and upon proof satisfactory to the employing office that there was no Family Member eligible for Family Life Insurance, the Employee's Family Life Insurance will cease on the last day of the pay period in which there was no eligible Family Member."

### AMENDMENT 69

Effective January 1, 1987,

A. By substituting for item (3) in the first paragraph of Section 3 thereof, as amended, the following:

"(3) The date of expiration of a period of twelve months from the date the Employee enters on active duty or active duty for training as a member of a uniformed service."

Form G.1985-43



- 2 -

B. By substituting for the second paragraph of Section 3 thereof, as amended, the following paragraph:

"However, if the insurance on any Employee insured hereunder would cease because of the happening of the event specified in any of the items (1), (2) or (3) of the preceding paragraph and the Employee meets the conditions for continuation of insurance after retirement or while receiving benefits under subchapter I of chapter 81 of title 5, United States Code, as such conditions are specified in the regulations of the Policyholder made pursuant to chapter 87 of title 5, United States Code, his/her Life Insurance only shall be continued or reinstated for the amount of insurance and period of time specified in said regulations."

C. By substituting for item (3) appearing in the first paragraph of Section 3 of said Supplementary Agreement Form G.1985-A, the following:

"(3) The date of expiration of a period of twelve months from the date the Employee enters on active duty or active duty for training as a member of a uniformed service."

D. By substituting for the second paragraph of Section 3 of Group Life Insurance - Option C - Family Benefits Supplementary Agreement Form G.1985-A, attached to the Group Policy as a part thereof, the following paragraph:

"However, if the Employee's Family Life Insurance on account of his/her Family Members would cease because of the happening of the event specified in any of the items (1), (2) or (3) of the preceding paragraph and the Employee meets the conditions for continuance of his/her Family Life Insurance after retirement or while receiving benefits under subchapter 1 of chapter 81 of title 5, United States Code, as such conditions are specified in the regulation of the Policyholder promulgated pursuant to chapter 87 of title 5, United States Code, his/her Family Life Insurance shall be continued or reinstated for the amount of insurance and period of time specified in said regulation."


AMENDMENT 70

Effective October 1, 1987;

A. By substituting "chapter 87 of title 5, United States Code, 5 CFR Part 870" for "chapter 87 of title 5, United States Code" wherever it appears in said Group Policy.

B. By substituting "chapter 87 of title 5, United States Code, 5 CFR Part 873" for "chapter 87 of title 5, United States Code" wherever it appears in Supplementary Agreement Form G.1985-A.

Form G.1985-43



ML 0128

- 3 -

C. By adding immediately following item (6) in the first paragraph of subsection (B) of Section 5 thereof, the following item (7):

"(7) caused by or results from the self administration of illegal or illegally obtained drugs."

D. By adding immediately following the fourth paragraph of Section 11 thereof, the following paragraph:

"However, if the Beneficiary (either by designation or under the order of precedence) is a minor and the share of the amount of Life Insurance or Insurance for Death by Accidental Means to which he/she is entitled to receive under Section 5 hereof has a net value of $10,000 or less, such amount will be paid to the minor's parent(s) on behalf of such minor rather than to a guardian appointed by the court, provided the parent(s) agree in writing to meet all of the following conditions:

(1) the parent(s) will hold such amount for the sole use and benefit of the minor until the minor reaches majority; and

(2) the parent(s) will account to the minor for such amount when the minor reaches majority; and

(3) the parent(s) will indemnify the Insurance Company in the event the minor, when he/she reaches majority, brings any legal action against the Insurance Company challenging in any way the Insurance Company's payment of such amount to the parent(s)."

E. By adding immediately following Section 23 thereof, the following Sections 24 and 25:

"Section 24. TIME LIMIT ON STARTING LAW SUITS WITH RESPECT TO LIFE INSURANCE ONLY. - No action at law or in equity shall be brought to recover on the Policy unless brought within six years from the date of receipt by the Office of the written proof of claim required under the Policy.

Section 25. EXTRA-CONTRACT DAMAGES. - In any action at law or in equity, the Beneficiary of record or claimant, as specified in Section 11 hereof, shall be limited in the amount of recovery to the benefit claimed, plus reasonable attorney's fees as set by the court. The term "benefit claimed" is limited to:

(1) the amounts of Life Insurance and Insurance for Death or Dismemberment by Accidental Means, if any, in force hereunder on account of the Employee in accordance with Section 4 hereof, at the date of the Employee's death; and

(2) interest as specified in subsection C of Section 6 hereof; and

Form G.1983-43



ML

- 4 -

(3) post-judgment interest at the statutory rate allowed on judgments in the applicable state."

F. By adding immediately following Section 11 of said Supplementary Agreement Form G.1985-A the following Section 12:

"Section 12. EXTRA-CONTRACT DAMAGES. - In any action at law or in equity the Employee or claimant, as specified in Section 5 hereof, shall be limited in the amount of recovery to the benefit claimed, plus reasonable attorney's fees as set by the court. The term "benefit claimed" is limited to:

(1)  the amount of Family Life Insurance in force hereunder on account of such Family Member in accordance with Section 4 hereof, at the date of death of such Family Member; and

(2)  interest, as specified in subsection C of Section 4 hereof; and

(3)  post-judgment interest at the statutory rate allowed on judgments in the applicable state."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this ___ 24 th ___ day of ___ May ___ 19 83

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By ___ Carlos F. Esparza ___

(Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at ___ New York, NY ___ this ___ 20th ___ day of ___ October ___ 19 88

METROPOLITAN LIFE INSURANCE COMPANY

Richard M. Blackwell
Richard M. Blackwell
Vice-President and Secretary

Sherron Williamson
(Registrar)

Form G.1985-43

COPY

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

### AMENDMENT 71

Effective on the date of execution of this amendment.

A. By redesignating subsections (C) and (D) of Section 5 thereof as subsections (D) and (E), and by inserting the following subsection (C):

"(C) Payment of Insurance Benefits With Respect to State Tax Laws.—Payment of the amount of Life Insurance or Insurance for Death by Accidental Means to any person entitled thereto under subsections (A) and (B) of this Section or the order of precedence set forth in Section 11 shall be made without regard to any State law relating to the collection of taxes by any State, except that the Office may comply with any State law requiring that the payor of the amount of Life Insurance or Insurance for Death by Accidental Means give notice of such payment to any State tax authority. Payment of the amount of Life Insurance or Insurance for Death by Accidental Means to any person entitled thereto under this Section or the order of precedence set forth in Section 11 shall in no event subject the Office to any liability under any tax law of any State. Notwithstanding the above, nothing herein shall be construed to relieve any person who receives the payment of the amount of Life Insurance or Insurance for Death by Accidental Means under this Section or the order of precedence set forth in Section 11 from compliance with any tax law of any State."

B. By adding immediately following the second paragraph of Section 11 thereof, the following paragraphs:

"Any Employee insured hereunder may designate as Beneficiary, his/her estate or an executor or administrator of his/her estate by filing written notice with the appropriate office as specified in the first sentence of the first paragraph of this Section. However, in no event will payment under Section 5 hereof be made to such designated Beneficiary, unless the Office receives either:

(a) a certified copy of an order of a court of competent jurisdiction appointing the executor or administrator of the estate, or

(b) proof that the requirements for payment under a Small Estate statute of the state of the Employee's domicile at date of his/her death have been met.

Form G.1985-46



## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. __17000-G__ bearing the date of __August 29, 1954__ and issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

### AMENDMENT 72

Effective October 1, 1998,

A.   By replacing "only from the thirty-first day following the date of death" in paragraph (C)(i) and (C)(ii) of Section 4 thereof, as amended, with "from the date of death".

B.   By replacing "on or after July 1, 1983" in paragraph (C) of Section 4 thereof, as amended, with "on or after October 1, 1998".

C.   By adding "to be equal to the prevailing delayed settlement interest rate the Insurance Company pays on its other large group contracts. The Insurance Company shall consult with the Contracting Officer before any change to the interest rate becomes effective." after "as determined by the Insurance Company" in paragraph (C) of Section 4 thereof, as amended.

D.   By replacing "only from the thirty-first day following the date of death" in paragraph (C) of Section 4 of Supplementary Agreement Form G.1985-A, attached to said Group Policy as a part thereof, as amended, with "from the date of death".

E.   By replacing the period after "Agreement" in paragraph (C)2 of Section 4 of Supplementary Agreement Form G.1985-A, attached to said Group Policy as a part thereof, with ", and" and adding a new paragraph (C)3 as follows:

"3.   the Family Member's death occurs on or after October 1, 1998."

F.   By adding "to be equal to the prevailing delayed settlement interest rate the Insurance Company pays on its other large group contracts. The Insurance Company shall consult with the Contracting Officer before any change to the interest rate becomes effective." after "as determined by the Insurance Company" in paragraph (C) of Section 4 of Supplementary Agreement Form G.1985-A, attached to said Group Policy as a part thereof, as amended.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _Washington, D.C._ this _22nd_ day of _June_, 1998

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By _____

Frank D. Titus
Assistant Director
for Insurance Programs
Contracting Officer

Signed at _New York, N.Y._ this _6th_ day of _July_, 1998

METROPOLITAN LIFE INSURANCE COMPANY

By _____

Margery A. Brittain
Vice President
National Accounts

Page 2 of 2

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing the date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT

Pursuant to chapter 87 of title 5, United States Code, is amended as follows:

## AMENDMENT 73

Effective October 1, 2000,

A. By adding the phrase "or an equivalent loss as determined by the Insurance Company" after each phrase "severance at or above wrist- and ankle-joints respectively" in Section 5 and any and all other places this phrase appears in the contract.

B. By adding the phrase "or an equivalent loss as determined by the Insurance Company" after each phrase "severance at or above wrist-joint" in Section 5 and any and all other places this phrase appears in the contract.

C. By adding the phrase "or an equivalent loss as determined by the Insurance Company" after each phrase "severance at or above ankle-joint" in Section 5 and any and all other places this phrase appears in the contract.

Signed at Washington, D.C. this _18th_ day of _September_ , 2000

OFFICE OF PERSONNEL MANAGEMENT (Policyholder)

By _____

Frank D. Titus
Assistant Director for Insurance Programs
Contracting Officer

Signed at New York, NY this _22nd_ day of _September_ , 2000

METROPOLITAN LIFE INSURANCE COMPANY

By _____

Margery A. Brittain
Vice President
Group National Accounts

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing the date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT

Pursuant to chapter 87 of title 5, United States Code, is amended as follows:

## AMENDMENT 74

Effective November 1, 2000,

By adding the following exclusion for payment to paragraph (B), Insurance for Death or Dismemberment by Accidental Means, in Section 5, INSURING CLAUSES:

(8)     caused by the Employee driving a vehicle while intoxicated as defined by the laws of the jurisdiction in which the Employee was operating the vehicle.

Signed at Washington, D.C. this 18th day of October , 2000

OFFICE OF PERSONNEL MANAGEMENT (Policyholder)

By _____
Frank D. Titus
Assistant Director for Insurance Programs
Contracting Officer

Signed at New York, NY this 26th day of October , 2000

METROPOLITAN LIFE INSURANCE COMPANY

By _____
Margery A. Brittain
Vice President
Group National Accounts



# DESIGNATION OF BENEFICIARY

**Federal Employees' Group Life Insurance Program**

OMB No. ___ 36
**WARNING**
Read instructions on back of duplicate before filling in this form

**FEGLI**
Federal Employees
Group Life Insurance

## INFORMATION CONCERNING THE INSURED:

| Name *(Last, First, Middle)* | Date of Birth *(Month, Day, Year)* | Social Security Number |
|---|---|---|
| JONES OSKER (N.M.I) | July 16 1959 | 339 30 5820 |

Place an "X" in the appropriate box below:

| X | An employee | | Retired or an applicant for retirement | | Receiving OWCP benefits or an applicant for OWCP benefits |
|---|---|---|---|---|---|

If you are retired or receiving Federal Employees Compensation, give your CSA "CSI", or OWCP claim number ___

Department or agency in which presently employed *(If retired, former department or agency)*

| Department or Agency | Bureau | Division | Location *(City, State and ZIP Code)* |
|---|---|---|---|
| North Suburban Division | | | Oregon, Illinois ___ |

I, the individual identified above, cancelling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program heretofore made by me, do now designate the beneficiary or beneficiaries named below to receive any amount of LIFE INSURANCE and ACCIDENTAL DEATH INSURANCE due and payable at my death. I understand that this Designation of Beneficiary will remain in full force and effect, with respect to any amount payable, unless or until cancelled by me in writing, or until such time as it is automatically cancelled (see regulations on reverse side of duplicate copy). If this designation form is determined valid for any reason, the next prior valid designation form will be given full force and effect. If no such prior form exists, the proceeds will be distributed according to the Order of Precedence.

## INFORMATION CONCERNING THE BENEFICIARY OR BENEFICIARIES *(See Examples of Designations)*

| Type or Print First Name, Middle Initial, and Last Name of Each Beneficiary | Type or Print Address *(Including ZIP Code)* of Each Beneficiary | Relationship | Share To Be Paid Each Beneficiary |
|---|---|---|---|
| VERA M JONES, IF LIVING | 1827 S HAMLIN AVE Chicago Illinois 60623-2499 | WIFE | ALL |
| OtherWise To OSKER X JONES | 1937 S HAMLIN AVE Chicago Illinois 60623-2499 | SON | ALL |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

For each type of insurance (Basic Life, Option A—Standard, and Option B—Additional): (1) I hereby direct, unless otherwise indicated above, that if more than one beneficiary is named, the share of any beneficiary who may predecease me or become disqualified for any reason from receiving a share of the benefits shall be distributed equally among the surviving beneficiaries, or entirely to the survivor; (2) I understand that this Designation of Beneficiary shall be void if none of the designated beneficiaries is living at the time of my death.

I hereby specifically reserve the right to cancel or change this designation of beneficiary at any time without knowledge or consent of the beneficiary.

| PRINT OR TYPE NAME AND ADDRESS *(Including ZIP Code)* OF INSURED | Please check |
|---|---|
| OSKER JONES | ☑ I have signed this form in the presence of the two witnesses who signed below |
| 1937 S HAMLIN AVE | ☑ Neither witness is named as a beneficiary |
| Chicago Illinois 60623-2499 | ☐ If I designated shares to be paid to more than one beneficiary the shares add up to 100%. (Dollar amounts are not acceptable) |

Date of Execution *(Month, Day, Year)*
NOVEMBER 2 1989

Signature of Insured

## WITNESSES TO SIGNATURE *(A witness is ineligible to receive payment as a beneficiary)*

| Signature of Witness | Number and Street | City, State and ZIP Code |
|---|---|---|
| | 8999 W Palm | River Grove ___ |
| Signature of Witness | Number and Street | City, State and ZIP Code |
| | 8999 W Palm | River ___ |
| Receiving Agency | Date of Receipt | Agency Signature | Title |
| ___ | 11/02/89 | ___ | ___ |

SEE REVERSE SIDE OF DUPLICATE
DO NOT FILE WITH THE OFF___

**EXHIBIT B**

WHERE TO FILE THESE FORMS
GROUP LIFE INSURANCE

U.S. Office of Personnel Management ___ 323-101
Previous editions not usable ___ NSN 7540-01-231-6228

> **IMPORTANT**—The filing of this form will completely cancel any Designation of Beneficiary under the Federal Employees' Group Life Insurance Program you may have previously filed. Be sure to name in this form all persons you wish to designate as beneficiaries of any life insurance payable under the Program at your death.

JUL 25 2001

## EXAMPLES OF DESIGNATIONS

**1. How to Designate One Beneficiary** *Do not write names as M.E. Brown or as Mrs. John H. Brown. If you want to designate your estate as beneficiary, enter "My estate" in the beneficiary column.*

| Type or Print First Name, Middle Initial, and Last Name of Each Beneficiary | Type or Print Address (Including ZIP Code) of Each Beneficiary | Relationship | Share to Be Paid to Each Beneficiary |
|---|---|---|---|
| Mary E. Brown | 214 Central Avenue Muncie, IN 47303 | Niece | 100% |

**2. How to Designate More Than One Beneficiary** *Be sure that the shares to be paid to the several beneficiaries add up to 100 percent.*

| Type or Print First Name, Middle Initial, and Last Name of Each Beneficiary | Type or Print Address (Including ZIP Code) of Each Beneficiary | Relationship | Share to Be Paid to Each Beneficiary |
|---|---|---|---|
| Alice M. Long | 509 Canal Street Red Bank, NJ 07701 | Aunt | 25% |
| Joseph P. Brady | 360 Williams Street Red Bank, NJ 07701 | Nephew | 25% |
| Catherine L. Rowe | 792 Broadway Whiting, IN 46394 | Mother | 50% |

**3. How to Designate a Contingent Beneficiary**

| Type or Print First Name, Middle Initial, and Last Name of Each Beneficiary | Type or Print Address (Including ZIP Code) of Each Beneficiary | Relationship | Share to Be Paid to Each Beneficiary |
|---|---|---|---|
| John M. Parrish, if living | 810 West 180th Street New York, NY 10033 | Father | 100% |
| Otherwise to: Susan A. Parrish | 810 West 180th Street New York, NY 10033 | Sister | 100% |

**4. How to Designate Different Beneficiaries for Basic Life and Optional Coverages**

| Type or Print First Name, Middle Initial, and Last Name of Each Beneficiary | Type or Print Address (Including ZIP Code) of Each Beneficiary | Relationship | Share to Be Paid to Each Beneficiary |
|---|---|---|---|
| John D. Jones | 124 Elm Street Dayton, OH 45420 | Son | All Basic Life |
| Jane M. Smith | 421 Spring Avenue Portland, ME 04101 | Niece | All Opt. A—Standard |
| Elizabeth J. Allen | 234 Fifth Avenue New York, NY 10029 | Daughter | 50% Opt. B—Addition |
| Ann J. Borden | 678 Ninth Street Philadelphia, PA 19123 | Daughter | 50% Opt. B—Addition |

**5. How to Cancel a Designation of Beneficiary and Effect Payment Under Order of Precedence (See back of duplicate)**

| Type or Print First Name, Middle Initial, and Last Name of Each Beneficiary | Type or Print Address (Including ZIP Code) of Each Beneficiary | Relationship | Share to Be Paid to Each Beneficiary |
|---|---|---|---|
| Cancel prior designations | | | |

*If a beneficiary for Basic Life, beneficiary for that type of insu... ... B—Additional predeceases designato ...urance will be made in order of pr...

## Designation of Beneficiary

### Federal Employees' Group Life Insurance Program

**FEGLI**
Federal Employees
Group Life Insurance

Form Approved
OMB No. 3206-0136

**Warning**
Read instructions on back of
duplicate before filling in this form

Information Concerning The Insured: If you have not assigned your insurance, YOU are "the Insured", as used throughout this form.

Name of Insured *(Last, first, middle)*  JONES, OSKER —

Date of birth of Insured *(Month, day, year)*  16 July 1939

Social Security number of Insured

The Insured is:

*Place an "X" in the appropriate box.*

| | An employee |
| X | Retired or an applicant for retirement |
| | Receiving OWCP benefits or an applicant for OWCP benefits |

If retired or receiving Federal Employees' Compensation, give "CSA", "CSI", or OWCP claim number.

CSA A 3788243

Department or agency in which the Insured is presently employed *(If retired, former department or agency):*

Department or agency  DIVISION OF NORTH SURBURBAN

Bureau

Division

Location (City, state and ZIP code)  CAROL STREAM, IL 60188-9998

I am canceling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program and am now designating the beneficiary or beneficiaries named below to receive any amount of **Life Insurance** and **Accidental Death Insurance** due and payable at the Insured's death.

**I understand that if I have previously validly assigned my insurance, any designation completed by me is not valid and has no force and effect.**

I understand that this Designation of Beneficiary, if valid, will remain in full force and effect, unless or until canceled by me in writing, or until such time as it is automatically canceled (see back of Part 2). If this designation form is determined invalid for any reason, the next prior valid designation form will be given full force and effect. If no such prior form exists, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

Information Concerning The Beneficiary or Beneficiaries (See examples of designations on reverse side):

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address *(Including ZIP code)* of each beneficiary | Relationship | Percent or fraction to be paid to each beneficiary |
|---|---|---|---|
| MAXINE JONES IF LIVING | 5317 W. VAN BUREN ST. CHICAGO, IL 60644-4742 | WIFE | 100 % |
| OTHERWISE TO OSKER K. JONES | 1927 S. HAMLIN AVE. CHICAGO, IL 60623-8137 | SON | 100 % |
| | | | |
| | | | |

**Statement of Insured or Assignee**

Print or type your name and address *(Including ZIP code)*

Please check:

I:

| | have |
| X | have not |

elected Living Benefits.

Check only one:

I am:

| | the Insured |
| X | an Assignee |

Please check:

| X | I have **not** assigned my insurance. |
| X | I have signed this form in the presence of the **two** witnesses who have signed below. |
| X | Neither witness is named as a beneficiary. |

If I designated shares to be paid to more than one beneficiary, the shares add up to 100%. *(Dollar amounts are not acceptable.)*

For each type of insurance (Basic Life, Option A-Standard, and Option B-Additional): (1) I hereby direct, unless otherwise indicated above, that if more than one beneficiary is named, the share of any beneficiary who may predecease me or become disqualified for any reason from receiving a share of the benefits shall be distributed equally among the surviving beneficiaries, or entirely to the survivor.

(2) I understand that if none of the designated beneficiaries is living at the time of the Insured's death, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

I hereby specifically reserve the right to cancel or change this designation of beneficiary at any time without knowledge or consent of the beneficiary(ies).

Signature of Insured/Assignee *(Only the Insured/Assignee may sign. Signatures by guardians, conservators or through a power of attorney are not acceptable.)*

Date of execution *(Month, day, year)*  SEPTEMBER 5, 0[...]

**Witnesses To Signature (A witness is not eligible to receive payment as a beneficiary):**

Signature of witness  David Allen

Number and street  5357 W. CRYSTAL

City, state and ZIP code  CHGO IL 60651

Signature of witness

Number and street  5357 W. CR[...]

City, state and ZIP code  CHG IL 60651

Receiving agency

Date of receipt

Signature of authorized agency official

Title

**EXHIBIT**
C

See back of Part 2 for instructions on where to file this form.

Federal Employees' Group Life Insurance.

U.S. Office of Personnel Management        NSN 7540-01-231-5208

**Important** - the filing of this form, if valid, will completely cancel any Designation of Beneficiary you may have previously filed under the Federal Employees' Group Life Insurance Program. Be sure to name in this form all persons you wish to designate as beneficiaries of any life insurance payable under the Program.

## *Examples of Designations*

**1. How to designate one beneficiary** Do not write names as M.E. Brown or as Mrs. John H. Brown. If you want to designate your estate as beneficiary, enter "My estate" in the beneficiary column.

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address *(including ZIP code)* of each beneficiary | Relationship | Percent or fraction to be paid each beneficiary |
|---|---|---|---|
| Mary E. Brown | 214 Central Avenue Muncie, IN 47303 | Niece | 100% |
| | | | |

**2. How to designate more than one beneficiary** Be sure that the shares to be paid to the several beneficiaries add up to 100 percent.

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address *(including ZIP code)* of each beneficiary | Relationship | Percent or fraction to be paid each beneficiary |
|---|---|---|---|
| Alice M. Long | 509 Canal Street Red Bank, NJ 07701 | Aunt | 25% |
| Joseph P. Brady | 360 Williams Street Red Bank, NJ 07701 | Nephew | 25% |
| Catherine L. Rowe | 792 Broadway Whiting, IN 46394 | Mother | 50% |

**3. How to designate a contingent beneficiary**

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address *(including ZIP code)* of each beneficiary | Relationship | Percent or fraction to be paid each beneficiary |
|---|---|---|---|
| John M. Parrish, if living | 810 West 180th Street New York, NY 10033 | Father | 100% |
| Otherwise to: Susan A. Parrish | 810 West 180th Street New York, NY 10033 | Sister | 100% |
| | | | |

**4. How to designate different beneficiaries for basic life and optional coverages***

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address *(including ZIP code)* of each beneficiary | Relationship | Percent or fraction to be paid each beneficiary |
|---|---|---|---|
| John D. Jones | 124 Elm Street Dayton, OH 45420 | Son | 100% Basic Life |
| Jane M. Smith | 421 Spring Avenue Portland, ME 04101 | Niece | 100% Opt. A-Standard |
| Elizabeth J. Allen | 234 Fifth Avenue New York, NY 10029 | Daughter | 50% Opt. B-Additional |
| Ann J. Borden | 678 Ninth Street Philadelphia, PA 19123 | Daughter | 50% Opt. B-Additional |

**5. How to cancel a designation of beneficiary and effect payment under the order of precedence *(See back of Part 2)***

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address *(including ZIP code)* of each beneficiary | Relationship | Percent or fraction to be paid each beneficiary |
|---|---|---|---|
| Cancel prior designations | | | |
| | | | |

\* If a beneficiary for Basic Life, Option A-Standard, or Option B-Additional predeceases the insured, and there is no surviving beneficiary or contingent beneficiary for that type of insurance, payment for that type of insurance will be made under the order of precedence or, if the insurance has been assigned, to the assignee(s) (See back of Part

# Certified Copy of a Death Record

**DECEDENT'S BIRTH NO.**

REGISTRATION DISTRICT NO. *16.92*
REGISTERED NUMBER *824*

**STATE OF ILLINOIS**

## MEDICAL CERTIFICATE OF DEATH

STATE FILE NUMBER

*Type or Print in PERMANENT INK See Funeral Directors, Hospital, or Physicians Handbook for INSTRUCTIONS*

1. DECEASED—NAME — FIRST **Osker** — MIDDLE — LAST **Jones**
2. SEX **Male**
3. DATE OF DEATH (MONTH, DAY, YEAR) **July 05, 2001**

4. COUNTY OF DEATH **Cook**
5a. AGE-LAST BIRTHDAY (YRS) **61**
5b. UNDER 1 YEAR MOS. DAYS
5c. UNDER 1 DAY HOURS MIN.
5d. DATE OF BIRTH (MONTH, DAY, YEAR) **July 16, 1939**

6a. CITY, TOWN, TWP, OR ROAD DISTRICT NUMBER **Northlake**
6b. HOSPITAL OR OTHER INSTITUTION (IF NOT IN EITHER, GIVE STREET AND NUMBER) **Vencor Hospital Northlake**
6c. IF HOSP, OR INST, INDICATE D.O.A. OP/EMER. RM, INPATIENT (SPECIFY) **Inpatient**

**A**

**DECEASED**

BIRTHPLACE (CITY AND STATE OR FOREIGN COUNTRY) **Clarksdale, Ms**
8a. MARRIED, NEVER MARRIED, WIDOWED, DIVORCED (SPECIFY) **Married**
8b. NAME OF SURVIVING SPOUSE (MAIDEN NAME, IF WIFE) **Maxine Clark**
9. WAS DECEASED EVER IN ARMED FORCES? (YES/NO) **Yes**

**B**

10. SOCIAL SECURITY NUMBER **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**
11a. USUAL OCCUPATION **Laborer**
11b. KIND OF BUSINESS OR INDUSTRY **Post Office**
12. EDUCATION (SPECIFY ONLY HIGHEST GRADE COMPLETED) Elementary/Secondary (0-12) **12** College (1-4 or 5 +) **2**

**C**

13a. RESIDENCE (STREET AND NUMBER) **5317 W. Van Buren**
13b. CITY, TOWN, TWP, OR ROAD DISTRICT NO. **Chicago**
13c. INSIDE CITY (YES/NO) **Yes**
13d. COUNTY **Cook**

**D**

13e. STATE **Illinois**
13f. ZIP CODE **60644**
14a. RACE (WHITE, BLACK, AMERICAN INDIAN, etc.) (SPECIFY) **Black**
14b. OF HISPANIC ORIGIN? (SPECIFY NO OR YES-IF YES, SPECIFY CUBAN, MEXICAN, PUERTO RICAN, etc) **☒ NO ☐ YES** SPECIFY:

**E**

**PARENTS**

15. FATHER—NAME FIRST **Willie** MIDDLE LAST **Jones**
16. MOTHER—NAME FIRST **Ada** MIDDLE **Sanders** (MAIDEN) LAST

17a. INFORMANT'S NAME (TYPE OR PRINT) **Maxine Jones**
17b. RELATIONSHIP **Wife**
17c. MAILING ADDRESS (STREET AND NO. OR R.F.D., CITY OR TOWN, STATE, ZIP) **5317 W. Van Buren Chgo, Ill. 44**

**1**
**2**
**3**

18. PART I. Enter the diseases, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH

Immediate Cause (Final disease or condition resulting in death)
(a) **SEPSIS**
DUE TO, OR AS A CONSEQUENCE OF

CONDITIONS, IF ANY WHICH GIVE RISE TO IMMEDIATE CAUSE (a) STATING THE UNDERLYING CAUSE LAST.
(b) **CARDIOMYOPATHY**
DUE TO, OR AS A CONSEQUENCE OF
(c) **CORONARY ARTERY DISEASE.**

**CAUSE**

**4**
**5**

PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in PART I. **DM, DECUBITI**
19a. AUTOPSY (YES/NO) **No**
19b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR COMPLETION OF CAUSE OF DEATH (YES/NO)

**N**
**P**

20a. DATE OF OPERATION, IF ANY
20b. MAJOR FINDINGS OF OPERATION
20c. IF FEMALE, WAS THERE A PREGNANCY IN PAST THREE MONTHS? YES ☐ NO ☐

21a. I (DID) (DID NOT) ATTEND THE DECEASED AND LAST SAW HIM/HER ALIVE ON (MONTH, DAY, YEAR) **July 05, 2001**
21b. WAS CORONER OR MEDICAL EXAMINER NOTIFIED? (YES/NO) **No**
21c. HOUR OF DEATH **4:26 AM.** M.

**CERTIFIER**

22. TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSE(S) STATED.

22a. SIGNATURE ▶ *Srikanth Bandila*
22b. DATE SIGNED (MONTH, DAY, YEAR) **July 05, 2001**

22c. NAME AND ADDRESS OF CERTIFIER (TYPE OR PRINT) **SRIKANTH BANDELA 2137 S. Oak Park Ave, Berwyn, IL. 60402.**
22d. ILLINOIS LICENSE NUMBER **036-057106**

23. NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER (TYPE OR PRINT)

NOTE: IF AN INJURY WAS INVOLVED IN THIS DEATH THE CORONER OR MEDICAL EXAMINER MUST BE NOTIFIED.

24a. BURIAL, CREMATION, REMOVAL (SPECIFY) **Burial**
24b. CEMETERY OR CREMATORY—NAME **Oakridge**
24c. LOCATION CITY OR TOWN **Hillside** STATE **Illinois**
24d. DATE (MONTH, DAY, YEAR) **July 12, 2001**

**DISPOSITION**

25a. FUNERAL HOME NAME **A.A. Rayner & Sons** STREET AND NUMBER OR R.F.D. **5911 W. Madison Street** CITY OR TOWN **Chicago** STATE **Illinois** ZIP **60644**

25b. FUNERAL DIRECTOR'S SIGNATURE *Vince L. Brown*
25c. FUNERAL DIRECTOR'S ILLINOIS LICENSE NUMBER **03100934**

26a. LOCAL REGISTRAR'S SIGNATURE ▶ *Michael A. McDermott* BROADVIEW ILLINOIS 60155
26b. DATE FILED BY LOCAL REGISTRAR (MONTH, DAY, YEAR) **July 12, 2001**

VR200 (Rev. 5/89) Illinois Department of Public Health—Division of Vital Records

(BASED ON 1989 U.S. STANDARD CERTIFICATE)

*I HEREBY CERTIFY THAT the foregoing is a true and correct copy of the death record for the decedent named at item 1, and that the record was established and filed in my office in accordance with the provisions of the Illinois Vital Records Act.*

DATE **JUL 12 2001**

SIGNED *Michael A. McDermott*

AT **BROADVIEW, ILLINOIS 60155** , Illinois OFFICIAL TITLE **LOCAL REGISTRAR OF VITAL STATISTICS**

*The original record of this death is permanently filed w[...] MENT OF PUBLIC HEALTH at Springfield, Coun[...] clerks and local registrars are authorized to make certif[...] original record. The Illinois statutes provide that t[...] certification of a death record by the Department of Pu[...] county clerk shall be prima facie evidence of the fac[...] therein stated.*



**EXHIBIT**
**D**

CLAIM # 2001095945

Sept 16 2001
312 Chicago Ave. Apt 2H
Oakpark Ill. 60302

To Whom it May Concern
I Osher K Jones has been informed by F E G L I
that as of Sept 5, 2000 Mrs Maxine Jones was the
sole beneficiary of his policy, And that I have
21 days to Contest

I'm contesting this claim on three facts:
1) Mrs Maxine + my father was separated in 2000
2) He was incoherent due to his illness & medications
if he was told he was taking care of other matters or
3) Forgery.

I Osher K Jones is in process of obtaining a
lawer. Please send me a copy of the claime
of beneficiary change so I can confirm its
authenisity
Thank You
Yours Truly
Osher K Jones
Your Immediate attention will be apreciated
appreciated

EXHIBIT
E

October 7, 01
312 Chicago ave
Oakpark Il. 60302

To George Viegelmann
Claims Management Specialist

Dear Mr Viegelmann
    This is in regard to Claim Number 200d0705945
Mr Osker Jones upon recieving the copy of the benificiary
form. I have strong concerns that this form + signature
is a fraud, for several reason.
#1. My father was out of town Sept. 5, 2000 attending
a family reunion which Mrs Maxine did not attend
so he could not have signed
#2. This is not his signature I'm sending you a
copy of his signature to compare with the original
form. Not the form sent to me.
#3 The people that signed as witness is Mrs Maxine
Jones employers + close friends. Definately not my
fathers as he hardly knew them
#4 This copy was not notirize which if Osker was
changing benificiary he would have notirize it. And
in order to change benificineey claim he knew the
proper preceedure for the company which he worked

EXHIBIT
F

Please take this under consideration and search all aspects of my allegation relizing that your Company would like to clear this matter affeciently, here is a copy of my fathers signature compare it with the fraud & the original claim of benificary. Therefore please honor the original Benificary claim.

As I was advised by my counselor to write this letter in hope of clearing up this matter. If I have not supplied you with enough information please advise me. So that I may take the next step.

Thank You

Yours Truly

Asher Jones

P.S. Pleas note not only Asher's signature but his printing also. I notized that the copy of Benificary Life Ins. program was faxed Sept 4 2001 1239; Why didn't you have a claim form on file before this date two months after Asher has expired

**OSKER JONES** 01-90
1927 S. Hamlin Ave.
Chicago, Il 60623

11-5- 19 99

1035

2-1/710
BRANCH 9999

Pay to the
order of  *Cook County Collector*  | $ *505.34*

*Five Hundred and Five and 34/100*  Dollars

**FIRST CHICAGO BANK**
The First National Bank of Chicago
Chicago, Illinois 60670

Oak Park  *16-23-321-011-0000*

⑆071000013⑆ 39700204561161⑈ 1035 ⑈0000050534⑈

**OSKER JONES** **01-90**
1927 S. Hamlin Ave.
Chicago, Il 60623

12-1-19 97

0904

2-1/710
BRANCH 5999

Pay to the
order of _FIRST CARD_ $ 50.00

_FIFTY and NO/100_ Dollar

**FIRST CHICAGO BANK**
The First National Bank of Chicago   Oak Park
Chicago, Illinois 60670

⑆07 10000 13⑈ 39 700 20456 116⑈ 0904 ⑆000000 50000



# FAX COVER SHEET

**DATE OF FAX:**   October 26, 2001 -  **FAX# :   201-395-7950**

**SENT TO:**   Mr. George Vieglemann, Case Management Specialist

**ADDRESS: Office of Federal Employees Group Life Insurance
P. O. Box 2627, Jersey City, New Jersey 07303-2627**

**TELEPHONE #:  1-800-633-4542  or  201-395-7990**

## RE:  Deceased employee - Mr. Osker Jones
### Case # 20010705945    CSA # A3788243

## FROM:   Mr. Osker K. Jones
### 312 Chicago Avenue, Unit 2-H
### Oak Park, Illinois 60052 60302
## TEL #:  708-763-0813

## REMARKS: _____

**NUMBER OF PAGES FAXED INCLUDING THIS COVER SHEET :_____**



EXHIBIT
G

# OSKER K. JONES
312 Chicago Avenue , Unit 2-H
Oak, Park, Illinois 60302
Telephone #    708-763-0813

**THIS LETTER TO BE SENT VIA FAX TO THE FOLLOWING FAX # 201-395-7950**

October 25, 2001

Mr. George Viegelmann
Case Management Specialist
Office of Federal Employees' Group Life Insurance
P. O. Box 2627
Jersey City, New Jersey 07303-2627

RE: DECEASED INSURED: Mr. Osker Jones  -  CSA # A3788243 - CLAIM # 20010706945

Dear Mr. Viegelmann:

This letter is regarding the telephone conversation today (10-25-01) with a FEGLI representative within your office, and the subsequent conversation by the same person by with you, regarding non receipt by you or your office, of my letter which was dated and sent on October 7, 2001.

This letter was sent to your address mentioned above, via Certified Mail with a Return Receipt, Number 7001 0360 0002 7806 5067. This letter was received by FEGLI representative, named, M. Rodriguez on October 18, 2001.

Please consider my statement listed below to be a reiteration of my previous letter which was dated October 7, 2001.

The Designation of Beneficiary, for Federal Employees' Group Life Insurance, Standard Form 2823, Rev, July 1995, that was executed on September 5, 2000, which bears the "signature" appearing as that of Osker Jones as the Insured, IS NOT THE SIGNATURE OF MY FATHER OSKER JONES, SS# 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, who was born July 18, 1939. I AM STATING THAT THE SIGNATURE IS FRAUDULENT AND NOT THAT OF MY FATHER OSKER JONES.

Also, please note on the Designation of Beneficiary Form, the section that bears the caption of "STATEMENT of INSURED or ASSIGNEE". This section, which required the printing or typing of the insured's name and address WAS NOT COMPLETED. Also the portion within the same section of the form that required the "checking" by my father, which would have indicated that he was the "Insured" or "An Assignee" WAS ALSO NOT COMPLETED.  IF MY FATHER, OSKER JONES HAD ACTUALLY SIGNED THE FORM, YOU CAN BE ASSURED THAT HE WOULD HAVE COMPLETED ALL PORTIONS OF THE FORM THAT REQUIRED INFORMATION AND COMPLETION BY HIM.  HE DID NOT SIGN THIS BENEFICIARY FORM THAT WAS DATED SEPTEMBER 5, 2000.

PAGE 2 OF 2 OF Letter dated October 25, 2001

## OSKER K. JONES
312 Chicago Avenue , Unit 2-H
Oak, Park, Illinois 60302
Telephone #  708-763-0813

RE: DECEASED INSURED  Mr. Osker Jones  - CSA # A3788243  - CLAIM # 20010705945

As I previously stated in my letter of October 7, 2001, my father was out of town September 5, 2000, and did not sign this beneficiary form at any time.   Also I am again indicating that Mr. Osker Jones, would not have signed any form/s/ without the benefit of a Notary seal.

My correspondence of October 7, 2001 included a copy of my father's signature for comparing with that signature which appeared on the Beneficiary form of September 5, 2000.

Please note that the copy of the beneficiary form which was sent to me from your office reflects the name of the "named beneficiary", Maxine Jones. Please note that the name of Maxine Jones was "whited out". I am assuming that this was done to protect the privacy of the "named" beneficiary, however if you hold the document over an electric light fixture you are able to see her name appearing as the beneficiary to received 100% of the benefits. Again, I am stating that this is a fraudulent document.

I AM AGAIN REQUESTING THAT YOUR OFFICE INVESTIGATE THIS CLAIM BEFORE PAYING ANY PROCEEDS. PLEASE DO NOT PAY ANY PROCEEDS TO MAXINE JONES, AS THE BENEFICIARY FORM THAT WAS EXECUTED ON SEPTEMBER 5, 2000, THAT WAS SUBMITTED BY MAXINE JONES IS FRAUDULENT, AND DOES NOT BEAR THE ACTUAL SIGNATURE OF MY FATHER, OSKER JONES. ALSO, THE WITNESSES OF THIS DOCUMENT SHOULD ALSO BE QUESTIONED, AS THEY DID NOT WITNESS THE SIGNING OF THIS DOCUMENT BY MY FATHER, MR. OSKER JONES.   THESE WITNESSES ARE PERSONAL FRIENDS OF MAXINE JONES. SHE IS ALSO EMPLOYED BY THESE WITNESSES.

Please notice the printing and all of the "supposed signatures" on the beneficiary form. The completion of this form  appears to have been completed by the same person. I do not believe that this is a coincident that all of the information that required a printed or cursive response, appears to have been made by the same person or by persons with identical handwriting.

Please honor the original beneficiary named by my father on November 2, 1989, which is myself, Osker K. Jones. Please contact me by letter or telephone at your earliest regarding this matter.

Very truly yours,

Osker K. Jones
    Enc.: letter dated 10-7-01 & returned canceled checks for Osker Jones

George

FM UFM

on of Beneficiary

Group Life Insurance Program

Warning
Read Instructions on back of
duplicate before filing in this form

GENERAL SERVICES ADMINISTRATION

OMB No. 3200-0136

Name of Insured (Last, first, middle)

JONES OSKER

Date of birth of Insured (Month, day, year)

16 July 1939

Social Security number of Insured

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

The Insured is: ☒ An employee ☒ Retired or an applicant for retirement ☐ Receiving OWCP benefits or an applicant for OWCP benefits

Place an "X" in the appropriate box

If the Insured is retired or receiving Federal Employees' Compensation, give 'CSA', 'CSI', or OWCP claim number.

CSA A 3788243

Department or agency in which the Insured is presently employed (If retired, former department or agency)

Department or agency DIVISION OF NORTH SUBURBAN Bureau

Division

Location (City, state and ZIP code)

CAROL STREAM, IL 60188-9998

I am canceling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program and am now designating the beneficiary or beneficiaries named below to receive any amount of Life Insurance and Accidental Death Insurance due and payable at the Insured's death.

I understand that if I have previously validly assigned my insurance, any designation completed by me is not valid and has no force and effect.

I understand that this Designation of Beneficiary, if valid, will remain in full force and effect, unless or until canceled by me in writing, or until such time as it is automatically canceled (see back of Part 2). If the designation form is determined invalid for any reason, the next prior valid designation form will be given full force and effect. If no such prior form exists, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address (including ZIP code) of each beneficiary | Relationship | Percent or fraction to be paid to each beneficiary |
|---|---|---|---|
| OTHERWISE TO OSKER K. JONES | 1927 S. HAMLINE AVE CHICAGO, IL 60623 #17 | SON | 100 % |

Print or type your name and address (including ZIP code)

Please check ☐ I have ☒ I have not elected Living Benefits

Check only one: ☐ I am the Insured ☐ an Assignee

Please check:
☒ I have not assigned my insurance.
☒ I have signed this form in the presence of the two witnesses who have signed below.
☒ Neither witness is named as a beneficiary.
☒ If I designated shares to be paid to more than one beneficiary, the shares add up to 100%. (Dollar amounts are not acceptable.)

For each type of insurance (Basic Life, Option A-Standard, and Option B-Additional) if more than one beneficiary is named, the share of any beneficiary who may predecease me or become disqualified for any reason from receiving a share of the benefits shall be distributed equally among the surviving beneficiaries, or entirely to the survivor.

(2) I understand that if none of the designated beneficiaries is living at the time of the Insured's death, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

I hereby specifically reserve the right to cancel or change this designation of beneficiary at any time without knowledge or consent of the beneficiary(ies).

Signature of Insured/Assignee (Only the Insured/Assignee may sign. Signatures by guardians, conservators or through a power of attorney are not acceptable.)

Date of execution (Month, day, year)

SEPTEMBER 5, OC

Signature of witness

David Allison

Number and street

5357 W. CRYSTAL

City, state and ZIP code

CHGO IL 60651

Signature of witness

Number and street

5357 W. Cross

City, state and ZIP code

CHGO IL 60651

Receiving agency

Date of receipt

Signature of authorized agency official

Title

See back of Part 2 for Instructions on where to file this form. Do not file with the Office of Federal Employees' Group Life Insurance.

October 7 01
318 N Chicago
Chicago Ill 60302

To George Virgelmson
Claims Management Specialist.

Dear Mr Virgelmson.

This is in regard to Claim Number
20010705945. Mr Osker Jones
upon receiving the copy of the
benificiory form, have
strong Concerns that this form
and signauter is a fraud,
for - several reason.

#1. My father Was Out of
town September 5, 2001
attending a family reunion, which
Mrs. Maxine did not attend
so he not have sign.
#2. This is not his signature
Im sending you a copy of
his signuter. to compare

with the Original form. Not the form sent to me

#3. The People that Sign as Witness is mrs Maxine Employer and Close friend Definstly not My father's as they hardly knew them.

#4. This Copy was not notirize which if Oaker was Changing benificary he would have notirize it. And in order to Change benificary Claim he have to go to the personal department of his Company.

Please take this under consideration and reviad All aspect of My Allegation relizing that your Company would like to clear this Matter. Appeciondly, here is a copy of My father signature, Compare it with the fraud. Please honor the Originale Benificary Claim.

should be honored, if
not please

As I was advise by
my probation counselor
officer to write this
letter in hope of cleaning
up this matter. If I have
not supplied you with
enough information please
advise me, then I will get
it.

Thank You

Your truly

Osker Pine

P.S. take note of not only
his signature but also
his Printing.



**OSKER JONES** 01-90
1927 S. Hamlin Ave.
Chicago, Il 60623
005188792
11-1-19 99
1038
2-1/710
BRANCH 5999

Pay to the order of _GLOBE Life + ACCIDENT INS. CO._ | $ 43.74

_FORTY THREE AND 74/100_ _____ Dollars

**FIRST CHICAGO BANK**
The First National Bank of Chicago    Oak Park

**OSKER JONES** 01-90
1927 S. Hamlin Ave.
Chicago, Il 60623
12-1-19 87
700
2-1/710
BRANCH 5999

Pay to the order of _WISC. NAT'L LIFE INS._ | $ 45.00

_FORTY FIVE AND No/100_ _____ Dollars

**FIRST CHICAGO BANK**
The First National Bank of Chicago

**OSKER JONES** 01-90
1927 S. Hamlin Ave.
Chicago, Il 60623
3-5-19 00
1043
2-1/710
BRANCH 5999

Pay to the order of _SAINT MATTHEW Publishing_ | $ 10.00

_TEN AND No/100_ _____ Dollars

**FIRST CHICAGO BANK**
The First National Bank of Chicago    Oak Park

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

~ Federal Emp group life Ins.
ex 2627
sey City NJ 07303-2627

l' Ceorge Viegelmann

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

O.F.E.G.L.I.

C. Signature
X
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

- 6 2001

M. RODRIGUE7

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)

7001 0360 0002 7806 5067

PS Form 3811, July 1999      Domestic Return Receipt      102595-99-M-1789



# Claim for Death Benefits
### Federal Employees' Group Life Insurance Program

**(Do *not* use this form to claim Option C-Family Benefits. Please use form FE-6 DEP to claim those benefits.)**

## Instructions

### General

The Office of Federal Employees' Group Life Insurance (OFEGLI) pays claims under the Federal Employees' Group Life Insurance Program. "We" and "our" on this form refer to OFEGLI.

FEGLI death benefits are not subject to Federal income tax, but the interest that we pay on those benefits is subject to such tax. We will report all interest payments to the Internal Revenue Service.

### Who receives the death benefits?

We will pay benefits in the following order of payment:

If the deceased assigned ownership of his/her life insurance to someone else (generally by filing an RI 76-10, Assignment form), then we will pay:

> First, to the beneficiary(ies) the assignee(s) validly designated;
> Second, if none, to the assignee(s).

If the deceased did *not* assign ownership and there is a valid court order on file with the agency or OPM, as appropriate, we will pay benefits according to the court order.

If the deceased did *not* assign ownership and there is *no* valid court order on file with the agency or OPM, as appropriate, then we will pay:

> First, to the beneficiary(ies) the deceased validly designated;
> Second, if none, to the deceased's widow or widower;
> Third, if none of the above, to the deceased's child or children and descendants of any deceased children (a court will usually have to appoint a guardian to receive payment for a minor child);
> Fourth, if none of the above, to the deceased's parents in equal shares, or the entire amount to the surviving parent;
> Fifth, if none of the above, to the court-appointed executor or administrator of the deceased's estate;
> Sixth, if none of the above, to the deceased's other next of kin, entitled under the laws of the state where the deceased lived.

### How will I receive benefits?

If you're entitled to less than $7,500, we will mail you a check.

If you're entitled to $7,500 or more, we will open a money market account in your name and mail you a checkbook. You may write checks for some or all of the money in your account as soon as you receive the checkbook. See page 2 for details.

### How do I complete this form?

Please type or print legibly in ink.

If you need help completing this form, call our service representatives, toll-free, at 1-800-OFE-GLIA (1-800-633-4542). Here is a summary of what parts of the form you must complete:

| If you are a: | Then Complete These Parts of the Form: | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | A | B | C 1-3 | C 4-13 | D | E | F | Page 2 |
| Designated Beneficiary | ✔ | | ✔ | | | | ✔ | ✔ |
| Widow or Widower | ✔ | ✔ | ✔ | ✔ | | | ✔ | ✔ |
| All Others | ✔ | ✔ | ✔ | | ✔ | ✔ | ✔ | ✔ |

Don't skip any questions you're supposed to answer. That will delay our action on your claim. If a question doesn't apply, write "N/A" or "not applicable". If the answer is "No" or "Unknown", write that.

If you are completing this claim on behalf of someone else (such as a minor), complete items 1-3 of Part C with that person's information, not yours. In Part F and page 2, sign your own name "on behalf of" the other person. Fill in **your** name, address and phone numbers. However, the Social Security Number should be the other person's, not yours.

### What else do I have to submit?

In addition to this claim form, you must submit a certified copy of the deceased's death certificate that contains the cause and manner of death. (However, if you know for sure that another claimant is submitting the deceased's death certificate, you don't have to.) You can get the certificate from your city or state's Bureau of Vital Statistics or equivalent agency. We cannot process your claim until we receive the certified death certificate.

Please submit an English translation of any foreign language death certificate.

In addition, send us all Designation of Beneficiary Form(s) (SF 2823 and/or SF 54) that you may have which show the agency receipt date on the bottom.

If you are an executor or administrator filing this claim on behalf of the deceased's estate, send us a copy of the court appointment papers.

We will let you know if we need anything else.

### Where do I send this form and other documents?

**If the deceased was employed at the time of death**
Send everything to the deceased's employing office. We will process your claim after we receive certification from the agency. However, if you are the deceased's widow(er) and the agency told you to send your claim form and other documents directly to us, you should do that. Please include copies of any letters you received from the agency that mention death benefits.

**If the deceased was retired or receiving Federal Workers' Compensation benefits at the time of death**
Send everything to OFEGLI, P.O. Box 2627, Jersey City, NJ 07303-2627.

### Instructions to the employing agency

Forward the completed claim, death certificate and court appointment papers, if any, to OFEGLI, P.O. Box 2627, Jersey City, NJ 07303-2627, together with:
1. The original Agency Certification of Insurance Status (SF 2821);
2. The original Designation of Beneficiary form(s) (SF 2823 or SF 54), if any;
3. All court orders on file, if any; and
4. All other FEGLI forms (for example, SF 2817 or RI 76-27 election forms, RI 76-10 assignment form, etc.)



EXHIBIT

H

# IMPORTANT INFORMATION ABOUT
## MONEY MARKET ACCOUNTS

**AUTOMATIC**
- If we are paying you $7,500 or more, we will automatically open a money market account in your name and mail you the checkbook.

**SAFE**
- The account earns interest starting the first day we open it.
- Metropolitan Life Insurance Company guarantees the full amount in the account, including all interest.

**FREE**
- You pay nothing for this account. There are no monthly service charges or charges for checks.
- You can write checks from $250 up to the full balance at any time.

**FLEXIBLE**
- You can withdraw all or part of your money at any time, with no penalty.
- You can name a beneficiary for your funds, in case something happens to you.

We will send you detailed information about the account when we open one in your name.

# SPECIAL NOTE

Please complete, in ink, the information below and sign your name in the first box. We need this information to open a money market account. Even though you may be giving the same information elsewhere on this form, you must also give it here. We cannot process your claim without this information.

| | |
|---|---|
| Your signature *(Do not print)* | X *(signature)* |
| Your name *(Please print)* | MAXINE JONES |
| Address *(Number, street, apt. no.)* | 5317 W. VAN BUREN |
| City, state, ZIP code | CHICAGO, IL 606 44 |
| Your Social Security Number **OR** Estate/Trust Identification Number | X 3 6 1 — 5 0 — 6 4 5 2 |

| Date *(mm/dd/yyyy)* | Daytime telephone no. | Evening telephone no. |
|---|---|---|
| 7/27/01 | (773) 261-3309 | (773) 261-1475 |



# Claim for Death Benefits
Federal Employees' Group Life Insurance Program

Read the instructions carefully before filling out this form.

## Part A. Information About the Deceased (Everyone must complete this part.)

1. Deceased's full name *(Last) (First) (Middle)*
**Jones Osker**

2. Date of birth *(mm/dd/yyyy)*
**7/16/39**

3. Date of death *(mm/dd/yyyy)*
**7/05/01**

4. Social Security Number
**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**

5. Legal residence at time of death—*(City and state)*
**5317 W. Van Buren 2nd cell Chicago 60**

6. Department or agency in which last employed, including bureau or division
**U.S. Post office Carol Stream Ill**

7. Location of last employment *(City, state, ZIP code)*
**Carol Stream, Illinois**

8. At the time of death was the deceased:

(a) Retired and receiving monthly annuity under any Federal civilian retirement system?
Yes ☑ No ☐ Unknown ☐

(b) Receiving Federal Workers' Compensation benefits?
Yes ☐ No ☐ Unknown ☑

If "Yes" to either 8(a) or 8(b), please complete boxes 8(c) and 8(d) to the right.

(c) Claim number *(CSA, CSF, CSI)*
**A 3788243**

(d) Effective date of Federal Workers' Compensation benefits *(mm/dd/yyyy)*
**unknow**

## Part B. Information About the Deceased's Family (Skip this part if you are a designated beneficiary.)

| 1. How many times was the deceased married? | 2. Give the name of each spouse *(include ALL marriages)* | 3. How did the marriage end? *(Check one in each case)* | | 4. When did the marriage end? *(mm/dd/yyyy)* |
|---|---|---|---|---|
| **2** | **Vera Jones** | ☑ Death | ☐ Divorce | **09-15-94** |
| | **Maxine-Clark-Jones** | ☑ Death | ☐ Divorce | **07-05-01** |
| | | ☐ Death | ☐ Divorce | |

5. Did the deceased have any living children on the date of his/her death?
Yes ☑ No ☐ If Yes, how many? **1 (34 year old)**

6. Did the deceased have any children who died before the date of his/her death?
Yes ☐ No ☑ If Yes, how many? _____

## Part C. Information About You

1. Your name *(Last) (First) (Middle)*
**Jones Maxine Clark**

2. Your relationship to the deceased
**Wife**

3. Your date of birth *(mm/dd/yyyy)*
**10-23-55**

### Complete Items 4 through 13 only if you are the deceased's widow or widower.

4. Date of marriage *(mm/dd/yyyy)*
**10-23-97**

5. Place of marriage *(City and state)*
**Los Vegas, Nevada**

6. Marriage was performed by:
☑ Clergy or Justice of the Peace
☐ Other *(specify)*

7. Were you living with the deceased at the time of death?
☑ Yes ☐ No

8. Were you divorced from the deceased at the time of death?
☐ Yes ☑ No

9. If you were divorced from the deceased, give the date *(mm/dd/yyyy)* and place of the divorce.
**n/A**

10. How many times were you married?
**1**

11. Give the name of each spouse *(include ALL marriages)*
**Osker Jones**

12. How did the marriage end? *(Check one in each case)*
☑ Death ☐ Divorce
☐ Death ☐ Divorce
☐ Death ☐ Divorce

13. When did the marriage end? *(mm/dd/yyyy)*
**07/05/01**

(continued on the other side)

**Skip Parts D and E if you are a designated beneficiary or the deceased's widow or widower.**

## Part D. Information About the Deceased's Next of Kin

1. List below the name, age, relationship, and address of:

(a) Widow or widower;

(b) If there is no surviving widow or widower, list the child or children of all the deceased's marriages (include adopted children and children born out-of-wedlock) and the descendants of any deceased child or children (use additional sheets if necessary);

(c) If there are no children, list the parents; if one or both parents are deceased, so state and give the date of death;

(d) If there are no survivors in (a) through (c), list the next of kin who may be capable of inheriting from the deceased (brothers, sisters, descendants of deceased brothers, sisters, etc.). (Use additional sheets if necessary).

| Name | Age | Relationship to the deceased | Full address |
|------|-----|------------------------------|--------------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Fill in items 2 and 3 only if any of the persons listed above are under age 18.**

2. If the court appointed a guardian for the estate of any minor children above, give the name and address of the guardian and attach a copy of the court appointment papers. **Natural parentage or custody as a result of a divorce do not constitute guardianship.**

Name

Address (Number, street, apt. no.)

City, state, ZIP code

3. If the court did not appoint a guardian for the estate of any minor children, will it appoint one later?

☐ Yes ☐ No

## Part E. Information About the Deceased's Estate

1. If the court appointed an executor or administrator to settle the deceased's estate, give his/her name and address and attach a copy of the court appointment papers.

Name

Address (Number, street, apt. no.)

City, state, ZIP code

2. If the court did not appoint an executor or administrator, will it appoint one later?

☐ Yes ☐ No

## Part F. Your Certification (Everyone must complete this part.)

1. Are you claiming accidental death benefits (did the deceased die solely through violent, external, and accidental means)? If "Yes," submit coroner's and police reports, news clippings, and any other available reports concerning the accident. OFEGLI cannot consider a claim for such benefits if the deceased separated or retired before the accident.

☐ Yes ☑ No

**2. Backup Withholding** Has the IRS notified you that you are subject to income tax backup withholding as a result of a failure to report all interest or dividends?

☐ Yes ☑ No

If the amount payable to you is less than $7,500, OFEGLI will send you a check.

If the amount payable to you is $7,500 or more, OFEGLI will open a money market account in your name, giving you complete control of and immediate access to all of your funds. You may write checks for all or part of the money in your account when you receive your checkbook. See page 2 for more information.

Please be sure you complete the information on page 2 under "Special Note"

Date (mm/dd/yyyy)
07/25/0

Your signature (Do not print)

Your name (Please print)
Maxine Clark-Jones

I certify under the penalties of perjury that all statements made in this claim are true, correct and complete to the best of my knowledge, information, and belief, and that I did not suppress or withhold evidence necessary to settle this claim.

Address (Number, street, apt. no.)
537 W. VanBuren 2nd Fl

City, state, ZIP code
Chicago IL 60607

| Your Social Security Number **OR** Estate/Trust Identification Number | 361 - 50 - 6452 |
|---|---|

Daytime telephone no.
(773) Area Code 261-3309

Evening telephone no.
(773) Area Code 261-1473

**Warning**—If you knowingly and willfully make any materially false, fictitious or fraudulent statement or representation on this form, or conceal a material fact related to the requests for information on this form, you may be subject to a monetary fine or imprisonment for not more than five years, or both, under 18 U.S.C. 1001.

Form FE-6
Revised April 2001
OFEGLI Form in Adobe Acrobat PDF (04/01)


# Claim for Death Benefits
### Federal Employees' Group Life Insurance Program

**(Do *not* use this form to claim Option C-Family Benefits. Please use form FE-6 DEP to claim those benefits.)**

# Instructions

## General

The Office of Federal Employees' Group Life Insurance (OFEGLI) pays claims under the Federal Employees' Group Life Insurance Program. "We" and "our" on this form refer to OFEGLI.

FEGLI death benefits are not subject to Federal income tax, but the interest that we pay on those benefits is subject to such tax. We will report all interest payments to the Internal Revenue Service.

## Who receives the death benefits?

We will pay benefits in the following order of payment:

If the deceased assigned ownership of his/her life insurance to someone else (generally by filing an RI 76-10, Assignment form), then we will pay:

    First, to the beneficiary(ies) the assignee(s) validly designated;
    Second, if none, to the assignee(s).

If the deceased did *not* assign ownership and there is a valid court order on file with the agency or OPM, as appropriate, we will pay benefits according to the court order.

If the deceased did *not* assign ownership and there is *no* valid court order on file with the agency or OPM, as appropriate, then we will pay:

    First, to the beneficiary(ies) the deceased validly designated;

    Second, if none, to the deceased's widow or widower;

    Third, if none of the above, to the deceased's child or children and descendants of any deceased children (a court will usually have to appoint a guardian to receive payment for a minor child);

    Fourth, if none of the above, to the deceased's parents in equal shares, or the entire amount to the surviving parent;

    Fifth, if none of the above, to the court-appointed executor or administrator of the deceased's estate;

    Sixth, if none of the above, to the deceased's other next of kin, entitled under the laws of the state where the deceased lived.

### How will I receive benefits?

If you're entitled to less than $7,500, we will mail you a check.

If you're entitled to $7,500 or more, we will open a money market account in your name and mail you a checkbook. You may write checks for some or all of the money in your account as soon as you receive the checkbook. See page 2 for details.

## How do I complete this form?

Please type or print legibly in ink.

If you need help completing this form, call our service representatives, toll-free, at 1-800-OFE-GLIA (1-800-633-4542). Here is a summary of what parts of the form you must complete:

Don't skip any questions you're supposed to answer. That will delay our action on your claim. If a question doesn't apply, write "N/A" or "not applicable". If the answer is "No" or "Unknown", write that.

If you are completing this claim on behalf of someone else (such as a minor), complete items 1-3 of Part C with that person's information, not yours. In Part F and page 2, sign your own name "on behalf of" the other person. Fill in **your** name, address and phone numbers. However, the Social Security Number should be the other person's, not yours.

## What else do I have to submit?

In addition to this claim form, you must submit a certified copy of the deceased's death certificate that contains the cause and manner of death. (However, if you know for sure that another claimant is submitting the deceased's death certificate, you don't have to). You can get the certificate from your city or state's Bureau of Vital Statistics or equivalent agency. We cannot process your claim until we receive the certified death certificate.

Please submit an English translation of any foreign language death certificate.

In addition, send us all Designation of Beneficiary Form(s) (SF 2823 and/or SF 54) that you may have which show the agency receipt date on the bottom.

If you are an executor or administrator filing this claim on behalf of the deceased's estate, send us a copy of the court appointment papers.

We will let you know if we need anything else.

## Where do I send this form and other documents?

### If the deceased was employed at the time of death .

Send everything to the deceased's employing office. We will process your claim after we receive certification from the agency. However, if you are the deceased's widow(er) and the agency told you to send your claim form and other documents directly to us, you should do that. Please include copies of any letters you received from the agency that mention death benefits.

### If the deceased was retired or receiving Federal Workers' Compensation benefits at the time of death

Send everything to OFEGLI, P.O. Box 2627, Jersey City, NJ 07303-2627.

## Instructions to the employing agency

Forward the completed claim, death certificate and court appointment papers, if any, to OFEGLI, P.O. Box 2627, Jersey City, NJ 07303-2627, together with:

1. The original Agency Certification of Insurance Status (SF 2821)
2. The original Designation of Beneficiary form(s) (SF 2823 or SF 54), if any;
3. All court orders on file, if any; and
4. All other FEGLI forms (for example, SF 2817 or RI 76-27 election forms, RI 76-10 assignment form, etc.)

| | Then Complete These Parts of the Form: | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| If you are a: | A | B | C 1-3 | C 4-13 | D | E | F | Page 2 |
| Designated Beneficiary | ✔ | | ✔ | | | | ✔ | ✔ |
| Widow or Widower | ✔ | ✔ | ✔ | ✔ | | | ✔ | ✔ |
| All Others | ✔ | ✔ | ✔ | | ✔ | ✔ | ✔ | ✔ |

**EXHIBIT**

I


# IMPORTANT INFORMATION ABOUT
## MONEY MARKET ACCOUNTS

### AUTOMATIC
- If we are paying you $7,500 or more, we will automatically open a money market account in your name and mail you the checkbook.

### SAFE
- The account earns interest starting the first day we open it.
- Metropolitan Life Insurance Company guarantees the full amount in the account, including all interest.

### FREE
- You pay nothing for this account. There are no monthly service charges or charges for checks.
- You can write checks from $250 up to the full balance at any time.

### FLEXIBLE
- You can withdraw all or part of your money at any time, with no penalty.
- You can name a beneficiary for your funds, in case something happens to you.

We will send you detailed information about the account when we open one in your name.

---

# SPECIAL NOTE

---

Please complete, in ink, the information below and sign your name in the first box. We need this information to open a money market account. Even though you may be giving the same information elsewhere on this form, you must also give it here. We cannot process your claim without this information.

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Your signature *(Do not print)* | *Osker K Jones* | | | | | | | | | |
| Your name *(Please print)* | OSKER KEVIN JONES | | | | | | | | | |
| Address *(Number, street, apt. no.)* 312 CHICAGO AVE APT 2H | PERMANENT ADDRESS 1927 SO HAMLIN CH9O IL 60623 | | | | | | | | | |
| City, state, ZIP code OAKPARK IL 60302 | | | | | | | | | | |
| Your Social Security Number **OR** Estate/Trust Identification Number | 3 | 5 | 7 | – | 6 | 6 | – | 5 | 3 | 7 4 |
| Date *(mm/dd/yyyy)* | Daytime telephone no. ( ) Area Code | | | Evening telephone no. ( ) Area Code | | | | | | |



# Claim for Death Benefits
Federal Employees' Group Life Insurance Program

Read the instructions carefully
before filling out this form.

## Part A. Information About the Deceased (Everyone must complete this part.)

**1. Deceased's full name** *(Last) (First) (Middle)*
JONES OSKER

**2. Date of birth** *(mm/dd/yyyy)*
07-16-39

**3. Date of death** *(mm/dd/yyyy)*
07-5-01

**4. Social Security Number**
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

**5. Legal residence at time of death**—*(City and state)*
1927 S HAMLIN
CHGO. ILL 60623

**6. Department or agency in which last employed, including bureau or division**
US Postal
CAROll STREAM
North SUBURBAN PROC/Dist

**7. Location of last employment** *(City, state, ZIP code)*
CAROL STREAM
IL 60199-9998

**8. At the time of death was the deceased:**

(a) Retired and receiving monthly annuity under any Federal civilian retirement system?
Yes ☑   No ☐   Unknown ☐

(b) Receiving Federal Workers' Compensation benefits?
Yes ☐   No ☐   Unknown ☐

} If "Yes" to either 8(a) or 8(b), please complete boxes 8(c) and 8(d) to the right.

**(c) Claim number** *(CSA, CSF, CSI)*
378-8243

**(d) Effective date of Federal Workers' Compensation benefits** *(mm/dd/yyyy)*
11-19-97

## Part B. Information About the Deceased's Family (Skip this part if you are a designated beneficiary.)

| 1. How many times was the deceased married? | 2. Give the name of each spouse *(include ALL marriages)* | 3. How did the marriage end? *(Check one in each case)* | | 4. When did the marriage end? *(mm/dd/yyyy)* |
|---|---|---|---|---|
| | | ☐ Death | ☐ Divorce | |
| | | ☐ Death | ☐ Divorce | |
| | | ☐ Death | ☐ Divorce | |

**5. Did the deceased have any living children on the date of his/her death?**
Yes ☐   No ☐   If Yes, how many? _____

**6. Did the deceased have any children who died before the date of his/her death?**
Yes ☐   No ☐   If Yes, how many? _____

## Part C. Information About You

**1. Your name** *(Last) (First) (Middle)*
JONES OSKER KEVIN

**2. Your relationship to the deceased**
SON

**3. Your date of birth** *(mm/dd/yyyy)*
01-01-68

### Complete Items 4 through 13 only if you are the deceased's widow or widower.

**4. Date of marriage** *(mm/dd/yyyy)*

**5. Place of marriage** *(City and state)*

**6. Marriage was performed by:**
☐ Clergy or Justice of the Peace
☐ Other *(specify)*

**7. Were you living with the deceased at the time of death?**
☐ Yes   ☐ No

**8. Were you divorced from the deceased at the time of death?**
☐ Yes   ☐ No

**9. If you were divorced from the deceased, give the date** *(mm/dd/yyyy)* **and place of the divorce.**

| 10. How many times were you married? | 11. Give the name of each spouse *(include ALL marriages)* | 12. How did the marriage end? *(Check one in each case)* | | 13. When did the marriage end? *(mm/dd/yyyy)* |
|---|---|---|---|---|
| | | ☐ Death | ☐ Divorce | |
| | | ☐ Death | ☐ Divorce | |
| | | ☐ Death | ☐ Divorce | |

**(continued on the other side)**

**Skip Parts D and E if you are a designated beneficiary or the deceased's widow or widower.**

## Part D. Information About the Deceased's Next of Kin

1. List below the name, age, relationship, and address of:

(a) Widow or widower;

(b) If there is no surviving widow or widower, list the child or children of all the deceased's marriages (include adopted children and children born out-of-wedlock) and the descendants of any deceased child or children (use additional sheets if necessary);

(c) If there are no children, list the parents; if one or both parents are deceased, so state and give the date of death;

(d) If there are no survivors in (a) through (c), list the next of kin who may be capable of inheriting from the deceased (brothers, sisters, descendants of deceased brothers, sisters, etc.). (Use additional sheets if necessary).

| Name | Age | Relationship to the deceased | Full address |
|------|-----|------------------------------|--------------|
|      |     |                              |              |
|      |     |                              |              |
|      |     |                              |              |
|      |     |                              |              |
|      |     |                              |              |

**Fill in items 2 and 3 only if any of the persons listed above are under age 18.**

| 2. If the court appointed a guardian for the estate of any minor children above, give the name and address of the guardian and attach a copy of the court appointment papers. **Natural parentage or custody as a result of a divorce do not constitute guardianship.** | Name<br><br>Address *(Number, street, apt. no.)*<br><br>City, state, ZIP code | 3. If the court did not appoint a guardian for the estate of any minor children, will it appoint one later?<br><br>Yes ☐  No ☐ |
|---|---|---|

## Part E. Information About the Deceased's Estate

| 1. If the court appointed an executor or administrator to settle the deceased's estate, give his/her name and address and attach a copy of the court appointment papers. | Name<br><br>Address *(Number, street, apt. no.)*<br><br>City, state, ZIP code | 2. If the court did not appoint an executor or administrator, will it appoint one later?<br><br>Yes ☐  No ☐ |
|---|---|---|

## Part F. Your Certification (Everyone must complete this part.)

1. Are you claiming accidental death benefits (did the deceased die solely through violent, external, and accidental means)? If "Yes," submit coroner's and police reports, news clippings, and any other available reports concerning the accident. OFEGLI cannot consider a claim for such benefits if the deceased separated or retired before the accident.  ☐ Yes  ☑ No

**2. Backup Withholding**  Has the IRS notified you that you are subject to income tax backup withholding as a result of a failure to report all interest or dividends?  ☐ Yes  ☑ No

| If the amount payable to you is less than $7,500, OFEGLI will send you a check.<br><br>If the amount payable to you is $7,500 or more, OFEGLI will open a money market account in your name, giving you complete control of and immediate access to all of your funds. You may write checks for all or part of the money in your account when you receive your checkbook. See page 2 for more information.<br><br>I certify under the penalties of perjury that all statements made in this claim are true, correct and complete to the best of my knowledge, information, and belief, and that I did not suppress or withhold evidence necessary to settle this claim. | Please be sure you complete the information on page 2 under "Special Note"<br><br>Your signature *(Do not print)*<br>*Osker Kevin Jones*<br><br>Your name *(Please print)*<br>OSKER KEVIN JONES<br><br>Address *(Number, street, apt. no.)*<br>312 CHICAGO AVE APT JH<br><br>City, state, ZIP code<br>OAKPARK IL 60302 | Date *(mm/dd/yyyy)*<br>07-26-01 |
|---|---|---|

| Your Social Security Number **OR** Estate/Trust Identification Number | 3 5 7 - 6 6 - 5 3 7 4 | Daytime telephone no.<br>( 773 ) 542-7507<br>Area Code | Evening telephone no.<br>( 773 ) 568-5338<br>Area Code |
|---|---|---|---|

**Warning**—If you knowingly and willfully make any materially false, fictitious or fraudulent statement or representation on this form, or conceal a material fact related to the requests for information on this form, you may be subject to a monetary fine or imprisonment for not more than five years, or both, under 18 U.S.C. 1001.

Form FE-6<br>Revised April 2001<br>OFEGLI Form in Adobe Acrobat PDF (04/01)



# Claim for Death Benefits
### Federal Employees' Group Life Insurance Program

**(You should *not* use this form to claim Option C-Family Benefits. Please use form FE-6 DEP to claim those benefits.)**

## Instructions to claimant

### General

Please read these instructions carefully, and type or print in ink.

**If you need assistance** in completing this claim, contact the deceased's last employing office, or the Office of Federal Employees' Group Life Insurance (OFEGLI), 200 Park Avenue, New York, NY 10166-0188. You may call the OFEGLI service representatives, toll-free, at 1-800-OFE-GLIA (1-800-633-4542) or (212) 578-2975.

OFEGLI needs the information requested on this form to adjudicate your claim for benefits under the Federal Employees' Group Life Insurance Program as authorized by chapter 87, title 5, U.S. Code. Interest payments are considered income for Federal income tax purposes. Interest will be reported to the Internal Revenue Service in accordance with the provisions of Sections 6041 and 6042 of the Internal Revenue Code of 1954. Provision of the information is voluntary; however, failure to supply all of the requested information may delay or prevent action on your claim.

### Order of payment

OFEGLI will pay applicable benefits as follows:

If the deceased assigned ownership of his/her insurance, then

>First, to the beneficiary(ies) designated by the deceased's assignee(s), if any;

>Second, if there is no such beneficiary, to the deceased's assignee(s), if any.

If the deceased did *not* assign ownership and there *is* a valid court order on file, OFEGLI will pay benefits in accordance with that court order.

If the deceased did *not* assign ownership and there is *no* valid court order on file, then

>First, to the beneficiary(ies) designated by the deceased;

>Second, if there is no such beneficiary(ies), to the widow or widower of the deceased;

>Third, if none of the above, to the child or children of the deceased, with the share of any deceased child distributed among descendants of that child;

>Fourth, if none of the above, to the parents of the deceased in equal shares, or the entire amount to the surviving parent;

>Fifth, if none of the above, to the executor or administrator of the deceased's estate;

>Sixth, if none of the above, to the other next of kin of the deceased entitled under the laws of the domicile of the deceased at the time of death.

### Completion of the claim

Each claimant must submit a separate claim form.

All claimants must answer Part A. If the deceased designated you on Standard Form 2823 (formerly Standard Form 54) as a beneficiary, you need not answer Parts B through E. Otherwise, it is important to answer all questions. Omissions or incomplete answers will delay settlement of your claim. If the answer to any question is "No" or "None," so state. Be sure to fill out the information under Special Note on page 2 and complete Part F on page 4.

### Evidence required

**You must submit with this claim a certified copy of the death certificate that contains the cause and manner of death.** You may obtain the certificate from the Bureau of Vital Statistics or equivalent agency. Failure to submit a certified copy of the death certificate will delay settlement of your claim.

In addition, if the deceased designated a beneficiary and a receipted copy of either Standard Form 2823 or Standard Form 54 "Designation of Beneficiary" is available, you should submit the receipted copy with your claim.

If an executor or administrator is filing this claim on behalf of the estate of the deceased, you must submit a copy of the court appointment papers.

OFEGLI will let you know if you need to submit other evidence.

### Manner of payment

If the amount payable to you is less than $7,500, OFEGLI will send you a single check for the entire amount.

If the amount payable to you is $7,500 or more, OFEGLI will open a Money Market Option Account in your name. You will receive a checkbook giving you complete control of and immediate access to all of your funds. You may write checks for all or part of the money in your account beginning the first day you receive your checkbook. The Money Market Option Account offers a number of benefits which are explained on page 2.

## Where to send the claim

### If the deceased was employed at the time of death

Send your completed claim to the deceased's employing office. That office must certify the deceased's insurance status at the time of death.

### If the deceased was retired or receiving Federal Workers' Compensation benefits at the time of death

Send your completed claim to OFEGLI, 200 Park Avenue, New York, NY 10166-0188.

OFEGLI will adjudicate your claim upon receipt of insurance certification from the Office of Personnel Management.

## Instructions to the employing agency

It is the agency's responsibility to assist the deceased's beneficiary or next of kin in properly completing this claim. The agency should forward the completed claim and all required supporting evidence to OFEGLI, 200 Park Avenue, New York, NY 10166-0188, together with:

1. The original of the Agency Certification of Insurance Status (SF 2821);
2. The original of all Designation of Beneficiary forms (SF 2823 or SF 54), if any;
3. *All* court orders on file, if any;
4. Any other documents (except payroll records) bearing on the deceased employee's insurance status.

**DO NOT DETACH**



EXHIBIT
J

# IMPORTANT INFORMATION ABOUT
## MONEY MARKET OPTION ACCOUNTS

Designed to put *you* in complete control of your life insurance proceeds.

Money Market Option Accounts provide . . .

**SAFETY**
- The account earns interest from the first day it is established.
- The full amount, including all interest earned, is guaranteed.

**COST-FREE CHECKING**
- You pay nothing for this Account. There are no monthly service charges. No charge for checks.
- You can write checks from $250 up to the full amount of your proceeds at any time.

**FLEXIBILITY**
- You can withdraw all or part of your money at any time, with no penalty or loss of interest.
- You can name a beneficiary for your funds, in case something happens to you.

**YOUR MONEY MARKET OPTION ACCOUNT GIVES YOU:**

**Safety • Security • Privacy • Flexibility • Free Checking**

---

# SPECIAL NOTE

## PLEASE BE SURE TO COMPLETE, IN INK, THE INFORMATION REQUESTED BELOW AND SIGN YOUR NAME IN THE APPROPRIATE BOX.

| | |
|---|---|
| Your signature *(Do not print)* | *Osker K Jones* |
| Your name *(Please print)* | OSKER KEVIN JONES |
| Address *(Number, street, apt. no.)* | 312 CHICAGO AVE APT. 2H |
| City, state, ZIP code | OAK PARK ILL, 60302 |

| Your Social Security Number OR Employer identification number | 3 | 5 | 7 | – | 6 | 6 | – | 5 | 3 | 7 | 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | – | | | – | | | | |

| Date *(mm/dd/yyyy)* | Daytime telephone no. | Evening telephone no. |
|---|---|---|
| 8/9/01 | (773) 542-7507 Area Code | (773) 568-5338 Area Code |

Form FE-6
Revised January 1999
OFEGLI Form in Adobe Acrobat PDF (1/99)



# Claim for Death Benefits
Federal Employees' Group Life Insurance Program

Read the instructions carefully
before filling out this form.

## Part A. General Information About the Deceased

**1. Full name of the deceased** *(Last) (First) (Middle)*
JONES   OSKER

**2. Date of birth** *(mm/dd/yyyy)*
7-16-39

**3. Date of death** *(mm/dd/yyyy)*
7-5-01

**4. Social Security Number**

**5. Legal residence at time of death—***(City and State)*
CHICAGO ILL,

**6. Department or agency in which last employed, including bureau or division**
U.S. POSTAL SERVICE NORTH SUBURBAN PROS DISTR

**7. Location of last employment** *(City, state, ZIP code)*
CAROL STREAM ILL. 60199

**8. At the time of death was the deceased:**

(a) Retired and receiving annuity under any Federal civilian retirement system?
Yes ☑   No ☐   Unknown ☐

(b) Receiving Workers' Compensation benefits?
Yes ☐   No ☐   Unknown ☐

} If "Yes" to either 8(a) or 8(b), please complete the box(es) to the right.

**Claim number (CSA, CSF, CSI)**
3 788 243

**Effective date of Workers' Compensation benefits** *(mm/dd/yyyy)*

If the deceased named you as beneficiary on a Designation of Beneficiary form under the Federal Employees' Group Life Insurance Program (Standard Form 2823 or Standard Form 54), attach a copy of the form that has the agency or retirement system's receipt date on the bottom. Please indicate your date of birth and relationship in the boxes to the right, and complete Part F on the other side. **If you do not attach either Standard Form 2823 or Standard Form 54, you must complete all parts of this claim form.**

**Your date of birth** *(mm/dd/yyyy)*
01-01-68

**Relationship to the deceased**
SON

## Part B. Personal Information Concerning the Deceased

**1. How many times was the deceased married?** 2

**2. Was the deceased survived by any children?**
☑ Yes   ☐ No

**3. Give the name of each spouse** *(include all marriages)*
~~VERA M JONES Decease~~
VERA M JONES
MAXINE JONES

**4. How was marriage terminated?** *(Check one in each case)*
☑ Death   ☐ Divorce
☐ Death   ☐ Divorce
☐ Death   ☐ Divorce

**5. Date marriage was terminated** *(mm/dd/yyyy)*

## Part C. Information Concerning the Claimant

**1. Your name** *(Last) (First) (Middle)*
JONES   OSKER   KEVIN

**2. Your relationship to the deceased**
SON

**3. Your date of birth** *(mm/dd/yyyy)*
01-01-68

### Items 4 through 13 must be filled in if you are the widow or widower of the deceased.

**4. Date of marriage** *(mm/dd/yyyy)*

**5. Place of marriage** *(City and State)*

**6. Marriage was performed by:**
☐ Clergy or Justice of the Peace
☐ Other *(specify)*

**7. Were you living with the deceased at the time of death?**
☐ Yes   ☐ No

**8. If you were not living with the deceased at the time of death, was there a divorce?**
☐ Yes   ☐ No

**9. If you were divorced from the deceased, give the date** *(mm/dd/yyyy)* **and place of the divorce.**

**10. How many times were you married?**

**11. Give the name of each spouse** *(include all marriages)*

**12. How was marriage terminated?** *(Check one in each case)*
☐ Death   ☐ Divorce
☐ Death   ☐ Divorce
☐ Death   ☐ Divorce

**13. Date marriage was terminated** *(mm/dd/yyyy)*

**(continued on the other side)**

**Fill in Parts D and E only if you are not the designated beneficiary or the widow or widower of the deceased.**

## Part D. Information Concerning Next of Kin of the Deceased

1. List below the name, age, relationship, and address of:

   (a) Widow or widower;

   (b) If there is no surviving widow or widower, list the child or children of all the deceased's marriages (include adopted or illegitimate children, stating relationship) and the descendants of any deceased child or children;

   (c) If there are no children, list the parents; if one or both parents are deceased, so state and give the date of death;

   (d) If there are no survivors as indicated in (a) through (c), list the next of kin who may be capable of inheriting from the deceased (brothers, sisters, descendants of deceased brothers, sisters, etc.).

| Name | Age | Relationship to the deceased | Full address |
|------|-----|------------------------------|--------------|
| OSKER K JONES | 33 | SON | 312 CHICAGO AVE APT 2H OAK PARK IL 60302 PERMANENT ADD 1927 S HAMLIN CHYGO IL 60623 |
| | | | |
| | | | |
| | | | |

**Fill in items 2 and 3 only if any of the persons listed above are under age 18.**

| 2. If a guardian has been appointed by the court for the estate of any minor children above, give the name and address of the guardian and attach a copy of the appointment papers issued by the court. **Natural parentage or custody as a result of a divorce does not constitute guardianship.** | Name | 3. If a guardian for the estate of any minor children has not been appointed, will one be appointed? |
|---|---|---|
| | Address *(Number, street, apt. no.)* | |
| | City, state, ZIP code | ☐ Yes ☐ No |

## Part E. Information Concerning the Estate of the Deceased

| 1. If an executor or administrator has been appointed by the court to settle the estate of the deceased, give his/her name and address and attach a copy of the court appointment papers. | Name    NONE | 2. If an executor or administrator has not been appointed, will one be appointed? *DONT KNOW* |
|---|---|---|
| | Address *(Number, street, apt. no.)* | |
| | City, state, ZIP code | ☐ Yes ☐ No |

## Part F. Certification by the Claimant

Are you claiming accidental means death benefits (injuries sustained solely through violent, external, and accidental means)? If "Yes", submit coroner's and police reports, news clippings, and any other available reports concerning the accident. OFEGLI cannot consider a claim for such benefits if the date of the deceased's separation or retirement is prior to the date injuries were sustained which caused the death of the deceased.    ☐ Yes ☒ No

**Backup Withholding**    Has the IRS notified you that you are subject to backup withholding as a result of a failure to report all interest or dividends?    ☐ Yes ☒ No

| If the amount payable to you is less than $7,500, OFEGLI will issue payment by a single check.<br><br>If the amount payable to you is $7,500 or more, OFEGLI will open a Money Market Option Account—as described on page 2—in your name, giving you complete control of and immediate access to all of your funds. You may write checks for all or part of the money in your Account when you receive your checkbook. | Please be sure to also complete the information requested on page 2 under "Special Note" | Date *(mm/dd/yyyy)* 08-09-01 |
|---|---|---|
| | Your signature *(Do not print)* Jones K | |
| | Your name *(Please print)* OSKER K JONES | |
| I hereby certify under the penalties of perjury that all statements made in this claim are true, correct and complete to the best of my knowledge, information, and belief, and that no evidence necessary to settle this claim is suppressed or withheld. | Address *(Number, street, apt. no.)* 312 CHICAGO AVE APT 2H | |
| | City, state, ZIP code OAK PARK IL 60302 | |

| Your Social Security Number **OR** Employer identification number | 3 5 7 - 6 6 - 5 3 7 4 | Daytime telephone no. (773) 542-7507 *Area Code* | Evening telephone no. (773) 568-5338 *Area Code* |
|---|---|---|---|

**Warning**—Any materially false, fictitious or fraudulent statement or representation which is knowingly and willfully made or any concealment of a material fact which is related to the requests for information required herein is punishable under 18 U.S.C. Statute 1001 by a monetary fine or imprisonment for not more than five years, or both.

Form FE-6
Revised January 1999
OFEGLI Form in Adobe Acrobat PDF (1/99)

## ASSIGNMENT OF PROCEEDS OF INSURANCE

TO: _OPM/FEGLI_
(NAME OF INSURANCE COMPANY)

_BOYERS, PA_

I, _MAXINE JONES + OSKER JONES JR_ being entitled to receive benefits under policy
(BENEFICIARY)

number(s) _A3788243_ with a face value of

_____ Dollars ($_____)

issued by _FEGLI_
(NAME OF INSURANCE COMPANY)

on the life of _OSKER JONES SR_, now deceased, and having

contracted with and being indebted to A. A. RAYNER & SONS, 5911 WEST MADISON STREET,

CHICAGO, ILLINOIS 60644, for funeral services and merchandise for the deceased in the amount of

FORTY NINE NINETY SEX AND 42/100-----------------------Dollars ($ _4996.42_)

do hereby set over, assign and transfer unto said Funeral Director, the sum of

FORTY NINE NINETY SIX AND 42/100-----------------------Dollars ($ _4996.42_)

out of the proceeds of said Insurance Policy(ies); and I hereby authorize and direct said Insurance Company

to make its check payable to said Funeral Director for the assigned amount and to pay the remainder of the

proceeds, if any, to me.

I (we) hereby appoint A. A. Rayner & Sons as our attorney in fact to act for us with full power to make

collection of, compromise, settle, and to endorse or receipt in our names or otherwise, any check, draft,

receipt or release for the proceeds of said policy of insurance or certificate, as fully to all intents and purposes

as we ourselves could do, hereby ratifying and confirming all that our said attorney may do or cause to be

done by virtue hereof.

√ _Maxine Jones_ ( _WIFE_ )
RELATIONSHIP

√ _Osker K Jones_ ( _Son_ )
RELATIONSHIP

OFFICIAL SEAL
JANELLE B STRONG
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/18/03

STATE OF ILLINOIS

COUNTY OF COOK

Sworn and subscribed before me

this _11th_ day of _July_ _2001_

_Janelle B. Strong_

NOTARY PUBLIC

EXHIBIT
K



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

**Plaintiff(s): Metropolitan Life Insurance Company**

County of Residence: New York (NY)

Plaintiff's Atty: Steven P. Mandell
Mandell Menkes & Surdyk LLC
333 W. Wacker, Suite 300, Chicago IL 60606
312-251-1000

**Defendant(s):Maxine Jones, Osker K. Jones**

County of Residence:

Defendant's Atty:

02C 499 5

JUDGE GOTTSCHALL

II. Basis of Jurisdiction: **3. Federal Question (U.S. not a party)**

MAGISTRATE JUDGE BOBRICK

III. Citizenship of Principal Parties **(Diversity Cases Only)**

Plaintiff:- **N/A**

Defendant:- **N/A**

IV. Origin : **1. Original Proceeding**

**DOCKETED**
JUL 1 6 2002

V. Nature of Suit: **890 Other Statutory Actions**

VI.Cause of Action: **Interpleader proceeding to determine proper recipient of proceeds on life insurance policy under Federal Employer's Group Life Insurance Act, 5 USC 8701-8716.**

VII. Requested in Complaint

Class Action:**No**

Dollar Demand:

Jury Demand:**No**

FILED-EDS
02 JUL 15 PM 4: 25
CLERK
U.S. DISTRICT COURT

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature:

Date: 7/15/02

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

METROPOLITAN LIFE INSURANCE COMPANY

V.

MAXINE JONES and OSKER JONES

Case Number: 02C 4995

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

**METROPOLITAN LIFE INSURANCE COMPANY**



JUDGE GOTTSCHALL

MAGISTRATE JUDGE BOBRICK

| (A) | (B) |
|---|---|
| SIGNATURE *Steven P. Mandell* | SIGNATURE *Catherine A. Van Horn* |
| NAME Steven P. Mandell | NAME Catherine A. Van Horn |
| FIRM Mandell Menkes & Surdyk, LLC | FIRM Mandell Menkes & Surdyk, LLC |
| STREET ADDRESS 333 W. Wacker, Suite 300 | STREET ADDRESS 333 W. Wacker, Suite 300 |
| CITY/STATE/ZIP Chicago, IL 60606 | CITY/STATE/ZIP Chicago, IL 60606 |
| TELEPHONE NUMBER 312/251-1000   FAX NUMBER 312/251-1010 | TELEPHONE NUMBER 312/251-1000   FAX NUMBER 312/251-1010 |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6183729 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6204707 |
| MEMBER OF TRIAL BAR?   YES ☒   NO ☐ | MEMBER OF TRIAL BAR?   YES ☒   NO ☐ |
| TRIAL ATTORNEY?   YES ☐   NO ☒ | TRIAL ATTORNEY?   YES ☒   NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☒ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME Leon E. Farbman | NAME |
| FIRM Mandell Menkes & Surdyk, LLC | FIRM |
| STREET ADDRESS 333 W. Wacker, Suite 300 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60606 | CITY/STATE/ZIP |
| TELEPHONE NUMBER 312/251-1000   FAX NUMBER 312/251-1010 | TELEPHONE NUMBER   FAX NUMBER |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6269718 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☒ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☐   NO ☒ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☒ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |

DOCKETED
JUL 1 6 2002